IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIM RHEIN and DAVID RHEIN,<br><br>Plaintiffs,<br><br>v.<br><br>AGENT STEVEN PRYOR, Star Number 4816, an Illinois State Police Officer, in his individual capacity; AGENT FREDDIE SUMMERS, Star Number 5706, an Illinois State Police Officer, in his individual capacity; LIEUTENANT JOHN COFFMAN, an Illinois State Police Officer, in his individual capacity; HIRAM GRAU, Illinois State Police Director, in his official capacity; and LISA MADIGAN, Illinois Attorney General, in her official capacity,<br><br>Defendants. | ) | No. 13 C 843<br><br>JUDGE FEINERMAN<br><br>MAGISTRATE JUDGE KIM |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendants Illinois State Police Director Hiram Grau, Sergeant Steven Pryor, Special Agent Freddie Summers, and Lt. John Coffman, by their attorney Lisa Madigan, the Illinois Attorney General, move this Honorable Court to dismiss the Amended Complaint of Plaintiffs David and Kim Rhein pursuant to Federal Rule of Civil Procedure 12(b)(6). In support, Defendants state as follows:

## BACKGROUND

Plaintiffs Kim and David Rhein allege that the Illinois State Police Officers violated their rights by revoking Mr. Rhein's Firearm Owner's Identification ("FOID") card and subsequently

seizing firearms from their home. (Doc. 22-1, Pls. Am. Comp., attached hereto as Exhibit A).[1] Lt. Coffman wrote a letter advising Mr. Rhein that the Department had revoked his FOID card,[2] pursuant to section 8(f) of the Illinois FOID Card Act.[3] 430 ILCS 65/8(f) (2010). Plaintiffs argue that there was no reasonable basis to conclude that Mr. Rhein had a mental condition falling within the purview of section 8(f).[4] However, Plaintiffs admit that Mr. Rhein had made perceived threats to a locally elected government official.[5] Shortly after the letter was issued, Pryor and Summers entered Plaintiffs' home and seized Plaintiffs' firearms.[6] After court proceedings on the issue, the Illinois State Police returned the firearms and FOID card to Plaintiffs.[7]

Plaintiffs' claims against Director Grau in his official capacity are for purposes of challenging the constitutionality of section 8(f) of the FOID Card Act.[8] Plaintiffs seek a declaration that section 8(f) is unconstitutionally vague and does not provide for pre- and post-deprivation remedies.[9] Plaintiffs also seek a declaration that section 8(f) violates the Second Amendment and the Equal Protection Clause and seek to have the Court enjoin the enforcement of the statute.[10] Plaintiffs also claim that Agents Pryor and Summers violated their First, Second and Fourth Amendment rights by searching their home and seizing their firearms and that Lt.

---

[1] The facts contained in this motion are derived from the allegations set forth in Plaintiffs' Amended Complaint as required under Rule 12(b)(6). Reger Dev., LLC v. Nat'l City Bank, 592 F.3d 759, 763 (7th Cir. 2010). Defendants neither admit nor deny Plaintiffs' factual assertions at this time and incorporate Plaintiffs' facts in this motion solely for the purpose of Defendants' motion to dismiss.
[2] Ibid. ¶¶ 12-13.
[3] Ibid. ¶ 14.
[4] Ibid. ¶¶ 23, 31.
[5] Ibid. ¶ 36.
[6] Ibid. ¶¶ 15-16.
[7] Ibid. ¶ 18.
[8] Ibid. ¶ 33.
[9] Ibid. ¶¶ 27-29.
[10] Ibid. ¶¶ 24, 33.

Coffman, in his supervisory capacity, "approved . . . and/or condoned the illegal search and seizure/Second Amendment violation . . . ."[11]

## STATUTORY SCHEME

No person in Illinois "may possess any firearm within this State without having in his or her possession a [FOID] Card previously issued in his or her name by the Department . . . " 430 ILCS 65/2 (2010). The Illinois General Assembly has vested in the Department of State Police the authority to revoke an individual's FOID card upon finding that the individual is "[a] person whose mental condition is of such a nature that it poses a clear and present danger to" himself or herself, any other person or persons, or the community. Id. The legislature defined "mental condition" as "a state of mind manifested by violent, suicidal, threatening, or assaultive behavior." Id.

If an individual's FOID card is revoked by the Department pursuant to section 8(f), the Department must provide the individual with "written notice from the Department . . .stating specifically the grounds . . . upon which his [FOID card] has been revoked." 430 ILCS 65/9 (2010). The individual "may appeal to the Director of [the Department] for a hearing upon revocation or seizure" of the FOID card. 430 ILCS 65/10 (a) (2010). If the individual appeals,

> The Director shall grant the relief if it is established by a preponderance of the evidence that the person will not be likely to act in a manner dangerous to public safety and that granting relief would not be contrary to the public interest. In making this determination, the Director shall receive evidence concerning (i) the circumstances regarding the firearms disabilities from which relief is sought; (ii) the petitioner's mental health and criminal history records, if any; (iii) the petitioner's reputation, developed at a minimum through character witness statements, testimony, or other character evidence; and (iv) changes in the petitioner's condition or circumstances since the disqualifying events relevant to the relief sought. If relief is granted under this subsection . . ., the Director shall as soon as practicable but in no case later than 15 business days, update, correct, modify, or remove the person's record in any database that the Department of State Police makes available to the National Instant Criminal Background Check

[11] Ibid. ¶¶ 16-17.

> System and notify the United States Attorney General that the basis for the record being made available no longer applies.

430 ILCS 65/10(f) (2010). Finally, an adverse, final administrative decision of the Director of the Department also is subject to *de novo* review by the Illinois circuit court. 430 ILCS 65/11(b) (2010). During circuit court review, "any party may offer evidence that is otherwise proper and admissible without regard to whether that evidence is part of the administrative record." Id.

## ARGUMENT

## PLAINTIFFS' OFFICIAL CAPCITY CLAIMS

Plaintiffs' official capacity claims—seeking declaratory and injunctive relief—allege that section 8(f) of the FOID Card Act is unconstitutional on its face under (1) the Fourteenth Amendment's Due Process Clause; (2) the Second Amendment; and (3) the Equal Protection Clause.

### I. Section 8(f) Of The FOID Card Act Does Not Violate Due Process.

To plead a procedural due process claim, a plaintiff must allege a cognizable property interest, a deprivation of that interest, and a denial of due process. Palka v. Shelton, 623 F.3d 447, 452 (7th Cir. 2010). For purposes of this motion only, Defendants assume that Plaintiffs have a cognizable property interest in both their firearms and Mr. Rhein's FOID card, and that they were deprived of those interests. However, contrary to Plaintiffs' argument, (1) the statute is not vague, (2) a pre-deprivation hearing is not required under these circumstances, and (3) there is an adequate post-deprivation remedy.

#### A. Section 8(f) Is Not Vague.

In determining whether a statute is unconstitutionally vague, the question is whether a person of ordinary intelligence must guess at its meaning. Harris v. City of Chicago, 665 F. Supp. 2d 935, 953 (N.D. Ill. 2009) (citing Penny Saver Pubs. v. Vill. of Hazel Crest, 905 F.2d

150, 155 (7th Cir. 1990)). Statutory terms are not unconstitutionally vague simply because they do not provide "meticulous specifics" or "mathematical precision." Berg v. Health & Hosp. Corp. of Marion County, Ind., 865 F.2d 797, 805 (7th Cir. 1989). A statute need only articulate terms with a "reasonable degree of clarity" to pass the void-for-vagueness test under the Due Process Clause. Gresham, 225 F.3d at 907.

Here, the term "clear and present danger" is clear. The Department is authorized to revoke an individual's FOID card if that individual possesses a "mental condition . . . of such a nature that it poses a clear and present danger to the applicant, any other person or persons or the community." The legislature specifically defined "mental condition" as "a state of mind manifested by violent, suicidal, threatening, or assaultive behavior." 430 ILCS 65/8(f) (2010). Thus, any ambiguity that may have existed with the meaning of "mental condition" was clarified by the specific definition given to that term.

Although the term "clear and present danger" is easily defined, even without resorting to outside sources, the dictionary defines "clear" as "plain or evident to the mind; unmistakable" or "free from doubt or confusion; certain." AMERICAN HERITAGE DICTIONARY 279 (2d C. ed. 1982). "Present" is "[b]eing, pertaining to, or occurring at a moment or period in time [perceptible as intermediate between past and future; now]." Id. at 979. And, "danger" is "exposure or vulnerability to harm or risk" or "a source or instance of risk or peril." Id. at 365. Combined, the dictionary defines a "clear and present danger" as an unmistakable or certain exposure to harm or risk, now.

**B. A Pre-Deprivation Hearing Is Not Constitutionally Required.**

Because providing a pre-deprivation hearing prior to revocation of a FOID card pursuant to section 8(f) of the FOID Card Act would be impracticable, the lack of a pre-deprivation

hearing does not violate due process. Procedural due process is a flexible concept which "calls for such procedural protections as the particular situation demands." Buttitta v. City of Chicago, 9 F.3d 1198, 1201 (7th Cir. 1993) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). The Due Process Clause does not compel a pre-deprivation hearing where impracticable, such as where quick action by the State is necessary. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982). Where a pre-deprivation remedy is impracticable due to the necessity of quick action by the State, due process may be satisfied with the availability of an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 132 (1990). Thus, courts have upheld summary action without a pre-deprivation hearing where necessary to protect the environment and public safety, Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 298-303 (1981), to protect the integrity of horse racing and protect the public, Barry v. Barchi, 443 U.S. 55, 64-65 (1979), and to avoid the importation of illegal guns, Gun South, Inc. v. Brady, 877 F.2d 858, 867-68 (11th Cir. 1989).

In determining whether a pre-deprivation hearing is constitutionally required, the Supreme Court has developed a three-part analysis that balances the following: (1) the nature of the private interest; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest in taking its action, including the burdens any additional procedural requirement would entail. Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976).

Beginning with the third factor, the State has a very strong interest in regulating the use of firearms as mandated by section 8(f) of the FOID Card Act. The threat to public safety posed by those with violent, suicidal, threatening, or assaultive behavior is obvious. To hold pre-deprivation hearings in such cases could result in irreparable harm during the pendency of the hearing. See Waltier v. N.Y. Police Dep't, 856 F. Supp. 196, 200 (S.D.N.Y. 1994). Moreover,

as discussed in the next section and contrary to the assertions in the complaint, the FOID Card Act provides for adequate post-deprivation procedures to ensure that an erroneous permanent deprivation will be avoided. See 430 ILCS 65/10-11 (2010).

Finding that the absence of a pre-deprivation hearing is constitutionally permissible here is consistent with Waltier, 856 F. Supp. 196. There, the state revoked the plaintiff's permit after he was arrested for shooting another individual. Id. The court held that, after analyzing the Mathews factors, a pre-deprivation hearing was unnecessary. Id. at 200-01. The court stressed that the significant governmental interest in ensuring public safety outweighed the plaintiff's interest in his permit, especially given the minimal risk of a permanent deprivation due to adequate post-deprivation procedures. Id. Because quick action by the State was necessary to dispossess a potentially dangerous firearms owner of the weapon, the court held that a pre-deprivation hearing was not constitutionally required. See id. at 200.

**C. The FOID Card Act Provides Adequate Post-Deprivation Procedures.**

Section 10(a) of the FOID Card Act, 430 ILCS 65/10(a) (2010), states that "whenever . . . a [FOID] Card is revoked or seized as provided for in Section 8 of this Act, the aggrieved party may appeal to the Director of the State Police for a hearing upon such . . . revocation or seizure." Under section 10(f), "[a]ny person who . . . was determined to be subject to the provisions of subsection[] . . . (f) . . . of Section 8 of this Act may apply to the Department of State Police requesting relief from that prohibition." 430 ILCS 65/10(f) (2010). Furthermore, the statute explicitly provides that the Director shall reverse the decision if it is established by a preponderance of the evidence that the person will not be likely to act in a manner dangerous to the public safety and granting the relief is not contrary to the public interest. Id. Thus, section

10 of the FOID Card Act provides a plaintiff with adequate administrative and judicial review procedures to challenge the revocation of his or her FOID card.

Section 11(b) of the FOID Card Act, 430 ILCS 65/11(b) (2010), provides that "[a]ny final administrative decision by the Director of the State Police to deny a person's application for relief under subsection (f) of Section 10 of this Act is subject to *de novo* judicial review by the circuit court." And during the circuit court proceedings, "any party may offer evidence that is otherwise proper and admissible without regard to whether that evidence is part of the administrative record." Id. As set forth in the Amended Complaint, Plaintiff David Rhein exercised his post-deprivation remedies to have his FOID Card returned. (Doc. 22-1, ¶ 18).

**II. Section 8(f) Of The FOID Card Act Does Not Violate The Second Amendment.**

Historically, the right to keep and bear arms "was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." District of Columbia v. Heller, 554 U.S. 570, 626 (2008). A two-pronged analysis is used to determine whether governmental regulation violates the Second Amendment. See Ezell v. City of Chicago, 651 F.3d 684, 702-04 (7th Cir. 2011); see also United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010); United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010); United States v. Reese, 627 F.3d 792, 800-01 (10th Cir. 2010). First, this court should ask whether section 8(f) of the FOID Card Act "regulates activity falling outside the scope of the Second Amendment." See id. at 703-04. If so, then the analysis can stop, for the regulated activity is categorically outside of Second Amendment protection. Id. at 704.

On the other hand, if section 8(f) regulates activity within the Second Amendment's scope, then this court should apply some form of heightened scrutiny. See Ezell, 651 F.3d at 708. While the level of scrutiny applied to Second Amendment analysis is an open question, see

United States v. Skoien, 614 F.3d 638, 641-42 (7th Cir. 2010), something more than intermediate scrutiny applies only where the burden imposed by the law severely limits the core of Second Amendment rights, that is, possession of firearms by "law-abiding, responsible citizens," compare Ezell, 651 F.3d at 708 ("a more rigorous showing" than intermediate scrutiny, "if not quite 'strict scrutiny,'" applied where law prohibited all law-abiding, responsible citizens from engaging in target practice at firing ranges); with Skoien, 614 F.3d at 641-42 (intermediate scrutiny applied to law prohibiting firearm possession by domestic violence misdemeanants).

Like the domestic violence misdemeanant in Skoien, those who possess a mental condition presenting a clear and present danger as manifested by violent, suicidal, threatening, or assaultive behavior, do not enjoy the core rights provided by the Second Amendment. See Heller, 554 U.S. at 626-27 (noting that laws prohibiting possession of firearms by mentally ill presumptively valid under Second Amendment); United States v. Miranda, 505 F.3d 785, 795 (7th Cir. 2007); Nat'l Rifle Assoc. of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives, 700 F.3d 185, 205-07 (5th Cir. 2012). Where core Second Amendment rights are not implicated (that is, the right of "law-abiding, responsible citizens" to possess firearms), the firearm prohibition is tested against only intermediate scrutiny. See Ezell, 651 F.3d at 708; see also Nat'l Rifle Assoc. of Am., Inc., 700 F.3d at 205-07. Here, because those individuals with a mental condition described in section 8(f) of the FOID Card Act do not fall within the core of Second Amendment protection—that is, they are not "responsible citizens" for purposes of firearm possession, see Nat'l Rifle Assoc. of Am., Inc., 700 F.3d at 205-07, at most intermediate scrutiny applies to section 8(f).

### A. Section 8(f) Of The FOID Card Act Is Outside Scope Of Second Amendment.

Section 8(f) of the FOID Card Act essentially prohibits those with a mental condition presenting a clear and present danger from possessing a FOID card, and in turn, from possessing a firearm. In Heller, the Supreme Court identified several historical limitations on the Second Amendment that were "presumptively valid." Heller, 554 U.S. at 626-27. The Court stated that,

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the *mentally ill*, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. (emphasis added). Thus, in Heller, the Court recognized that the mentally ill categorically do not enjoy the right to possess firearms. Id.; see also Joseph Blocher, *Categoricalism and Balancing in First and Second Amendment Analysis*, 84 N.Y.U. L. REV. 374, 413 (2009).

Here, section 8(f) of the FOID Card Act categorically excludes those who present a clear and present danger by displaying violent, suicidal, threatening, or assaultive behavior from possessing firearms. 430 ILCS 65/8(f) (2010). This exclusion is supported by Heller, 554 U.S. at 626-27, as well as the Seventh Circuit's pre-Heller interpretation of the Second Amendment, see Miranda, 505 F.3d at 795; see also United States v. Emerson, 270 F.3d 203, 226 n.21 (5th Cir. 2001) (noting that "lunatics" and "those of unsound mind" historically were prohibited from firearm possession). Because section 8(f) excludes from possession of firearms those who have no right to such possession, section 8(f) regulates activity falling outside of the scope of the Second Amendment. Accordingly, Plaintiffs' Second Amendment claim should be dismissed with prejudice.

**B. Alternatively, Section 8(f) Survives Intermediate Scrutiny.**

Assuming for the sake of argument that this Court reaches the second prong of the Second Amendment analysis, it nonetheless should dismiss Plaintiffs' Second Amendment claim

because section 8(f) is substantially related to an important governmental objective. See Skoien, 614 F.3d at 642. In codifying section 8(f) of the FOID Card Act, the legislature narrowly tailored the restriction on FOID card possession to those who possess a mental state that presents a clear and present danger by manifesting violent, suicidal, threatening, or assaultive behavior. 430 ILCS 65/8(f) (2010). This restriction furthers the governmental objective of promoting public safety by keeping firearms out of the hands of those who might harm themselves or others. See Skoien, 614 F.3d at 642.

**III. Section 8(f) Of The FOID Card Act Does Not Violate The Equal Protection Clause.**

In equal protection cases, strict scrutiny applies only where a legislative classification "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312 (1976). For the reasons stated in the preceding section, there is no impermissible interference with Plaintiffs' Second Amendment rights. Accordingly, the rational basis standard applies. See Nat'l Rifle Assoc. of Am., Inc., 700 F.3d at 211-12 (5th Cir. 2012).

In National Rifle Association, the Fifth Circuit first examined the plaintiff's Second Amendment challenge to a federal law prohibiting the sale of guns to minors under intermediate scrutiny. Id. at 207-11. After holding that there was no unconstitutional infringement of any Second Amendment rights, the court proceeded to analyze the plaintiff's equal protection challenge to the same statute under rational basis review. Id. at 211-12. The First Circuit followed the same approach in a Second Amendment case in Hightower v. City of Boston, 693 F.3d 61, 83 (1st Cir. 2012), as did the Ninth Circuit sitting *en banc* in Nordyke v. King, 681 F.3d 1041, 1043 n.2 (9th Cir. 2012), and the Fourth Circuit in United States v. Carpio-Leon, 701 F.3d 974, 982 (4th Cir. 2012).

This court therefore should apply rational basis scrutiny to Plaintiffs' equal protection challenge, as well. A statute satisfies a rational basis inquiry if there is a rational relationship between the treatment under the statute and a legitimate governmental purpose. Srail v. Vill. of Lisle, 588 F.3d 940, 946 (7th Cir. 2009). This is an "onerous burden" for plaintiffs that requires plaintiffs to disprove the existence of any conceivable set of facts that could provide a rational basis for the classification and the government is permitted to make generalizations under this standard even when it results in an imperfect means-end fit. Id. There indeed is a rational basis supporting section 8(f) of the FOID Card Act—to keep firearms out of the possession of those who may harm themselves or others.

## IV. The Amended Complaint Fails To Show A Likelihood Of Future Injury.

Plaintiffs' injunctive relief claim fails for another, independent reason—the Amended Complaint does not allege facts sufficient to show that there is any likelihood that the Department will revoke Plaintiffs' FOID cards pursuant to section 8(f) of the FOID Card Act in the future. A plaintiff lacks standing to raise an injunctive relief claim unless he or she can show that there exists a "real and immediate danger that alleged harm" will occur in the future. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) ("[P]ast exposure to illegal conduct does not itself show a present case for injunctive relief."). Injunctive relief will not issue where a plaintiff has pleaded only conjectural or hypothetical harm. Id. at 102.

In Lyons, the plaintiff sued the City of Los Angeles and several of its police officers, alleging that the officers, without provocation, applied a chokehold when they stopped him for a traffic violation. The plaintiff sought damages and injunctive relief barring the use of chokeholds except in deadly situations. The Court held that, while the plaintiff had standing to seek damages for a past-wrong—improper use of a chokehold—he lacked standing to bring an

injunctive relief claim because he could not establish a real threat that an officer would choke him again. Id. at 105-06. Similarly, though Plaintiff may have standing to bring a damages action against the individual officers for an alleged past-wrong, the failure to adequately allege that their FOID cards will be revoked pursuant to section 8(f) of the FOID Card Act in the future is fatal to their injunctive relief claim. See Lyons, at 105-06.

Nor is Plaintiffs' allegation that their political commentary will put them at risk of being labeled mentally unstable—with their FOID cards at risk of revocation under section 8(f)—sufficient to establish standing for the injunctive relief claim. See Sierakowski v. Ryan, Palmer v. City of Chicago, 223 F.3d 440, 444 (7th Cir. 2000); 755 F.3d 560, 570 (7th Cir. 1985). Plaintiffs allege nothing about the nature of their purported political commentary that would indicate any likelihood of a real and immediate threat of revocation of their FOID cards. Further, there is a distinction between "political comments" and specific threats of violence, and there is no allegation that the State Police are unable to distinguish between the two. There is no allegation that the Department has even considered revoking Plaintiff David Rhein's FOID card again and there is no allegation that Plaintiff Kim Rhein ever had her FOID card revoked.[12] The bare speculation of future revocation is insufficient to state a claim for injunctive relief. See Lyons, 461 U.S. at 101-02; see also McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011).

Finally, Plaintiffs' bald assertion that Illinois State Police officials are using section 8(f) of the FOID Card Act to revoke FOID cards in retaliation for allegedly unpopular speech presents the type of allegation that Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), instruct are insufficient to defeat a motion to

[12] Although not explicitly set forth in the Amended Complaint, Plaintiff Kim Rhein has no standing to assert the rights of her husband, so her claims are necessarily limited to the search of the home. She has no claim under the Second Amendment, Equal Protection, or Due Process.

dismiss. See also Bissessur v. Ind. Univ. Bd. of Trs., 581 F.3d 599, 602 (7th Cir. 2009) (explaining that, after Iqbal, claim can survive motion to dismiss only if plaintiff alleges factual content sufficient to allow court to draw reasonable inference that defendant is liable for alleged misconduct). Plaintiffs have not identified a single instance where Illinois State Police officials have utilized Section 8(f) of the FOID Card Act to suppress protected speech. Nor have they identified a "real and immediate danger" that Section 8(f) will be used in the future to retaliate against protected speech. Plaintiffs' bare speculation of future revocation is insufficient to state a claim for injunctive relief. See Lyons, 461 U.S. at 101-02; see also McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011).

## PLAINTIFFS' INDIVIDUAL CAPACITY CLAIMS

Plaintiffs' individual capacity claims are brought under the First and Fourth Amendments against Sergeant Pryor and Special Agent Summers and their supervisor, Lt. Coffman. Plaintiffs allege that Pryor and Summers illegally searched their home and seized their firearms, and Lt. Summers approved such conduct.[13] Plaintiffs further claim that Mr. Rhein's FOID card was revoked in retaliation for Mr. Rhein's "political commentary."[14]

### I. Due to Exigent Circumstances, A Warrant Was Not Required.

Plaintiffs' Fourth Amendment claim—alleging that Pryor and Summers entered their residence without a warrant or consent and seized their firearms—fails because exigent circumstances allowed them to bypass the warrant requirement.[15] Police generally need a warrant to enter a home. United States v. Jenkins, 329 F.3d 579, 581 (7th Cir. 2003). But "warrantless searches will be allowed when police have a reasonable belief that exigent

[13] Doc. 22-1, Pls. Am. Comp., ¶ 16-17.
[14] Ibid. ¶¶ 36-37.
[15] Defendants dispute that the seizure was non-consensual but, for purposes of this motion, assume the facts as alleged in the Complaint.

circumstances require immediate action and there is no time to secure a warrant." United States v. Lenoir, 318 F.3d 725, 730 (7th Cir. 2003). One example of exigent circumstances is where police reasonably fear for the safety of others. See Jenkins, 329 F.3d at 581; United States v. Hardy, 52 F.3d 147, 149 (7th Cir. 1995). And in determining whether the circumstances justified a warrantless entry, this court should ask whether the entry was objectively reasonable based on what the police knew at the time. United States v. Huddleston, 593 F.3d 596, 601 (7th Cir. 2010).

Courts have held that, where police have knowledge that an individual possesses firearms within a home and presents a danger to others, exigent circumstances exist. See, e.g., United States v. Bates, 84 F.3d 790, 795 (6th Cir. 1995) ("The presence of a weapon creates an exigent circumstance, provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon and become violent."); Huddleston, 593 F.3d at 600 (holding that exigent circumstances existed where police had knowledge armed individual who previously threatened another was inside home); United States v. Rogers, 924 F.2d 219, 222-23 (11th Cir. 1991) (holding that exigent circumstances existed where police saw handguns on suspect, a convicted felon, who was not allowed to possess guns). Requiring a warrant under such circumstances would be unreasonable because "[i]f officers are forced to obtain a warrant in situations where a suspect is believed to be armed, they 'risk a gun battle' once the warrant is obtained." Ortiz v. City of Chicago, 2010 WL 3833962, *6 (Sept. 22, 2010 N.D. Ill.) (Dow, J.) (attached hereto as Exhibit B).

According to Plaintiffs' Amended complaint, the Department revoked Mr. Rhein's FOID card based upon his mental state that presented a clear and present danger to himself and others

by manifesting violent, suicidal, threatening, or assaultive behavior.[16] Thus, the Department knew that Mr. Rhein possessed firearms in his residence, that he no longer had a valid FOID card, and had evidence that he possessed a mental state that could place him or others in immediate risk of harm. Under these circumstances, it was reasonable for them to believe that a warrantless search and seizure of Plaintiffs' firearms was necessary. See Lenoir, 318 F.3d at 730; see also Waltier, 856 F. Supp. at 200 (holding that quick action by State is necessary to dispossess potentially dangerous firearms owner of weapon). Given the exigent circumstances in this case, neither Plaintiffs' consent nor a warrant was required prior to the alleged search and seizure. See Lenoir, 318 F.3d at 730.

## II. Plaintiffs Have Pleaded Themselves Out Of Court On Their First Amendment Claim.

In Plaintiffs' Amended Complaint, they raise a new claim—an as-applied First Amendment retaliation claim.[17] To support a First Amendment retaliation claim, Plaintiffs must allege facts sufficient to prove that Mr. Rhein's political speech was a "motivating factor" in revoking his FOID card. See George v. Walker, 535 F.3d 535, 538 (7th Cir. 2008); Kozel v. Vill. of Dolton, 804 F. Supp. 2d 740, 744 (N.D. Ill. 2011). But a plaintiff pleads himself out of court where he alleges facts showing that he has no claim. See Smart, 562 F.3d at 810.

Here, Plaintiffs have pleaded themselves out of court on their First Amendment retaliation claim. Plaintiffs admit that the revocation of Mr. Rhein's FOID card was pursuant to section 8(f) of the FOID Card Act,[18] which allows the Director of the State Police to revoke an individual's FOID card whenever that individual possess a mental condition that presents a clear

---

[16] Doc. 22-1, Pls. Am. Comp., ¶¶ 12-14, 31.
[17] Plaintiffs claim that Defendants revoked Mr. Rhein's FOID card in retaliation for political commentary made by Mr. Rhein. (Doc. 22-1, Pls. Am. Comp., ¶¶ 34, 36). Ms. Rhein does not have standing to bring a First Amendment retaliation claim on behalf of her husband, Mr. Rhein.
[18] Doc. 22-1, Pls. Am. Comp., ¶¶ 14, 21.

and present danger, 430 ILCS 65/8(f) (2010). Plaintiffs further admit that Defendants revoked Mr. Rhein's FOID card because they believed that Mr. Rhein possessed a mental condition presenting a clear and present danger.[19] Although Plaintiffs allege that Mr. Rhein did not actually possess such a mental condition, they nonetheless have alleged that it was Mr. Rhein's perceived mental condition that motivated Defendants to revoke Mr. Rhein's FOID card. Because Plaintiffs have alleged that Defendants' perception of Mr. Rhein's mental condition (even if mistaken) was the motivating factor behind revoking his FOID card, the First Amendment retaliation claim fails. See George v. Walker, 535 F.3d 535, 538 (7th Cir. 2008) (stating that retaliation claim under First Amendment requires that engagement in protected activity be motivating factor for alleged retaliatory conduct).

## III. The Supervisory Liability Claim Against Lt. Coffman Should Be Dismissed Because Plaintiffs Have Not Adequately Pleaded An Underlying Constitutional Violation.

Plaintiffs' failure to adequately plead a constitutional claim against Pryor and Summers requires dismissal of the supervisory claim against Lt. Coffman.[20] Although supervisory liability may attach under § 1983 where the supervisor "know[s] about the [unconstitutional] conduct [of subordinates] and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye for fear of what [he or she] might see," Matthews v. City of East St. Louis, 675 F.3d 703, 708 (7th Cir. 2012), a condition precedent is that there be an underlying constitutional violation committed by the supervisor's subordinate, Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 597 (7th Cir. 1997); Ross v. Daley, 2006 WL 2460614, at *2 (Aug. 23, 2006 N.D. Ill.) (Hibbler, J.) (attached hereto as Exhibit C). Plaintiffs have not adequately alleged a Fourth Amendment violation

---

[19] Ibid. ¶ 31.
[20] Defendants dispute that Lt. Coffman was the supervisor of Pryor and Summers. However, for purposes of this motion only, Defendants assume the facts as alleged in the Amended Complaint.

committed by Pryor or Summers. Because there is no underlying constitutional violation, Plaintiffs' supervisory liability claim against Lt. Coffman should be dismissed.

## IV. Plaintiffs Have Abandoned Any Individual Capacity Claim Against Director Grau.

On July 29, 2013, Plaintiffs' counsel confirmed that Plaintiff would dismiss any individual capacity claims against Director Grau. (Parties' July 29, 2013 email correspondence, attached hereto as Exhibit D).

## CONCLUSION

**Wherefore**, Defendants Director of Illinois State Police Hiram Grau, Agents Steven Pryor and Freddie Summers, and Lieutenant John Coffman respectfully request that this Court dismiss with prejudice all claims against them, and provide any other relief this Court deems just and proper.

LISA MADIGAN
Attorney General of Illinois

Respectfully submitted,

/s/ *Sunil Bhave*

Sunil Bhave
Assistant Attorney General
Office of the Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-4450

**CERTIFICATE OF SERVICE**

I, Thor Inouye, hereby certify that I have caused true and correct copies of the above and foregoing Motion to Dismiss Plaintiffs' Amended Complaint to be sent via e-filing to all counsel of record on August 1, 2013, in accordance with the rules on electronic filing of documents.

/s/ *Sunil Bhave*
Sunil Bhave
Assistant Attorney General

**LIST OF ATTACHED EXHIBITS**

**EXHIBIT A**

Plaintiffs' Amended Complaint, (Doc. 22-1), 6/19/13

**EXHIBIT B**

Ortiz v. City of Chicago, 2010 WL 3833962, *6 (Sept. 22, 2010 N.D. Ill.)

**EXHIBIT C**

Ross v. Daley, 2006 WL 2460614, at *2 (Aug. 23, 2006 N.D. Ill.)

**EXHIBIT D**

Parties' July 29, 2013 email correspondence