# EXHIBIT B

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Daniel ORTIZ, Sr., Plaintiff,
v.
CITY OF CHICAGO, et al., Defendants.

No. 09–cv–2636.
Sept. 22, 2010.

Gregory E. Kulis, David Steven Lipschultz, Ronak D. Patel, Shehnaz I. Mansuri, Gregory E. Kulis and Associates, Ltd., Chicago, IL, for Plaintiff.

Andrew M. Hale, Avi T. Kamionski, Christina M. Liu, Jonathan M. Boulahanis, Andrew M. Hale & Associates, LLC, Chicago, IL, for Defendants.

**MEMORANDUM OPINION AND ORDER**
ROBERT M. DOW, JR., District Judge.

*1 Plaintiff, Daniel Ortiz, Sr., filed this civil rights lawsuit on April 30, 2009. His complaint names as Defendants several City of Chicago police officers (the "Individual Defendants") and the City of Chicago (the "City"). The Individual Defendants are D. Edwards, A. Hicks, and C. Hall. The complaint alleges that Edwards, Hicks, and Hall, armed with a search warrant for Plaintiffs *son's* apartment—but not Plaintiff's apartment, which was located immediately above his son's apartmen—"forcefully entered Plaintiff's second floor residence." Plaintiff alleges that the officers entered unlawfully, falsely arrested him, and used excessive force in effecting his arrest. Before the Court is Defendants' motion for summary judgment [48]. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I. Facts**

On summary judgment, the record evidence is viewed in the light most favorable to the non-moving party—in this instance, Plaintiff. The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements: Defendants' Statement of Facts ("Def.SOF") [50], Plaintiff's Response to Defendants' Statement of Facts ("Pl.Resp.Def.SOF") [57], Plaintiff's Statement of Additional Facts ("Pl.SOAF") [58], and Defendants' Response to Plaintiffs Statement of Additional Facts ("Pl.Resp.Def.SOAF") [61].[FN1] The Court notes that Plaintiff responded "neither admits nor denies" to several of Defendants' fact statements; those fact statements—unless they collided with other properly supported fact statements in Plaintiff's L.R. 56.1 Statement of Additional Facts—have been deemed admitted.

> FN1. L.R. 56.1 requires that statements of fact contain allegations of material fact, and that the factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583–85 (N.D.Ill.2000). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. See, e.g., *Koszola v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1109 (7th Cir.2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir.1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir.1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider the statement. See, e.g., *Malec,* 191 F.R.D. at 583. Additionally, where a party improperly

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. See L.R. 56.1(a), (b)(3)(B); see also *Malec,* 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 528 (7th Cir.2000). In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b) (3)(B) statement of additional facts. See, *e.g., Malec,* 191 F.R.D. at 584 (citing *Midwest Imports,* 71 F.3d at 1317). Similarly, the Court disregards a denial that, although supported by admissible record evidence, does more than negate its opponent's fact statement—that is, it is improper for a party to smuggle new facts into its response to a party's Rule 56.1 statements of fact. See, *e.g., Ciomber v. Coop. Plus, Inc.,* 527 F.3d 635, 643 (7th Cir.2008).

**A. Entry of the 5240 Building's Upstairs Unit**

On December 5, 2007, Defendant Hall obtained a valid search warrant for 5240 W. Addison Street, Basement Apartment, Chicago, Illinois (the "5240 Building"). The search warrant authorized the "Area 4 Gun Team" to search the entrance-way and basement apartment of the 5240 Building. Daniel Ortiz, Jr. ("Ortiz Junior"), who is Plaintiff's son, was the target of the search warrant, and the warrant also called for Ortiz Junior's person to be searched. The items to be seized under the warrant were a chrome .380 semi-automatic handgun, ammunition, and documents establishing proof of residency. Pl. Resp. Def. SOF ¶¶ 4–6; Def. SOF, Ex. C.

On the same night that the search warrant was signed, December 5, 2007, the Area 4 Gun Team executed the warrant. The Individual Defendants—Hicks, Hall, and Edwards—were positioned at the rear of the 5240 Building. Pl. Resp. Def. SOF ¶ 8. After knocking, announcing, and ramming down the door, the Individual Defendants entered the rear of the 5240 Building's basement apartment. Pl. Resp. Def. SOF ¶ 11; Hall Dep. at 73–74.[FN2]

> **FN2.** Another officer indicated that officers came in the side entrance. Rittorno Dep. at 37. But there is no disconnect in the evidence, because a diagram for the basement apartment indicates that the "rear entrance" is located on the side of the building. See Def. SOF, Ex. M, at 5 (5240 W. Addison Basement Apartment Diagram).

As the Individual Defendants were entering the rear of the 5240 Building's basement, Officer Karen Rittorno was positioned at the front of the 5240 Building. Pl. Resp. Def. SOF ¶ 9. According to Defendants, as the breach team entered the 5240 Building's basement, Rittorno called out over the radio that "somebody was running out the front up some stairs." Pl. Resp. Def. SOF ¶ 12; Hall Dep. at 8. However, although Plaintiff does not highlight the fact, Rittorno's deposition testimony of what she saw is more equivocal. Rittorno was positioned in the front of the house for safety reasons and to ensure that if evidence were tossed out of windows, she would be able to see what was occurring. Rittorno Dep. at 33. The front door of the basement apartment had windows near the top. Through those windows, Rittorno says that she saw "the side of the forehead and the top of a head." Rittorno Dep. at 35. The image she saw was a silhouette. Rittorno Dep. at 35. According to Rittorno, she called out "movement" on the radio.

\*2 Nonetheless, Plaintiff does not dispute that Rittorno made a call on the radio that the target of the warrant was running upstairs. PL Resp. Def. SOF ¶ 14.[FN3] Likewise, Plaintiff does not dispute that Hicks, Hall, and Edwards heard that radio transmission. Pl. Resp. Def. SOF ¶ 15; Hall Dep. at 79 ("[A] radio

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

transmission came through our radios saying that somebody was running out the front up some stairs"); Hicks Dep. at 69 ("The outside security units radioed that there was someone running up the stairs from the basement apartment."); Edwards Dep. at 57, 60 ("[The officer on the radio] said someone is running upstairs—well, target is running upstairs."). Defendant Hicks ran through the 5240 Building's basement unit and up the front stairs to the second floor apartment. Pl. Resp. Def. SOF ¶ 16; Hicks Dep. at 70.

> FN3. Plaintiff responded that he "neither admits nor denies" the fact statement, which the Court has deemed admitted. Rittorno said in her deposition testimony that it is "quite possible" that she was on the radio when she saw the silhouette upstairs, although she only ever says for certain—in part because of Plaintiffs counsel's questioning—that she made an initial call of "movement" over the radio. Rittorno Dep. at 36, 38. However, the Individual Defendants all testified that the radio call they heard said that the target of the warrant was running upstairs. *E.g.,* Hall Dep. at 79 ("[A] radio transmission came through our radios saying that somebody was running out the front up some stairs").

Defendant Edwards says that he went into the 5240 Building's basement at almost exactly the same time as Defendant Hicks went to the upstairs apartment. Edwards Dep. at 60. Edwards testified at his deposition that he remained in the basement for "a minute or so," securing two individuals who were in the unit (one male and one female, neither of whom was Ortiz Junior).FN4 At that point, Edwards' sergeant directed him to go upstairs in response to yelling. Pl. Resp. Def. SOF ¶ 17. When Edwards reached the upstairs apartment, he saw Defendant Hicks and Plaintiff on the ground and Defendant Hicks putting handcuffs on Plaintiff. Pl. Resp. Def. SOF ¶ 18.FN5

> FN4. These individuals were Ortiz Junior's friend and girlfriend.

> FN5. Plaintiff has denied this fact statement but does not cite any evidence that refutes Edwards's version of events, for example by offering witness testimony that pins Edwards to the location sooner than his testimony claims. Instead, Plaintiff contends that the form of the statement calls for speculation and that "Plaintiff has no way of knowing what Defendant Edwards saw or did not see." As to the first point, the objection is not well taken, even if Plaintiff was referring to the underlying deposition questioning rather than the form of the fact statement. The second point—essentially acknowledging that Plaintiff does not have evidence that refutes Defendants' version of events—simply is a basis for deeming admitted the fact statement in question.

As for Defendant Hall, while Plaintiff was being arrested upstairs, Hall remained in the basement with another officer as well as two individuals who were in the downstairs unit when the Area 4 Gun Team entered—Alberto Garcia (a friend of Ortiz Junior) and Maria Hernandez (Ortiz Junior's girlfriend). Def. SOF ¶ 19. Plaintiff denies that Hall remained downstairs and for that denial cites the deposition testimony of Rittorno. Yet the cited deposition testimony supports only the conclusion that Hall knew what had happened inside the residence—namely that Plaintiff "was being placed in custody for obstructing." Rittorno Dep. 52. As Defendants point out, the statement attributed to Hall shows only his knowledge of why Plaintiff was being arrested, not that he had any part in the events that took place in the upstairs unit. Moreover, Rittorno stated in her deposition that it might have been someone other than Hall who made the statement. Rittorno offered that it might have been Hicks—who the record shows *was* upstairs—who made the statement. Rittorno Dep. at 53. Plaintiff has not cited testimony, from the many eye witnesses in the upstairs

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

unit, placing Defendant Hall in the upstairs unit. Therefore, Plaintiff has failed to offer admissible record evidence that Hall left the 5240 Building's basement apartment, and Defendants' fact statement that Hall never entered the upstairs unit has been deemed admitted.

Plaintiff's version of the events surrounding the entry of the upstairs unit at the 5240 Building differs from Defendants' version of events, but focuses on the actual location of Ortiz Junior rather than whether Rittorno radioed that someone fled from the basement apartment to the upstairs unit. According to Plaintiff, Ortiz Junior was among the people who were upstairs when the search warrant was executed. Pl. SOAF ¶ 4. (The fact is disputed, but Plaintiff has supported it with admissible record evidence). The two people downstairs were a friend of Ortiz Junior, and Ortiz Junior's girlfriend. Def. Resp. Pl. SOAF ¶ 5; see also, *e.g.,* Rebecca Ortiz Dep. at 46; Gabrielle Ortiz Dep. at 38. According to Plaintiff, no one else was in the basement apartment and no one ran up to the upstairs apartment. See Pl. SOAF ¶¶ 5–6. After the police knocked on the door of the second floor residence, Plaintiff opened the door and the police officers pushed their way inside. Pl. SOAF ¶ 8. Still, Plaintiff "neither admits nor denies" whether Rittorno made the radio call to the other officers that someone was fleeing from the basement unit to the upstairs unit, and Plaintiff similarly "neither admits nor denies" whether Defendants heard the radio call. Pl. Resp. Def. SOF ¶¶ 14–15. Again, those fact statements have been deemed admitted.

**B. The Arrest of Plaintiff**

\*3 Viewed in the light most favorable to Plaintiff, these are the circumstances surrounding Plaintiff's arrest. After hearing loud noises (presumably the entry of officers into the basement), Plaintiff moved toward the front of the residence. Someone from outside yelled "Open the goddamn door. This is the Chicago police, the police." Pl. Resp, Def. SOF ¶ 25. Plaintiff did not block the officers from entering the second floor residence, nor did Plaintiff push the officers when they entered. Pl. SOAF ¶ 9–10. Plaintiff repeatedly asked for a warrant but was told to get on his knees with his face down. Def. Resp. Pl. SOAF ¶¶ 26–28. At this point, Ortiz Junior was standing behind Plaintiff, within arm's reach. Pl. Resp. Def. SOF ¶ 31. Ortiz Junior was already handcuffed. Pl. SOAF 8.5; Pl. Dep. at 64–65. According to Plaintiff's deposition testimony,[FN6] after an officer told Plaintiff that they did not need a warrant to be in Plaintiff's apartment, Officer Hicks grabbed Plaintiff and pinned him to the floor facing up. Along the way, "the back of [Plaintiff] hit the glass table that was there in the living room." Pl. Dep. at 67; see also Hicks Dep. at 101–02 (establishing that Hicks was the officer who arrested Plaintiff).[FN7] The record evidence is not entirely harmonious as to whether putting Plaintiff on the floor was a matter of design or whether Plaintiff tripped. Therefore, the Court will assume that Plaintiff was intentionally taken down by Officer Hicks. See also Def. SOF, Ex. J (arrest report stating that arresting officer "used emergency takedown" on Plaintiff). After Plaintiff was handcuffed, he complained that his handcuffs were too tight, but the officers did not loosen them. Pl. SOAF ¶ 15.[FN8]

> [FN6.] Because the parties disagree over how properly to characterize Plaintiff's deposition testimony, the Court refers directly to that deposition testimony.
>
> [FN7.] Although Plaintiff states that "Defendant Officers"—apparently all of them—rushed and tackled him, Plaintiff has not pointed to record evidence that any Defendant other than Hicks had physical contact with Plaintiff. There is also a dispute about whether Plaintiff fell or was taken down by Hicks intentionally. For summary judgment purposes, the Court presumes that Plaintiff was taken down by Hicks intentionally.
>
> [FN8.] Defendants object to the statement

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

based on deposition testimony by Plaintiff that is not without ambiguity. Because there is disputed evidence on the point, it must be viewed in the light most favorable to Plaintiff.

As a result of the incident, Plaintiff contends that his wrist and back were injured and that he suffered bruises and cuts. Def. Resp. Pl. SOAF ¶ 17. As another officer, Matthew Little, walked Plaintiff out of the apartment, the officer allegedly tightened Plaintiff's handcuffs and twisted his wrists, causing pain. Pl. Resp. Def. SOF ¶¶ 37. Officer Little, like Officer Rittorno, is not a named Defendant in this case.

**II. Legal Standard**

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County,* 327 F.3d 588, 592 (7th Cir.2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette,* 359 F.3d 925, 928 (7th Cir.2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal quotation marks and citation omitted).

**\*4** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

**III. Analysis**

**A. Entry of the 5240 Building's Upstairs Unit**

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures; it provides that "no Warrants shall issue, but upon probable cause" and that warrants must "particularly describ[e] the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. Entering a house without a warrant is presumed to be unreasonable, and therefore unconstitutional. *United States v. Venters,* 539 F.3d 801, 806 (7th Cir.2008) (circumstances justified warrantless entry into home where officer knew that children were living in a dangerous environment, including possible exposure to noxious, methamphetamine-making chemicals); *Peals v. Terre Haute Police Dep't,* 535 F.3d 621, 627 (7th Cir.2008) (discussing protective sweeps in accordance with *Maryland v. Buie,* 494 U.S. 325, 331, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)). Nonetheless, a "warrantless entry by criminal law enforcement officials may be legal where there is a compelling need for official action and no time to secure a warrant." *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *Mason v. Godinez,* 47 F.3d 852, 856 (7th Cir.1995). This is known as the exigent circumstances exception to the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

warrant requirement. The Seventh Circuit teaches that an officer may enter a house without a warrant where there is (1) probable cause supporting the entry; and (2) exigent circumstances. *Venters,* 539 F.3d at 806–07. Plaintiff questions only whether there were exigent circumstances at the time the officers entered the upstairs apartment of the 5240 Building, not whether the probable cause prong is satisfied.[FN9]

> FN9. Police have probable cause to conduct a search "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). To the extent that Plaintiff is arguing that there was no probable cause because there were no exigent circumstances, the argument merely collapses both prongs and does not address the radio report by Rittorno. See *Hanson v. Dane County, Wis.,* 608 F.3d 335, 338 (7th Cir.2010) (probable cause means "a good reason to act; it does not mean certainty"). In making a probable cause determination, it is reasonable for police officers to rely on reports of other law enforcement officers. *United States v. Spears,* 965 F.2d 262 (7th Cir.1992). Therefore, the Court, like Plaintiff, takes up only the exigent circumstances inquiry in detail.

The existence of exigent circumstances *vel non* is not the analytical lodestar: rather, the question, on which the government bears the burden of proof, is whether the police "had an objectively reasonable belief that exigent circumstances existed at the time of their warrantless entry into [Plaintiff's] residence." *United States v. Fiasche,* 520 F.3d 694, 698 (7th Cir.2008) (officers reasonably concluded that exigent circumstances justified warrantless entry in a case where criminal defendants may have been trying to destroy drug evidence). The situation is analyzed from the perspective of the officers on the scene. *Leaf v. Shelnutt,* 400 F.3d 1070, 1081 (7th Cir.2005). The subjective motivations of the officers are irrelevant. *Brigham City, Utah v. Stuart,* 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

**\*5** In this case, the information regarding the presence of a gun combined with information regarding Ortiz Junior's flight provides the critical elements in establishing that exigent circumstances justified entry into the upstairs unit. According to the search warrant that police obtained, there was probable cause to believe that a chrome .380 semiautomatic pistol with ammunition was located in Ortiz Junior's basement apartment. Def. SOF, Ex. C, at 4 (Warrant to search Ortiz Junior and the 5240 Building basement unit). When police breached the rear entrance of the 5240 Building's basement unit, Officer Rittorno radioed to the other officers that a suspect had fled to the upstairs unit. Pl. Resp. Def. SOF ¶¶ 14–15.

Given the knowledge that a semiautomatic handgun might have been present on the scene and possibly on Ortiz Junior's person—indeed, Ortiz Junior himself was subject to the search warrant—Defendant Hicks acted reasonably in pursuing someone, reported to be the target, who fled the basement unit. When a handgun is semiautomatic, such as the one that the police were attempting to locate, that means that each time the trigger is depressed, a shot is fired and a new round is automatically chambered. The weapon's classification as a handgun, in addition to its action, made the situation dangerous. As the Supreme Court observed in *District of Columbia v. Heller,* ––– U.S. ––––, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), handguns offer advantages to one wishing to repel home invaders. Although the Court was writing about self-defense, the reasons that make handguns desirable for the citizen defending his property also make handguns dangerous for officers who arrive to execute a search warrant at a place where a handgun is present. A handgun "is easier to store in a location that is readily accessible in an

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

emergency; it cannot easily be redirected or wrestled away * * *; it is easier to use for those without the upper-body strength to lift and aim a long gun; [and] it can be pointed at [someone] with one hand" while leaving the other hand free. *Heller,* 128 S.Ct. at 2818. The advantages of the weapon as a means of home defense underscore the danger faced by police officers who arrive at a residence to execute a search warrant where guns are present, particularly when the officers receive information that the target of the warrant has fled to the periphery of the area where the officers appeared.

And although Plaintiff contends that when he opened the door, he appeared to be the proverbial calm in the storm, the Fourth Amendment analysis generally disfavors hindsight bias and Plaintiff has not cited factual support for the contentions regarding his mien in any event. Moreover, a gun close at hand can be "suddenly transmogrified" from a passive instrument "into an offensive weapon" with essentially no warning. *United States v. Phelps,* 895 F.2d 1281, 1288 n. 4 (9th Cir.1990) (Kozinksi, J., dissenting from denial of rehearing en banc); see also *Smith v. United States,* 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) ("[A]s experience demonstrates, [a gun] can be converted instantaneously from currency to cannon."); *United States v. Bailey,* 123 F.3d 1381, 1385 n. 3 (11th Cir.1997) (referring to automatic and semiautomatic weapons as "especially dangerous firearms" and noting that commerce in them is strictly regulated). The fact that Hicks received a report that the potentially armed target of a search warrant had fled into a superjacent apartment—rather than Plaintiff's demeanor when the door to that apartment was opened—created the exigent circumstances.

**\*6** As a leading Fourth Amendment commentator has explained, "Delay in arrest of an armed felon may well increase danger to the community * * * or to the officers at the time of arrest. This consideration bears materially on the justification for warrantless entry." Wayne R. LaFave, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 6.1(f), at 311–12 (2004). If officers are forced to obtain a warrant in situations where a suspect is believed to be armed, they "risk a gun battle" once the warrant is obtained. *United States v. Standridge,* 810 F.2d 1034, 1037 (11th Cir.1987) (circumstances were "sufficiently exigent to justify a warrantless arrest" where officers had reason to believe that a suspect was armed, had committed a crime earlier that day, and was located in a hotel, rather than "wait for a warrant, and to risk a gun battle erupting in the halls, stairs, lobby, or other public area of the fully occupied hotel"); *United States v. Williams,* 612 F.2d 735, 739 (3d Cir.1979) ("The officers had reasonable cause to believe from the informant-information [sic] that appellant had just been involved in a very serious crime, that he had fired his weapon at a witness in escaping the scene and that he was going to get his affairs together and go south, from all of which the officers were more than justified in believing that armed flight was imminent."). The fact that the entry into the upstairs unit occurred as part of a continuous sequence with little time lag also supports the conclusion that exigent circumstances were present. See *Mason,* 47 F.3d at 856 (timing of events was consistent with exigent circumstances where officers took immediate steps to secure a house and proceed through it in search of a suspect).

In sum, the facts of this case, at least as developed by the parties, fall squarely within the exigent circumstances exception. Numerous other cases are in accord with that conclusion. See *United States v. Soto–Beniquez,* 356 F.3d 1, 36 (1st Cir.2004) ("[A]n officer who is looking for a fleeing suspect and has a reasoned basis to think that he has found the suspect is justified in pursuing the suspect into a house."); *United States v. Weems,* 322 F.3d 18, 23 (1st Cir.2003) (exigent circumstances justified entry into third party's residence where arrestee was known to be armed and dangerous, had a history of assault, was trying to escape, and had the opportunity to destroy or hide his gun); *United States v. Rico,* 51 F.3d 495, 501

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

(5th Cir.1995) (exigent circumstances justified entry into residence where arrest was made in driveway of residence that police had "a reasonable belief" contained armed individuals); United States v. Lopez, 989 F.2d 24, 25–26 (1st Cir.1993) (exigent circumstances justified warrantless entry into apartment where the defendant, who fit the description of an armed suspect, fled into a building after being told to halt); United States v. Lindsey, 877 F.2d 777, 781–82 (9th Cir.1989) (exigent circumstances justified warrantless entry where police arresting a departing drug dealer learned of the presence of bombs in residence and guns with which to defend that residence, although seemingly indicating that the presence of bombs played a larger role in the analysis). Hicks was in hot-pursuit of someone whom he reasonably thought to be an armed (fleeing) target of a search warrant. Edwards responded to shouting upstairs after Hicks made that entry. There is no evidence that Hall ever entered the upstairs unit.

**\*7** Plaintiff's argument regarding exigent circumstances loses sight of the critical inquiry. According to Plaintiff, the Court can either accept Defendants' version that exigent circumstances existed on the night of December 5, or accept Plaintiff's version that there were no exigent circumstances. Plaintiff offers evidence that Officer Rittorno could not possibly have seen anyone run upstairs, because Ortiz Junior already was upstairs. Therefore, construing the evidence in the light most favorable to him, Plaintiff maintains that summary judgment cannot be entered against him. See Pl. Mem. at 3–4. But for the reasons discussed above, that argument must fail. Exigent circumstances exist for Fourth Amendment purposes where the police had "an objectively reasonable belief that exigent circumstances existed at the time of their warrantless entry into [Plaintiff's] residence." United States v. Fiasche, 520 F.3d 694, 698 (7th Cir.2008). Officers are generally entitled to rely on the accounts of their fellow officers in making their judgments. See, e.g., United States v. Spears, 965 F.2d 262 (7th Cir.1992).

The more interesting aspect of the case, as to which Plaintiff did not bring a claim and as to which the facts are not fully developed, is whether it was permissible to conduct a full-blown search of the upstairs apartment or whether officers could have done no more than secure the apartment and its occupants until a second warrant was obtained. See LaFave § 6.5(c), at 425; cf. Illinois v. McArthur, 531 U.S. 326, 337–38, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (Souter, J., concurring) (suggesting that the changing contours of exigent circumstances may require law enforcement to alter their conduct as the situation unfolds and not undertake actions without a warrant); United States v. Limares, 269 F.3d 794 (7th Cir.2001).

In order to stave off summary judgment, the Federal Rules of Civil Procedure, the Supreme Court's summary-judgment case law, and our adversary system required Plaintiff to specify which facts create a genuine issue of material fact. Plaintiff has not attempted to argue that probable cause was fabricated in this case or otherwise show that it was objectively unreasonable for Hicks and Edwards to conclude that exigent circumstances existed when they made their warrantless entry into Plaintiff's apartment. Moreover, Plaintiff has failed to show that Hall ever entered the upstairs unit. Therefore, the Court grants Defendants' motion for summary judgment on Plaintiff's unlawful entry claim.

**B. False Arrest Claim**

The Court grants in part and denies in part Defendants' motion for summary judgment on Plaintiff's false arrest claim. The motion is granted with respect to Defendants Hall and Edwards. The motion is denied with respect to Defendant Hicks.

A police officer has probable cause to effect an arrest "when the facts and circumstances that are known to him reasonably support a belief that the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

individual has committed, is committing, or is about to be commit a crime." *Holmes v. Vill. of Hoffman Estates,* 511 F.3d 673, 679 (7th Cir.2007). Plaintiff was arrested for violating 720 ILCS 5/31–1(a). That law provides that a person commits a Class A misdemeanor if he "knowingly resists or obstructs" the performance of "any authorized act" within the officer's official capacity, so long as the person knows that the person being resisted is a police officer. The only authority that Defendant cites for arresting Plaintiff actually indicates that officers did not have probable cause to arrest him. See *People v. Hilgenberg,* 223 Ill.App.3d 286, 165 Ill.Dec. 784, 585 N.E.2d 180, 183–84 (Ill.App.Ct.1991) (discussing *People v. Stoudt,* 198 Ill.App.3d 124, 144 Ill.Dec. 466, 555 N.E.2d 825 (Ill.App.Ct.1990)). In *Hilgenberg,* the Illinois Appellate Court held that refusal to answer the door to permit entry of the sheriff, at least on the facts of that case, did not constitute obstruction. 165 Ill.Dec. 784, 585 N.E.2d at 184. In *Stoudt,* the court agreed that failing to comply with an officer's order to move did not constitute obstruction. 144 Ill.Dec. 466, 555 N.E.2d at 826 (refusal to cooperate, without more, does not constitute obstruction). The authorities cited by Defendants indicate that if officers had made a physical move to take Plaintiff into custody—and Plaintiff had resisted or even "gone limp" at that point—then Defendant Hicks would have committed obstruction. Although Defendants cite a contrary Seventh Circuit ruling, the case cited by Defendants is unpublished and Defendants misstate the facts of that case. More to the point, the Seventh Circuit stated unambiguously in *Payne v. Pauley,* 337 F.3d 767, 776 (7th Cir.2003), a published opinion, that "the resistance must be physical" and that "mere argument will not suffice" in order to fall under 720 ILCS 5/31–1.[FN10] Finally, and although the Supreme Court's holding in *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004), means that Defendants could have prevailed if they had probable cause to make an arrest for a crime other than the one with which they charged Plaintiff, Defendants have relied primarily on their obstruction theory and have not supported that theory with favorable case law.[FN11] As to Defendant Hicks, at least, Defendants' motion must be denied.

> [FN10.] The Court notes that Defendants cited extensively from unpublished Seventh Circuit opinions. Although Defendants contend that they merely cite the cases to make reference to district court rulings that have been affirmed, Defendants obviously and extensively rely on the cases for their analyses. That practice is to be avoided.

> [FN11.] Defendants' argument that portions of the Illinois Code that give officers authority to detain people and use reasonable force to bring the scene of a warrant's execution under control are inapt for three reasons. First, those provisions (see 725 ILCS 5/108–6–9) deal with the execution of a warrant rather than a warrantless entry. Second, the provisions by their terms appear to authorize detentions but not full-blown arrests in order to ensure officer safety. Third, an Illinois statute that authorized officers, without a search warrant, to enter a residence and arrest residents would run afoul of the Constitution's Supremacy Clause.

**\*8** However, the undisputed facts are that Hall remained downstairs while Hicks effected Plaintiffs arrest. The undisputed facts also show that Edwards arrived on the scene as Plaintiff was being handcuffed by Hicks—Edwards's mere presence at the scene fails to provide the requisite personal involvement to support a false arrest claim. See *Morfin v. City of East Chicago,* 349 F.3d 989, 1000–10001 (7th Cir.2003) (officer who transported arrestee was custodian not subject to suit for false arrest); *Rodriguez v. Cirilo–Garcia,* 115 F.3d 50, 52 (1st Cir.1997) (plaintiff must show that defendant was cause-in-fact of the alleged constitutional injury); *Maltby v. Winston,* 36 F.3d 548 (7th Cir.1994) (personal responsibility may

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

be shown if an officer "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent"); Burke v. Town of Walpole, 2004 WL 507795, at *22 (D.Mass. Jan.22, 2004) (inaction may satisfy cause-in-fact component of Section 1983 action where inaction was a substantial factor in producing the harm).

Because Plaintiff has not shown sufficient personal involvement by Edwards or Hall, Defendants' motion for summary judgment on the false arrest claim is granted as to those two Defendants. The motion for summary judgment is denied with respect to Defendant Hicks.

**C. Excessive Force and Failure to Intervene**

Defendants' motion for summary judgment on Plaintiff's excessive force and failure to intervene claim is similarly granted in part and denied in part. The motion is granted with respect to Hall and Edwards, against whom Plaintiff makes a failure to intervene argument. The motion is denied with respect to Hicks, against whom Plaintiff makes an excessive force argument.[FN12]

> FN12. Plaintiff does not actually individuate his analysis, lumping all Defendants together as if they were a single unit—and charging all of them with both excessive force and failure to intervene. Because the record evidence indicates that only Hicks effected the arrest of Plaintiff, the Court has construed Plaintiff's claim as (1) an excessive force claim against Hicks and (2) a failure to intervene claim against Edwards and Hall.

Claims of excessive force are analyzed under an objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The absence of physical injury is an important indicator that excessive force was not used but is not talismanic. See McNair v. Coffey, 279 F.3d 463, 468–69 (Cudahy, J., concurring). Courts have, for instance, found that police may be held to have used excessive force based on frightening displays of force. See, *e.g.,* Sharrar v. Felsing, 128 F.3d 810, 821 (3d Cir.1997) (no excessive display of force when police arrested four men suspected of domestic assault by "calling over twenty police officers to the scene, including a SWAT team armed with machine guns and an FBI hostage negotiator"). The amount of force that is constitutionally permitted decreases as the threat of danger posed decreases, See, *e.g.,* Estate of Starks v. Enyart, 5 F.3d 230, 234 (7th Cir.1993). Where physical injuries are present, even minor injuries may support an excessive force claim. See, *e.g.,* Holmes, 511 F.3d at 687. It is not the case, as Defendants contend in their citation to a non-precedential Seventh Circuit opinion and a necessarily non-precedential district court opinion, that officers must intend to cause Plaintiff injury in order to maintain a Fourth Amendment excessive force claim. Richman v. Sheahan, 512 F.3d 876, 882 (7th Cir.2008) ("The officers' intent in using force is irrelevant in a Fourth Amendment case.").

**\*9** Defendants contend that the record evidence shows unequivocally that Plaintiff tripped of his own accord during the arrest. Not so. Hicks' own arrest report in the case states that he used an "emergency takedown" on Plaintiff. In Chelios v. Heavener, 520 F.3d 678, 689 (7th Cir.2008), the arresting officers tackled the less than "docile and cooperative" plaintiff after failing to tell the plaintiff that he was under arrest. Although Plaintiff was less than docile, because he did not immediately abide by Hicks's command to drop to the floor and instead questioned the police as to why they had entered his home, Defendant has not argued that forcing Plaintiff to the ground in the manner that he did was objectively reasonable. The Court will not make the argument—as to which, because the argument went unmade, Plaintiff has not had the opportunity to respond. The Seventh Circuit

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

teaches that the excessive force inquiry is based on the totality of the circumstances. *E.g., Gonzales v. City of Elgin,* 578 F.3d 526, 539 (7th Cir.2009). In the absence of briefing on those circumstances, the Court will not enter summary judgment. Moreover, the Court notes that at the time that Plaintiff was arrested, there is record evidence that Ortiz Junior had already been subdued, and Defendants have not pointed to evidence that Plaintiff was told that he was under arrest before being taken down.

Although summary judgment must be denied with respect to Defendant Hicks, Plaintiff has not marshaled evidence that any Defendant other than Hicks used force in effecting Plaintiff's arrest (or otherwise participated in that arrest). Instead, Plaintiff seemingly maintains that Defendants Hall and Edwards should be held liable on a failure to intervene theory. In order to prevail on a failure to intervene theory in a Section 1983 case, Plaintiff must show that the non-intervening officers "had reason to know excessive force was being used and had a realistic opportunity to prevent the harm from occurring." *Montano v. City of Chicago,* 535 F.3d 558, 569 (7th Cir.2008). In *Montano,* the Seventh Circuit affirmed summary judgment in favor of a police officer who was "not even involved" in the plaintiff's arrest and as to whom the "scant record materials" did not describe the officer's conduct—like Hall, whom Plaintiff has not placed at the scene of the arrest. 535 F.3d at 569. Likewise, the Seventh Circuit affirmed summary judgment in favor of an officer who was a passenger in a van, where the plaintiff in the case was being abused by another officer in the van's rear. The Seventh Circuit reasoned that the passenger officer's mere presence in the van "does not by itself permit the inference that he was informed of the facts that establish a constitutional violation and had the ability to prevent it." *Id.* at 569. See also *Lanigan v. Village of East Hazel Crest, Ill.,* 110 F.3d 467, 478 (7th Cir.1997) (complaint dismissed where force used by arresting officer occurred quickly, so that there was no realistic opportunity for other officer to intervene).

**\*10** Under the failure-to-intervene framework, Plaintiff cannot prevail on a claim against Defendant Edwards or Hall, though Edwards presents the slightly trickier case. As to the force used initially in effecting the arrest, the only record evidence highlighted by the parties indicates that Edwards arrived on the scene *after* Plaintiff was put on the floor with an "emergency takedown" move. That means that Edwards could not have observed the facts preceding the encounter (such as Plaintiff's conduct), which may have made Hicks's use of force reasonable or unreasonable. And of course, even if Edwards had been there to observe the takedown, liability could not be imposed unless Edwards had an opportunity to alter the course of events. See *Abdullahi v. City of Madison,* 423 F.3d 763, 774 (7th Cir.2005) ("This Court has implied that a realistic opportunity to intervene may exist whenever an officer could have called for a backup, called for help, or at least cautioned the excessive force defendant to stop.") (quotation marks and alterations omitted); *Wilson v. Town of Mendon,* 294 F.3d 1, 14 (1st Cir.2002) (no liability for an attack that is "over in a matter of seconds").

Plaintiff, however, has highlighted evidence supporting an inference that Edwards was aware of excessive force after Plaintiff was taken down—specifically, Ortiz Junior testified that before Plaintiff was removed from upstairs apartment, he complained about the tightness of his handcuffs. Pl. SOAF ¶ 15; Ortiz Junior Dep. at 112.[FN13] Neither party describes the factual scene with great detail, but the record evidence indicates not only that Plaintiff complained about the handcuffs but that Edwards remained present for any complaint. Edwards Dep. at 100–01. As a general matter, an excessive force claim may be based on overly tight handcuffs, at least where the arrestee complains to the arresting officers about the tightness of the handcuffs. *Lyons v. City of Xenia,* 417 F.3d 565, 576 (6th Cir.2005). That, however, does not end the matter.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

> FN13. Defendant counters the pertinent fact statement by citing a portion of Plaintiff's deposition testimony in which Plaintiff, answering questions about his conversations as he was being placed into a cell, acknowledges that he did not complain about injuries prior to being placed in the cell. Pl. Dep. at 105. The context of the conversation makes it unclear if Plaintiff was answering questions only about his conversations with officers at the police station. Moreover, the brief portion of the deposition that was provided does not refute the testimony that Plaintiff complained that the handcuffs were too tight.

The Seventh Circuit's holding in *Tibbs v. City of Chicago,* 469 F.3d 661, 665–66 (7th Cir.2006), is squarely on point and leads to judgment in favor of Edwards. In *Tibbs,* the Seventh Circuit noted that it has "on occasion recognized valid excessive force claims based on overly tight handcuffs" (*id.* at 666) but emphasized that passing complaints about handcuff tightness will not support an excessive force claim:

> In *Herzog v. Village of Winnetka,* 309 F.3d 1041 (7th Cir.2002), we held the plaintiff was entitled to a jury trial on her excessive force claim where she produced evidence that the arresting officer lacked probable cause for the arrest, shoved her to the ground even though she was not resisting, cracked her tooth by forcing a breath-screening device into her mouth, waited over an hour to loosen handcuffs she complained were too tight, and subjected her to blood and urine testing at a hospital, even though she had passed all field sobriety tests and had registered a 0.00 Breathalyzer reading. *Id.* at 1043–44. *See also Lester v. City of Chi.,* 830 F.2d 706, 714 (7th Cir.1987) (a properly instructed jury could have found excessive use of force if it believed plaintiff's testimony that even though she did not resist arrest, officers threatened to punch her, kneed her in the back, dragged her down a hallway, and handcuffed her so tightly her wrists were bruised).

**\*11** * * * The plaintiff in *Payne* told the officers her hands were numb and ultimately underwent two surgeries because of wrist injuries caused by the too-tight handcuffs. *Payne,* 337 F.3d at 774–75, 780–81. Here, Tibbs complained only once to Officer Kooistra, gave the officers no indication of the degree of his pain, experienced minimal (if any) injury, and sought no medical care. The plaintiffs in *Herzog* and *Lester* experienced tight handcuffing more akin to the discomfort Tibbs alleges, but the decisions in those cases were hardly based on overly tight handcuffs alone. The *Herzog* and *Lester* plaintiffs presented evidence they had suffered numerous additional injuries, including a cracked tooth, plainly gratuitous blood and urine testing, being kneed in the back, and being dragged down a hallway. *Herzog,* 309 F.3d at 1043–44; *Lester,* 830 F.2d at 714.

*Tibbs,* 469 F.3d at 666 (summary judgment appropriate even where handcuffs were applied "somewhat too tightly" and there was only a single complaint to officers about the tightness of the handcuffs). As in *Tibbs,* there is minimal evidence that Plaintiff complained about the tightness of his handcuffs, no evidence that he "elaborated" on the injury, no evidence that the injuries proved more than mild, and no evidence of other "numerous" injuries along the lines of those in *Herzog* and *Lester.*[FN14] The only evidence that Plaintiff complained at all came from Ortiz Junior during his deposition:

> FN14. Plaintiff indicated in his deposition testimony that his wrists were in pain while he was at the police station (Pl. Dep. at 101), but Plaintiff has not identified evidence that speaks to the severity of pain or injuries that he suffered. He did indicate, however, that he had some scrapes and bruises (somewhere on his person) on December 8 and never missed work. Pl. Dep. at 114–15

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

Q. Okay. You didn't hear your dad complain about the handcuffs being too tight, right?

* * *

A. Yeah, he was actually saying that like towards the end a little bit, that his arm—his—his hands were hurting, could they loosen the cuffs?

Ortiz Junior Dep. at 112. That evidence—which is all that Plaintiff highlights—hardly establishes more than mild discomfort. In addition to the evidence that the complaints were minimal and would not have put an officer on notice that the handcuffs were too tight for constitutional purposes, Plaintiff has not offered other evidence (for example evidence of observable discoloration in his hands) that might have put Edwards or anyone else on notice that the handcuffs were too tight. See *Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 593–94 (7th Cir.1997); see also *Stainback v. Dixon,* 569 F.3d 767, 773 (7th Cir.2009) (generalized complaints, without more, insufficient to maintain excessive force claim based on overly tight handcuffs).

Therefore, the Court grants Defendants' motion for summary judgment on Plaintiff's excessive force/failure to intervene claim as to Defendant Edwards. Likewise, the motion is granted as to Defendant Hall, whom the record evidence indicates remained in the basement apartment. The motion is denied as to Defendant Hicks.

**D. Due Process Claim**

Because Plaintiff states in his response brief that he is abandoning his due process claim (Pl. Mem. at 13), Defendants' motion for summary judgment on that claim is denied as moot,

**E. Qualified Immunity**

*12 Qualified immunity "protects government officials from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Viilo v. Eyre,* 547 F.3d 707, 709 (7th Cir.2008) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity is immunity from suit rather than merely a defense to liability. *Scott v. Harris,* 550 U.S. 372, 376 n. 2, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The qualified immunity analysis comprises a two-part inquiry: (i) "whether the facts alleged show that the state actor violated a constitutional right," and (ii) "whether the right was clearly established." *Hanes v. Zurich,* 578 F.3d 491, 493 (7th Cir.2009). "[L]ucid and unambiguous dicta concerning the existence of a constitutional right can * * * make the right 'clearly established' for purposes of qualified immunity." *Hanes,* 578 F.3d at 496 (quoting *Wilkinson v. Russell,* 182 F.3d 89, 112 (2d Cir.1999) (Calabresi, J., concurring)).

Defendants' briefing on qualified immunity—which at this point relates only to the false arrest and excessive force claims against Hicks—is not adequate. As to the false arrest claim, Defendants misapprehend the case law on when an officer has probable cause to make an arrest under 720 ILCS 5/31–1. Indeed, the case law that Defendants' cite establishes that an individual must do more than just fail to cooperate in order to be charged under the statute. See *People v. Hilgenberg,* 165 Ill.Dec. 784, 585 N.E.2d at 183–84; *People v. Stoudt,* 144 Ill.Dec. 466, 555 N.E.2d at 826. And Defendants' argument that the exigent circumstances faced by officers produced "ambiguity in assessing how much of an obstructionist plaintiff was being" lands wide of mark: the case law is clear that physical conduct by the Plaintiff is *the* essential ingredient in an obstruction charge, *Payne,* 337 F.3d at 776 ("the resistance must be physical"; "mere argument will not suffice"). The law was sufficiently well established under Illinois law such that a reasonable officer would have been aware of it.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

*Narducci v. Moore,* 572 F.3d 313, 318 (7th Cir.2009) (citing *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). (Moreover, the record evidence is mixed on whether the exigent circumstances had in fact abated, because Plaintiff testified that Ortiz Junior already was in custody when Plaintiff was arrested.)

As to the excessive force claim, Defendants contend in their briefs only that Plaintiff tripped and therefore that the amount of force used by Hicks was reasonable. That contention, at least when the evidence is viewed in the light most favorable to Plaintiff (as the Court must), is belied by the current state of the evidentiary record. Defendants never briefed the question of whether the specific use of force in conducting an "emergency takedown" was reasonable under the circumstances of this case. Thus, even accepting Defendants' argument that officers may "secure the premises and protect themselves by pointing weapons at the occupants, putting them on the floor, and handcuffing them" (Def. Br. at 12), there is a fact question as to whether Plaintiff's account that he was "thr[own], pushed, and tackled as he was handcuffed" (*id.*) was an appropriate or excessive way for Officer Hicks to "secure the premises and protect [the officers]."

**\*13** The upshot is that qualified immunity on the excessive force claim is not available—at least *at this time*—based on a murky factual picture and under-developed briefing. As in *Malec v. Sanford,* 191 F.R.D. 581, 588 (N.D.Ill.2000), in which Judge Castillo set out useful guidance to litigants, Defendants did little more than cite cases that stand "for the general proposition that qualified immunity exists and then conclusorily assert that they are entitled to it," A party must do more than gesture in the general direction of the record and make conclusory assertions about what the record shows. "[J]ust as a district court is not required to scour the record looking for a factual dispute, it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case." *Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995). In this case, the facts appear sufficiently similar to those in *Chelios,* where the Seventh Circuit held that additional factual development was necessary in order to determine if the defendant-officer's force was "so plainly excessive that a reasonable police officer would have been on notice that such force is violative of the Fourth Amendment." See also *Clash v. Beatty,* 77 F.3d 1045, 1048 (7th Cir.1996) ("It is clear * * * that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any Provocation whatsoever."); *id.* (noting that additional factual development at trial would "concern the relationship between the [police officer's] shove and the harm that [the plaintiff] may have presented").

For the foregoing reasons, Defendants' motion for summary judgment based on qualified immunity is denied at this time. Defendants, of course, remain free to renew their qualified immunity defense should the case proceed to trial. [FN15]

> FN15. The Court notes that Defendants have never presented arguments on whether the police were justified, at least initially, in "taking down" Plaintiff as part of a protective sweep under *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), and its progeny.

**IV. Conclusion**

For the reasons set forth above, Defendants' motion for summary judgment is granted in part and denied in part. As to Defendants Hall and Edwards, the summary judgment motion is granted in its entirety. As to Defendant Hicks, the motion is granted as to the unlawful entry claim, but denied as to the false arrest and excessive force claims. In light of Plaintiffs decision to abandon his due process claim, Defendant's motion for summary judgment on that claim is denied as moot.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)
**(Cite as: 2010 WL 3833962 (N.D.Ill.))**

N.D.Ill.,2010.
Ortiz v. City of Chicago
Not Reported in F.Supp.2d, 2010 WL 3833962 (N.D.Ill.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.