IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| KIM RHEIN | ) | |
| DAVID RHEIN | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 13 C 843 |
| | ) | |
| AGENT PRYOR, et. al. | ) | Hon. Judge Gary Feinerman |
| | ) | |
| Defendants. | ) | Hon. Mag. Judge Young B. Kim |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

The Plaintiffs, by and through their attorney, Richard Dvorak, of THE LAW OFFICES

OF RICHARD DVORAK, responds as follows to Defendants' Motion to Dismiss:

## BACKGROUND

The Plaintiffs will not re-iterate the allegations made in the First Amended Complaint.

However, it is important to respond to a few assertions made by the Defendants in their motion

to dismiss.  First, contrary to the Defendants' assertion (Def. Mtn. ¶ 1), it is not clear whether

Plaintiff David Rhein's FOID card was revoked prior to the seizure of his firearms, since the

letter was not received until after the seizure occurred, and the Plaintiffs only allege Lt. Coffman

or someone else "purported to" revoke Mr. Rhein's FOID card prior to the seizure (FAC  ¶¶ 12-

16).  Second, the Defendants assert, "Plaintiffs admit that Mr. Rhein had made perceived threats

to a locally elected government official."  (Def. Mem. P. 2, n. 5).  The Defendants cite to

paragraph 36 of the First Amended Complaint, but that paragraph makes no such admission.

Instead, the Plaintiffs state some unknown person "somehow construed" Mr. Rhein's political

comments to a local representative as evidence that he had a mental condition that made him

dangerous (FAC ¶ 36).

## STANDARD OF REVIEW

Under federal notice pleading, Plaintiffs are required to provide only a short and plain statement of the claim, showing that they are entitled to relief. Fed. R. Civ. P. 8(a)(2); *Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). The facts alleged must raise the right to relief above the speculative level, and facts are beyond speculative if they provide notice to the defendants and appear plausible. *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007); *Sims*, 506 F.3d at 514. The well-pleaded allegations of the complaint must be taken as true and all reasonable inferences must be drawn in Plaintiffs' favor. *Twombly*, 127 S.Ct. at 1965; *Sims*, 506 F.3d at 512. Once a claim has been stated, it can be supported by showing any set of facts consistent with the allegations. *Twombly*, 127 S.Ct. at1969.

## ARGUMENT

I.      The Plaintiffs Have Adequately Established A Due Process Violation

A. Section 8(F) of the FOID Card Act is Impermissibly Vague

The Plaintiffs allege in their First Amended Complaint that Section 8(F) of the FOID Card Act is vague (FAC ¶¶ 27). A cornerstone of United States and Illinois jurisprudence is that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amends V, XIV; Ill. Const. 1970, art. I, § 2. A well-established tenant of due process is the requirement that the proscriptions of a criminal statute be "clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). To successfully challenge a criminal statute as being vague on its face, the statute must be impermissibly vague in all its applications. *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 494-95 (1982). That is, "the statute must be shown to be vague 'in the sense that no standard of conduct is specified at all.' " *Id*. (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). If on its face the challenged statute violates the

due process clause, then the specific details of the individual offense would not serve to validate the statute. *Id*.; *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939).

A statute may be vague for two different, but related reasons. First, a statute must be sufficiently definite so that it giver persons of ordinary intelligence a reasonable opportunity to distinguish between lawful and unlawful conduct." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). This means the statute must be phrased with enough specificity that "ordinary persons are not required to guess at a law's meaning, but, rather, can know what conduct is forbidden and act accordingly." *Id*.; *Flipside*, 455 U.S. at 498. Second, a statute must adequately define the criminal offense in such a manner that does not encourage "arbitrary and discriminatory enforcement." *Id*., *Kolender*, 461 U.S. at 357-58. Where legislators "fail to provide minimal guidelines to govern law enforcement, a criminal law 'may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their own predilections." *Id*. (quoting *Kolender*, 461 U.S. at 358).

In this case, it is unclear what the legislature meant by a person who has a "mental condition." The Act states, "For purposes of this Section, 'mental condition' means a state of mind manifested by violent, suicidal, threatening, or assaultive behavior." Apparently, no standard dictionary defines the term "mental condition," but Miriam Webster's dictionary defines "condition" as "a state of being." http://www.merriam-webster.com (June 19, 2013). Thus, every person walking on the planet has a "mental condition," since we all have a state of being that involves the mind (even those who are considered "brain dead" could be said to have a "mental condition" since their state of being is a lack of mental activity). To the extent the Act offers a further definition of "mental condition" as manifesting "violent, suicidal, threatening or assaultive behavior," this, too, does not narrow the definition because there is no further

definition of what it means to exhibit threating or assaultive behavior. See, e.g., *In re: Torski C.*, 918 N.E.2d 1218 (Ill. App. Ct. 2009) (finding a revised civil commitment statute unconstitutional that allowed for the commitment of a person whose "mental illness" (as opposed to "mental condition") made him reasonably likely to engage in "dangerous conduct," a term that was too vague to survive constitutional scrutiny). The vagueness of this portion of the Act can be seen in comparison to the Act's very specific and well-defined definition of a person who is "mentally defective," and thus ineligible to obtain a FOID Card. 430 ILCS 65/1.1(1)(2)(3)(4)(5); 430 ILCS 65/4(a)(iv) (West 2013). Further, a person of ordinary intelligence would not know what it means to present a "clear and present danger[1]" to himself, herself, or others. As the Supreme Court has explained, "At one time or another every person exhibits some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable." *Addington v. Texas*, 441 U.S. 418, 426 (1979) (striking down a civil commitment statute as a violation of due process where the standard was preponderance of the evidence, rather than "clear and convincing.")

Thus, with no guidance, the statue inevitably leads to arbitrary and discriminatory law enforcement because the Director of the Illinois State Police, Mr. Grau, or presumably any employee he has delegated his authority to, has complete discretion to determine who has a "mental condition" and who is a "clear and present danger" to himself or others. There are no standards at all to guide the Director or his employees, thus allowing a police officer, rather than a mental health professional, to make critical psychological decisions without any standards to be

[1] The Supreme Court has allowed "fighting words" to be proscribed, and those include words that present a "clear and present danger," however, that definition is also limited to those words presenting a "clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest . . . [;]" and "there is no room under our Constitution for a more restrictive view." *Purtell v. Mason*, 527 F.3d 615, 624 (7th Cir. 2008). While this does not directly address the vagueness issue, it is noteworthy that the "clear and present danger" First Amendment test is very much limited by further definition, while the "clear and present danger" test in the FOID Card statute in question does not contain such a limitation. As written, it is completely unclear what it means to present a "clear and present danger" to oneself or another.

used for guidance. It is hard to imagine a statute that is more standardless in a delicate social arena that begs for specific standards.

B. Section 8(F) of the FOID Card Act Does Not Provide an Adequate Pre- Depravation Remedy to Challenge the Seizure of an Individual's FOID Card.

Section 8(F) of the FOID Card Act violates procedural due process, in violation of the Fifth and Fourteenth Amendment to the United States Constitution. To sustain a claim for a procedural due process violation, a plaintiff must establish: (1) the offending conduct was committed by someone acting under color of law; (2) the actions deprived the plaintiff of a constitutionally protected property interest; and (3) the depravation occurred without due process of law. *Germano v. Winnebago County, Ill.*, 403 F.3d 926, 928 (7th Cir. 2005). There is no question the actions were taken under color of law and, importantly, the Defendants have conceded the Plaintiffs have a property interest in the use and enjoyment of their firearms as well as Mr. Rhein's FOID card (Def. Mem. 4).

Regarding the third prong, the Defendants have also conceded the statute in question provides for no pre-depravation hearing before taking the Plaintiffs' firearms and Plaintiff David Rhein's FOID Card. (Def. Mem. 6). The United States Supreme Court generally presumes, to satisfy due process, there must be some sort of due process provided *before* the deprivation of property actually occurs. As the Court in *Zinermon v. Burch*, 494 U.S. 113 (1990) has explained:

> The Court usually has held that the Constitution requires some kind of hearing *before* the State deprives a person of liberty and property. See, *e.g.*, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985) (" 'The root requirement of the Due Process Clause" is " 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest' " . . . *Zinermon*, 494 U.S. at 127 (emphasis in original) (quoting *Parham v. J.R.*, 42 U.S. 584, 606-07 (1979)).

In support of their contention that the Act does not violate procedural due process principles, even though the Act concededly does not provide for a pre-depravation hearing, the Defendants argue it would have been impracticable to provide Plaintiff David Rhein a pre-depravation hearing, and thus the Act does not violate procedural due process (Def. Br. 6). The exception to the general rule prohibiting the lack of a pre-depravation hearing represents a "special case." *Id*. See also *Cushing v. City of Chicago*, 3 F.3d 1156, 1165 (7th Cir. 1993) (calling the allowance of a lack of pre-depravation remedy "a special instance.") Importantly, even though courts are to conduct a balancing test, "In situations where the State feasibly can provide a post-deprivation hearing before taking property, it generally must do so *regardless of the adequacy of the post-deprivation tort remedy to compensate for the taking*." *Id*. at 132 (emphasis added). In conducting this analysis, courts must always be cognizant of the fact that due process normally requires a pre-deprivation hearing, and that good reasons must exist for departing from this rule. "[T]his standard should not blind one to what is really at stake in these cases: whether there are constitutionally sound reasons to depart from the usual procedural due process requirement of a pre-deprivation hearing." *Chaney v. Suburban Bus Division of the Regional Transportation Authority*, 52 F.3d 623, 628 (7th Cir. 1995).

There is no doubt the Defendants are correct that the State has a strong interest in regulating firearms (Def. Mem. 6), and the Plaintiffs concede this point. However, even though the Defendants lay out a three-part test for determining whether a pre-deprivation determination was necessary, they do not even address any other factors, even though this Court must not only consider the *Matthews v. Eldridge*, 424 U.S. 319 (1976) three-part balancing test, but this Court must also determine whether to even conduct such a balancing test if offering a pre-deprivation

hearing was feasible, thus negating the need to conduct the *Matthews* balancing test. *Zinermon*, 494 U.S. at 132.

Thus, before even conducting the balancing test, the Plaintiffs point out that it was certainly feasible for the State to have given some sort of hearing to Plaintiff David Rhein before revoking his FOID Card and seizing his firearms (and those of his wife, Plaintiff Kim Rhein). The Defendants do not explain why the State Police could not set up some sort of procedure -- any procedure -- for challenging a police officer's determination that a particular individual has a "mental condition" before the seizure occurs. For example, if someone is a true danger to himself or others, then one would expect that this person would have been arrested for his or her behavior and/or been the subject of a civil commitment. Thus, it would not be unreasonable to immediately revoke one's FOID Card upon the occurrence of one or both of these events. However, in cases such as the one at bar, where Plaintiff David Rhein was neither arrested nor civilly committed it would seem the need for immediate corrective action would be greatly diminished. In other words, it certainly would have been feasible to give a the Plaintiff even the most informal of a hearing where the Plaintiff's alleged dangerous must not have been that imminent if it did not result in an arrest or civil commitment. To give unfettered discretion to a police officer to determine whether someone's behavior rose to the level of a dangerous mental condition, without a hearing to challenge such a determination, is simply unreasonable because it would have been feasible for the State to provide at least a minimal, informal pre-deprivation hearing.

Alternatively, if this Court does address the three *Matthews* factors, these factors also weigh in favor of the Plaintiffs' position. While the State has an important interest in regulating firearms (the third factor), the Plaintiffs, too, have an important interest in keeping their firearms,

especially for personal safety in their home. As the Supreme Court has ruled, "the inherent right of self-defense has been central to the Second Amendment." *District of Columbia v. Heller*, 540 U.S. 570, 629 (2008).

Moreover, the risk of erroneous deprivation is great. Every day that went by in this case after the unlawful seizure of the Plaintiffs' firearms was another day that the Plaintiffs feared for their personal safety. Also, every day that went by was another day where Plaintiff David Rhein suffered the stigma of being deemed so mentally unstable that his firearms were forcibly taken from him by police. In other words, not only were the Plaintiffs deprived of their fundamental Second Amendment rights, but Plaintiff David Rhein was also branded with a "scarlet letter" of mental illness as a result of this process. Just as those who are civilly committed may be viewed in a different light by society once such a commitment is made, the Plaintiff, David Rhein, here too had such stigma attach to him. This is a significant factor for this Court to consider. See *Addington*, 441 U.S. at 426 ("Whether we label this phenomena 'stigma' or choose to call it something else is less important than that we recognize that it can occur and that it can have a very significant impact on an individual.") And, it must be remembered Plaintiff Kim Rhein, too, was not able to practice her cherished right of self-defense in the home, even though she did nothing to deserve such a punishment. Thus, this case is unlike *Matthews*, where the Supreme Court found a statutory scheme that denied medical benefits without a pre-deprivation hearing satisfied due process because the denial decision was "sharply focused and easily documented." *Matthews*, 424 U.S. at 343. However, here, unlike in *Matthews*, the Defendant Officers could not make a focused decision based on standard medical documentation regarding the Plaintiff's mental condition where, not only did the Plaintiff not have any documented mental illness, there also was not an arrest or civil commitment proceeding to rely upon.

The Defendants cite *Waltier v. New York Police Dept.*, (S.D.N.Y. 1994) for support (Def. Mem. 6-7). *Waltier* should not be followed by this Court. First, the case is not an appellate court case, and it is from a different district. Second, this case was decided in 1994, long before *Heller*, which fundamentally changed the landscape of Second Amendment jurisprudence. For example, in balancing the *Matthews* factors, the *Waltier* Court did not even address the important interest an individual has in defending one's self and one's family in one's own home, the essence of the *Heller* decision. Instead, the opinion focused on the additional earning capacity the plaintiff in that case would have enjoyed with a weapons permit, which cannot rise to the level of the fundamental right of self-protection in the home identified in *Heller*. Third, the *Waltier* decision should not be followed because it ignored the language in *Zinermon* (identified above) that indicates courts do not even need to address the *Matthews* factors if it is feasible to allow for a pre-deprivation hearing. This is not surprising, since the suit was brought by a *pro se* plaintiff, acting without the assistance of appointed counsel. *Waltier*, 856 F.Supp. at 200. Finally, in *Waltier*, the plaintiff shot someone and was arrested (although ultimately acquitted), a fact that makes a pre-deprivation hearing much less necessary. For example, the mere fact of an arrest would commonly result in a court not allowing a person to possess weapons as a condition of the bond. An arrest would also require an officer to make a probable cause determination at the risk of being sued for his or her miscalculation, and, probable cause would ultimately have to be approved by a court before charges could be filed. Thus, inherent in an arrest are procedural safeguards that would dramatically decrease the likelihood that one's weapon would be taken away arbitrarily, as is alleged in this case. In sum, there was no reason Plaintiff David Rhein could not have been afforded a pre-deprivation hearing, and thus the Plaintiffs can establish a due process violation.

C.  Section 8(F) of the FOID Card Act Does Not Provide an Adequate Post-Depravation
    Remedy to Challenge the Seizure of an Individual's FOID Card.

Additionally, Section 8(F) of the FOID Card Act violates due process principles because it does not provide adequate post-deprivation procedural safeguards.  Of course, this Court need not even address this issue if it finds the lack of a pre-deprivation hearing violates due process.  The availability of an adequate post-deprivation remedy is only relevant if pre-deprivation process is unavailable or impracticable.  *Polak v. Fairman*, 93 C 4937, 1994 U.S. Dist. LEXIS 10365, at *8 (July 27, 1994) (Aspen, J.) (citing *Parrat v. Taylor*, 451 U.S. 527 (1981)).  Pursuant to this Section, a person such as Plaintiff David Rhein, who is declared to have had a dangerous "mental condition" by a police officer would have the right to challenge that decision, but there is no provision for an actual hearing.  There is no specificity as to any grounds for challenging this decision, and the section gives zero guidance on how a person is to take advantage of this provision, and what sort of guidelines will be used by the State Police Director, or his delegated employees.  Moreover, the Section does not require the Director to set forth the basis for taking his action, and thus a person in Plaintiff David Rhein's position would have no way of even knowing where to begin his or her challenge, since he or she would have no way of knowing what sort of evidence was used to make the mental-condition determination.  And, of course, it is not in dispute that the burden of challenging the Director's decision remains on the weapon owner.  While there is an appellate provision that would allow a firearm owner to challenge the Director's decision, there is no guidance on this appeal process as well.

Additionally, there is no time frame set up for making or deciding upon such a challenge, and no guidance a court could use to make the ultimate determination of whether the firearm owner would be entitled to the return of his or her firearms and/or the reinstatement of his or her FOID Card.  There is also no provision for an appeal of that decision, or any time frame as to

when such a decision must be made.  To satisfy due process, there must be a *prompt* post-deprivation hearing, especially where, as here, there is no pre-deprivation hearing.  "A fundamental requirement of due process is the opportunity to be heard *at a meaningful time and in a meaningful manner*."  *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996) (emphasis added).

What happened in this case exemplifies the Kafkaesque maze someone in the Plaintiff's position must navigate to have his FOID Card reinstated after a Section 8(a) revocation.  Plaintiff David Rhein was given no notice that his FOID Card was being revoked, and had his firearms summarily removed from his home.  *Id*.  The Plaintiff was given no post-deprivation hearing (something the State could easily provide as a matter of course, or the Defendants could have easily done in their discretion).  Rather than being given a hearing by the person who authorized the seizing of the property (Defendant Coffman), the onus was put on the Plaintiff to request from that same person that he reverse his own decision, without knowing why that person made his decision, and what standards were used to make that decision.  Since there is no time frame set forth in the statute for the decision maker to make a decision whether to reverse his own decision, it is not surprising the decision maker in this case (Defendant Coffman) just simply ignored every effort the Plaintiff made to attempt to have Defendant Coffman reverse his own decision.  This procedure not only violates common sense, but also this lack of impartiality also raises serious due process concerns.  "When review of an initial decision is mandated, the decisonmaker must be other than the one who made the decision to review."  *Hunt v. Fairman*, 94 C 7321, 1996 U.S. Dist. LEXIS 942, at * 10 (January 23, 1996) (Williams, J.).

The Defendants find the post-deprivation process adequate because, ultimately the Plaintiff successfully obtained relief.  However, one cannot justify an unjust process merely

because, ultimately, the person who was forced to suffer the injustices prevailed in the end. This would be the equivalent of a police officer defending a malicious prosecution action by pointing to a not guilty verdict as a defense to the lawsuit.

Finally, to the extent this Court may find that it is Constitutionally permissible for a state to give broad powers to state officials to ensure due process is given to its citizens, this would not relieve the Defendant Officers of liability. Here, for example, Defendant Coffman ignored the Plaintiff's request for administrative review, even though he Plaintiff fully complied with all requests made of him. In cases such as the one at bar, it is proper for a Plaintiff "to hold state officials accountable for their abuse of their broadly delegated, uncircumscribed power to effect the deprivation at issue." *Zinermon*, 494 U.S. at 120. Thus, although Section 8(f) of the Act is unconstitutional based on the lack of a pre-deprivation hearing, the lack of post-deprivation procedural safeguards provides an additional reason why the Plaintiffs have adequately pleaded a due process claim.

II.     Section 8(f) of the FOID Card Act Violates the Second Amendment

Section 8(f) of the FOID Card Act also violates the Second Amendment. The Defendants urge this Court to apply a standard less than strict scrutiny in analyzing this matter (Def. Mem. 8-9). However, since the Supreme Court in *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010) ruled an individual has the fundamental right to possess a weapon in the home for self-defense (the issue here), strict scrutiny should apply, since the Government can only take away a fundamental right where it can satisfy strict-scrutiny review. *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 17, 33 (1973); *Perry Educ. Ass'n v Perry Local Educators' Ass'n*, 460 U.S. 37 (1984); *Clark v. Jeter*, 486 U.S. 456, 461 (1988). To survive strict-scrutiny review, a governmental regulation must serve a compelling state interest and be narrowly tailored to serve

this interest. *Siefert v. Alexander*, 608 F.3d 974, 981, *Republican Party v. White*, 536 U.S. 765, 774-75 (2002). Alternatively, the regulation cannot survive intermediate scrutiny.

In this case, while the State has an important, and perhaps compelling, interest in preventing mentally ill or dangerous persons (who already have FOID Cards) from keeping their firearms, this statute is not narrowly tailored to achieve this result. The State could serve this goal in much narrower ways (or, alternatively, in more substantially related ways). As explained above, the State could easily set as a pre-requisite for seizure the fact that the person whose FOID Card is to be revoked have been arrested and/or civilly committed. If the State does not have enough evidence to satisfy either of these thresholds of mental illness and/or dangerous, then it is hard to imagine there is sufficient evidence to immediately strip that person of his Second Amendment right by summarily revoking that person's FOID Card.

The Defendants claim there is no Second Amendment issue in this case because dangerous and mentally ill persons may be denied their Second Amendment rights (Def. Mem. 10). While the Plaintiff will presume this general principle to be true, since it has been inferred in *dicta*, this argument misses the point. The Plaintiffs were denied their Second Amendment rights because, they claim, there was no basis whatsoever to conclude Plaintiff David Rhein was dangerous and/or mentally ill. In other words, the Plaintiff's Second Amendment claim is based on the Defendant Officers' decisions and the statutory scheme that resulted in Plaintiff David Rhein being falsely labeled as dangerous and mentally incompetent. The Plaintiff is not claiming he is a dangerous or mentally ill person who deserved unfettered access to firearms; he is claiming the Defendants' actions resulted in him being falsely labeled dangerous and mentally ill, thus resulting in a denial of his Second Amendment right to possess firearms in his home for

self-defense, and, by proxy, his wife also suffered the same fate, as she was also forced to give up her firearms in the process[2].

III.     The First Amended Complaint Shows a Likelihood of Future Injury

Contrary to the Defendants' claim, the Plaintiffs have sufficiently stated a proper injunctive relief claim.  The only issue the Defendants raise is the Plaintiffs' supposed failure to allege a future injury, thus not allowing them to have standing to bring their claims (Def. Mem. 12).  The Defendants analogize the Plaintiffs' injunctive relief claim to the injunctive relief claim alleged by the plaintiff in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  However, *Lyons* is easily distinguishable.  In *Lyons*, the plaintiff's allegation was that he was choked using an improper chokehold procedure during a traffic encounter, and that he feared he would suffer this same chokehold procedure if he were arrested again.  Yet, this claim was far-fetched, since it is hard to believe the plaintiff could reasonably have feared, not just being arrested again for engaging in some other behavior than the one that resulted in his initial arrest, but being put in a chokehold during that other encounter.  However, in this case the Plaintiffs could suffer the same fate, once again, since the FOID Card Act is silent as to issues such as collateral estoppel, thus serving no bar from the Plaintiffs having to go through the identical process, once again, at the whim of the Defendant Officers or any other Illinois State Police officer, for that matter.

This likelihood is increased based on the fact that the Plaintiffs intend to engage in similar Constitutionally protected actions in the future that resulted in the Plaintiffs being denied their Constitutional rights the first time. See, e.g. *Bell v. Keating*, 697 F.3d 445, 453-54 (7th Cir. 2012) (granting the plaintiff standing where he was previously arrested under the ordinance and alleged he was chilled from engaging in activities that may subject him to arrest again)  Also, the

---

[2] The Plaintiffs have withdrawn their equal protection claims, since they did not include them in their First Amended Complaint.

Plaintiffs have alleged the State Police have a pattern of doing similar actions to others (FAC ¶ 39), which the Seventh Circuit has held increases the likelihood that an injunctive relief claim should be granted. *Goldhamer v. Nagode*, 621 F.3d 581 (7th Cir. 2010) ("Perhaps if we had a record showing a persistent pattern of similar police misconduct, persons intending to engage in protected speech and expression might be able to show that they were entitled to injunctive relief of some kind, if not against all enforcement of the provision then at least against future such misconduct."); see also *Pindak v. Dart*, 10 C 6237, 2011 U.S. Dist. LEXIS 103856 (September 14, 2011) (Pallmeyer, J.) (plaintiff had standing to sue for injunctive relief where he "pleaded that he is (sic) 'is in fear of arrest and deterred from exercising his Constitutionally-protected free speech rights' ")

IV.     This Court Should Not Entertain an Exigent Circumstances Claim in a Motion to Dismiss.

The Defendants' next argument can be easily dismissed.  Since whether exigent circumstances existed at the time of the warrantless search is a highly fact-specific inquiry, it generally involves factual disputes that must be resolved by a trier of fact.  *Adams v. Bruno*, 10 C 2068, 2011 U.S. Dist. LEXIS 115494, at *13-14 (October 6, 2011) (Leinenweber, J.)  To ask this Court to grant the Defendant Officers' motion to dismiss based on a fact-specific defense borders on the frivolous.  The Defendant Officers rely on "evidence" that the Plaintiff had a dangerous medical condition that required them to conduct a warrantless search of the Plaintiff's home (Def. Mem. 16).  What that "evidence" was has not been offered, and the Plaintiffs specifically claim that Plaintiff David Rhein had no mental condition that made him dangerous.  This argument must fail.

V.      The Plaintiffs Have Not Pleaded Themselves Out of Court on Their First Amendment Claim.

The Plaintiffs have not pleaded themselves out of court on their First Amendment claim. The Defendants do not argue that the Plaintiffs have failed to adequately allege a First Amendment claim. Rather, the Defendants claim the Plaintiffs have pleaded themselves out of court. Again, this argument is absurd at this point in the litigation. There is nothing unusual about alternative pleading, and this sort of pleading is common and acceptable in federal court, pursuant to Rule 8(e). *Brown v. United States of America*, 976 F.2d 1104, 1108 (7th Cir. 1992). The factual allegations were and continue to be that the Plaintiff was unreasonably deemed mentally unfit based on the exercising of his free speech issues regarding the Second Amendment. There is nothing inconsistent about claiming there was a free-speech motivation behind the Defendant Officers' unreasonable actions in falsely claiming he had a mental condition that made him unsuitable to possess firearms. To the extent these two theories could be deemed inconsistent, this still would be allowable under Rule 8(e). *Id.*

VI.  The Plaintiffs Have Adequately Alleged a Supervisor Liability Claim Against Lt. Coffman.

The Plaintiffs have adequately pleaded a supervisory liability claim against Lt. Coffman. The Defendants do not claim otherwise (Def. 17). Their sole argument is entirely based on this Court finding the Plaintiffs have not adequately pleaded a Constitutional violation of any kind. Thus, so long as this Court finds the Plaintiffs have alleged a Constitutional violation, Lt. Coffman's argument must fail[3].

WHEREFORE the Plaintiffs pray this Honorable Court deny Defendants' motion to dismiss.

Respectfully submitted,

---

[3] The Plaintiffs have withdrawn their Equal Protection claims and damages claim against Defendant Grau in his individual capacity.

s/ Richard Dvorak
One of Plaintiffs' Attorneys

Richard Dvorak
THE LAW OFFICES OF RICHARD DVORAK
(312) 593-7146 (phone)
(312) 276-4868 (fax)
richard_dvorak@civilrightsdefenders.com

## CERTIFICATE OF SERVICE

I, Richard Dvorak, certify that I have filed the above pleading with the Court, via electronic filing, on August 16, 2013, and I have caused a copy of the same to be served on all attorneys with an appearance on file.

Respectfully submitted,

s/ Richard Dvorak
One of Plaintiffs' Attorneys

Richard Dvorak
THE LAW OFFICES OF RICHARD DVORAK
(312) 593-7146 (phone)
(312) 276-4868 (fax)
richard_dvorak@civilrightsdefenders.com