IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KIM RHEIN and DAVID RHEIN, | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| | ) | No. 13 C 843 |
| v. | ) | |
| | ) | JUDGE FEINERMAN |
| AGENT STEVEN PRYOR, Star Number 4816, an Illinois State Police Officer, in his individual capacity; AGENT FREDDIE SUMMERS, Star Number 5706, an Illinois State Police Officer, in his individual capacity; LIEUTENANT JOHN COFFMAN, an Illinois State Police Officer, in his individual capacity; HIRAM GRAU, Illinois State Police Director, in his official capacity; and LISA MADIGAN, Illinois Attorney General, in her official capacity, | ) | MAGISTRATE JUDGE KIM |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendants Illinois State Police Director Hiram Grau, Sergeant Steven Pryor, Special Agent Freddie Summers, and Lt. John Coffman, by their attorney Lisa Madigan, the Illinois Attorney General, for their reply in support of their motion to dismiss Plaintiffs' Amended Complaint state as follows:

**INTRODUCTION**

Plaintiffs' Amended Complaint purports to allege constitutional violations under the Fourteenth Amendment's Procedural Due Process Clause, as well as the First, Second, and Fourth Amendments, arising from the revocation of David Rhein's Firearm Owner's Identification ("FOID") card and subsequent seizure of Plaintiffs' firearms. Plaintiffs seek

1

declaratory and injunctive relief, requesting that this Court enjoin enforcement of section 8(f) of the FOID Card Act, in addition to money damages for the individual capacity claims. But because Plaintiffs have failed to allege facts sufficient to prove any causes of action, their Amended Complaint should be dismissed.

<u>First</u>, Plaintiffs lack standing to bring an injunctive relief claim. The Amended Complaint does not adequately allege that there exists a real and imminent threat of future injury to Plaintiffs. Plaintiffs' skeletal allegations are insufficient to overcome even notice pleading standards. Accordingly, the injunctive relief claim can be dismissed without reaching the merits of the constitutional claims.

<u>Second</u>, section 8(f) of the FOID Card Act does not violate procedural due process. This statute specifically limits the Department's authority to revoke a FOID card if the FOID card owner displays violent, suicidal, threatening, or assaultive behavior, which presents a clear and present danger to himself or others. There is nothing vague about this standard. And in any event, procedural due process does not demand that civil statutes such as section 8(f) of the FOID Card Act be defined with mathematical precision.

Nor does section 8(f) violate due process because it fails to afford FOID card owners a pre-deprivation hearing. On the contrary, a pre-deprivation hearing is not feasible under the circumstances alleged in the Amended Complaint. This is due to the necessity of quick action by the State to remove firearms from those who possess a mental condition under section 8(f). Moreover, contrary to Plaintiffs' assertion, section 8(f) provides adequate post-deprivation remedies.

<u>Third</u>, section 8(f) does not violate the Second Amendment. Those who fall under the purview of section 8(f) (those who have a mental condition as defined by section 8(f)) have no

constitutional right to bear arms. But even if they did, section 8(f) overcomes challenges under both intermediate, as well as strict, scrutiny review.

Fourth, Plaintiffs have pleaded themselves out of court on their as-applied, First Amendment retaliation claim by alleging that Defendants' perception that Mr. Rhein possessed a state of mind manifested by violent, suicidal, threatening or assaultive behavior was the proximate cause of their decision to revoke Mr. Rhein's FOID card. Because Plaintiffs do not adequately allege that Mr. Rhein's FOID card was revoked due to the substantive content of his speech, as opposed to alleging that Defendants revoked his FOID card because they perceived the nature of his speech to indicate that Mr. Rhein possessed a mental condition falling within the scope of section 8(f), the First Amendment claim fails.

Fifth and finally, Plaintiffs have failed to adequately allege a Fourth Amendment, unreasonable search and seizure claim against individual Defendants Summers and Pryor. The allegations in the Amended Complaint show that both Agent Summers and Sgt. Pryor had exigent circumstances to search Plaintiffs' home and seize their firearms. And because Plaintiffs have not, and cannot, allege a constitutional violation against both Agent Summers or Sgt. Pryor, their supervisory liability claim against Lt. Coffman fails as well.

**ARGUMENT**

**LACK OF STANDING FOR INJUNCTIVE RELIEF**

A plaintiff lacks standing to raise an injunctive relief claim unless he or she can show that there exists a "real and immediate danger that alleged harm" will occur in the future. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) ("[P]ast exposure to illegal conduct does not itself show a present case for injunctive relief."). Injunctive relief will not issue where a plaintiff has pleaded only conjectural or hypothetical harm. Id. at 102.

Plaintiffs have not adequately alleged that their claim for injunctive relief presents anything more than only conjectural or hypothetical harm. There is no allegation that there is a real and immediate danger that Defendants will revoke Plaintiffs' FOID card in the future. Indeed, Plaintiffs' Response to Defendants' Motion to Dismiss admits that any purported future harm is only hypothetical by stating "in this case the Plaintiffs *could* suffer the same fate" of revocation of a FOID card. (Doc. 30, Pl. Resp., p. 14) (emphasis added). No reasonable inference from the allegations in the Amended Complaint suggests that there is a real and immediate danger that Defendants will revoke Mr. Rhein's FOID card again. Indeed, the Amended Complaint was filed about a year after the return of Mr. Rhein's FOID card, and there is no allegation in the Amended Complaint that further action against Mr. Rehin's FOID card has been taken by Defendants. Thus, Plaintiffs' bare speculation of future revocation is insufficient to state a claim for injunctive relief. See Lyons, 461 U.S. at 101-02; see also McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011).

Nor is the bald assertion that the Illinois State Police has a pattern of revoking FOID cards in circumstances similar to the one in which Mr. Rhein's FOID card was revoked sufficient to state a claim for injunctive relief. (See Doc. 30, Pl. Resp., pp. 14-15). This skeletal assertion, without any factual support whatsoever, is precisely the type of allegation that Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), instruct are insufficient to defeat a motion to dismiss. See also Bissessur v. Ind. Univ. Bd. of Trs., 581 F.3d 599, 602 (7th Cir. 2009) (explaining that, after Iqbal, claim can survive motion to dismiss only if plaintiff alleges factual content sufficient to allow court to draw reasonable inference that defendant is liable for alleged misconduct). Plaintiffs have not identified a single instance where Illinois State Police officials have utilized Section 8(f) of the FOID Card Act to

suppress protected speech. Nor have they identified a "real and immediate danger" that section 8(f) will be used in the future to retaliate against protected speech. Accordingly, this Court should dismiss the injunctive relief claim on the ground that Plaintiffs have not alleged a real and immediate threat of danger resulting from enforcement of section 8(f).

## OFFICIAL CAPACITY CLAIMS

Plaintiffs have abandoned their equal protection claim (Doc. 30, p. 16, n. 3), leaving only their Due Process and Second Amendment challenges to section 8(f) of the FOID Card Act. Neither constitutional provision provides a basis for invalidating section 8(f).

## I.  PROCEDURAL DUE PROCESS CLAIMS

Contrary to Plaintiffs' argument, (1) section 8(f) is not unconstitutionally vague; (2) a pre-deprivation hearing is not required under the circumstances alleged in the Amended Complaint; and (3) there existed adequate post-deprivation remedies.

### A. Section 8(f) Is Not Unconstitutionally Vague.

Plaintiffs' void-for-vagueness challenge relies on a number of cases where courts analyzed criminal statutes or ordinances, see Grayned v. City of Rockford, 408 U.S. 104 (1972); Vill. of Hoffman Estates v. Flipside, 455 U.S. 489 (1982); Lanzetta v. New Jersey, 306 U.S. 451 (1939); Kolender v. Lawson, 461 U.S. 352 (1983), or statutes authorizing involuntary civil commitment, see In re Torski C., 918 N.E.2d 1218 (Ill. App. Ct. 2009); Addington v. Texas, 441 U.S. 418 (1979). (Doc. 30, Pl. Resp., pp. 2-3). In each of these cases, the courts reviewed the alleged vagueness of the statute or ordinance at issue in the context of possible liberty deprivations. But section 8(f) does not concern a liberty deprivation. And courts have applied the void-for-vagueness test differently for civil statutes, such as section 8(f), as opposed to those statutes where a liberty deprivation is attached. See Peick v. Pension Benefit Guar. Corp., 539 F.

Supp. 1025, 1059 (D.C. Ill. 1982) ("Civil, as opposed to criminal, statutes are afforded greater tolerance 'because the consequences of imprecision are qualitatively less severe.'") (quoting Flipside, 455 U.S. at 498 (1982)). Thus, Plaintiffs' entire analysis regarding their vagueness challenge is in the wrong context—criminal v. civil—and, therefore, their arguments are misplaced. (Doc. 30, Pl. Resp. pp. 2-5).

Terms used in civil legislation regarding revocation of licenses, which is analogous to revocation of a FOID card, need not be employed with mathematical precision. M & Z Cab Corp. v. City of Chicago, 18 F. Supp. 2d 941, 948 (N.D. Ill. 1998). All that is required to satisfy due process is for legislative terms to be set out so that persons of ordinary intelligence "applying ordinary common sense" can sufficiently understand them. Id.

Here, Plaintiffs' claim that section 8(f) is vague is belied by a common sense understanding of the terms at issue. The legislature specifically defined "mental condition" as "a state of mind manifested by violent, suicidal, threatening, or assaultive behavior." 430 ILCS 65/8(f) (2010). Thus, any ambiguity that may have existed with the meaning of "mental condition" was clarified by the specific definition given to that term.

Furthermore, though the phrase "clear and present danger" is easily defined, even without resorting to outside sources, the dictionary defines "clear" as "plain or evident to the mind; unmistakable" or "free from doubt or confusion; certain." AMERICAN HERITAGE DICTIONARY 279 (2d C. ed. 1982). "Present" is "[b]eing, pertaining to, or occurring at a moment or period in time [perceptible as intermediate between past and future; now]." Id. at 979. And, "danger" is "exposure or vulnerability to harm or risk" or "a source or instance of risk or peril." Id. at 365. Combined, the dictionary defines a "clear and present danger" as an unmistakable or certain exposure to harm or risk, now. Accordingly, a person of ordinary intelligence could exercise

common sense and understand what sort of conduct would result in revocation of a FOID card pursuant to section 8(f).

**B.     A Pre-Deprivation Hearing Is Not Required.**

Courts have held that a pre-deprivation hearing is not required where the nature of the State interest and the need for immediate action is necessary from the circumstances of the case. See Bonnner v. Coughlin, 545 F.2d 565, 577 (7th Cir. 1976) (collecting cases) (citing N. Am. Cold Storage Co. v. Chicago, 211 U.S. 306, (1908)).  Under such circumstances, as long as a post-deprivation remedy is available, a pre-deprivation hearing is not constitutionally required. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982) (holding that Due Process Clause does not compel a pre-deprivation hearing where impracticable, such as where quick action by the State is necessary); see also, Niemeyer v. Williams, 910 F. Supp. 2d 1116, 1125 (C.D. Ill. 2012) ("Post-deprivation procedures may be adequate where it is impractical to provide procedural protections before the action is taken.").

Because providing a pre-deprivation hearing prior to revocation of a FOID card pursuant to section 8(f) of the FOID Card Act would be impracticable, the lack of a pre-deprivation hearing does not violate due process.  Plaintiffs maintain that providing a pre-deprivation hearing under section 8(f) of the FOID Card Act would be feasible.  (Doc. 30, p. 7).  Their argument lacks commons sense, for if an individual possesses a mental condition which presents a clear and present danger, there simply would not be enough time to provide a pre-deprivation hearing. The circumstances in this case require quick action by the State, to dispossess a potentially dangerous individual who possess a mental condition under section 8(f) from firearms.

Nor is Plaintiffs' argument that Mr. Rhein had not been arrested or civilly committed prior to revocation of his FOID card important to the analysis.  (Doc. 30, p. 7).  The lack of prior

7

arrest or adjudication of mental incapacity does not change the undisputed fact that quick action by the State in revoking a FOID card and seizing weapons is necessary where one possesses the type of mental condition identified in section 8(f). To hold otherwise would require Defendants to wait until an individual engages in dangerous conduct with a weapon, notwithstanding evidence in the possession of the State showing that the individual's mental condition would dramatically increase the likelihood of danger to himself and those around him. Accordingly, a pre-deprivation hearing is unfeasible prior to revocation of a FOID card under section 8(f). See Buttitta v. City of Chicago, 9 F.3d 1198, 1201 (7th Cir. 1993) (recognizing that procedural due process is a flexible concept which "calls for such procedural protections as the particular situation demands") (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

Moreover, contrary to Plaintiffs' argument, the Matthews factors weigh in favor of finding that a pre-deprivation hearing is not constitutionally required. Plaintiffs admit that the State has a strong interest in regulating firearms. (Doc. 30, p. 7). And any risk of an erroneous deprivation of firearms is remedied by the post-deprivation procedures provided in sections 10 and 11 of the FOID Card Act. 430 ILCS 65/10-11 (2010). Accordingly, a pre-deprivation hearing *ante* revocation under section 8(f) is neither feasible nor required under the Due Process Clause.

  **C.**  **Section 8(f) Provides For Post-Deprivation Remedies.**

Plaintiffs argue that the FOID Card Act does not provide for any guidance as to the type of evidence that an individual challenging his revocation under section 8(f) must present to the Director of State Police. (Doc. 30, p. 10). The argument is absurd, for the plain language of section 10 provides that, where an individual challenges a FOID card revocation under section 8(f) with the Director of State Police,

> The Director shall grant the relief if it is established by a preponderance of the evidence that the person will not be likely to act in a manner dangerous to public safety and that granting relief would not be contrary to the public interest. In making this determination, the Director shall receive evidence concerning (i) the circumstances regarding the firearms disabilities from which relief is sought; (ii) the petitioner's mental health and criminal history records, if any; (iii) the petitioner's reputation, developed at a minimum through character witness statements, testimony, or other character evidence; and (iv) changes in the petitioner's condition or circumstances since the disqualifying events relevant to the relief sought.

430 ILCS 65/10(f) (2010). Thus, the statute provides notice to the individual as to what type of evidence is necessary to prove that the FOID card should be reinstated.

Next, Plaintiffs argue that the FOID Card Act does not provide for a time frame within which the Director must issue an administrative decision, and this allegedly violates Due Process. (Doc. 30, p. 10). But nothing in Plaintiffs' Amended Complaint alleges that the FOID Card Act violates due process because a decision by the Director on a challenge to a FOID Card revocation would be issued in an untimely manner. And while individuals have a right to a prompt hearing under the Due Process Clause, there is no requirement that a hearing must be held within a specific period. Nor should there be, for due process is a flexible concept that concerns fairness; as long as the process is fair, there can be no due process violation. See Buttitta, 9 F.3d at 1201.

Plaintiffs do not allege that the Director does not hold—or has not held—a hearing within a reasonable period; instead, they allege that the FOID Card Act does not provide for a post-deprivation remedy at all. (Doc. 29, ¶ 29). But that allegation is belied by the post-deprivation procedures outlined in sections 10 and 11 of the FOID Card Act. 430 ILCS 65/10, 11 (2010).

Finally, Plaintiffs' argument that there is no process by which the Director's administrative decision may be appealed also is unavailing. (Doc. 30, p. 10-11). Section 11 of the FOID Card Act provides for a process by which the Director's final administrative decision

may be reviewed by the Circuit Court in accordance with the Illinois Administrative Review Law. 430 ILCS 65/11 (2010).

## II. SECOND AMENDMENT CLAIM

Plaintiffs' Response with respect to their Second Amendment claim argues only that section 8(f) is not narrowly tailored to survive Second Amendment scrutiny. (Doc. 30, pp. 12-13) (conceding that section 8(f) furthers an important and compelling governmental interest). They posit that the State could tailor its compelling interest more narrowly by "set[ting] as a pre-requisite for seizure the fact that the person whose FOID Card is to be revoked have been arrested and/or civilly committed." (Id., p. 13). Defendants argued in their opening brief that section 8(f) does not implicate Second Amendment rights in the first instance but, at most, intermediate scrutiny applies to Plaintiffs' Second Amendment challenge, not strict scrutiny. (Doc. 27, pp. 8-11). But even assuming that strict scrutiny applies, as argued by Plaintiffs in their Response, the narrow tailoring requirement of strict scrutiny review does not require that the State wait until an individual commits a crime or is civilly committed before revoking a FOID Card.

To be sure, the narrow tailoring prong of strict scrutiny must allow States some leeway. Bush v. Vera, 517 U.S. 952, 977 (1996). Tying the State's hands to such an exacting standard as the one proposed by Plaintiffs would frustrate entirely the purpose of section 8(f). The purpose behind section 8(f) is to allow the State to remove firearms from the mentally ill before it is too late—that is, before tragedy ensues. Plaintiffs' suggestion, on the other hand, would require the State to wait until the individual engages in dangerous conduct by committing a crime before revocation of the FOID Card is permitted.

In codifying section 8(f) of the FOID Card Act, the legislature narrowly tailored the restriction on FOID card possession to those who possess a mental state that presents a clear and present danger by manifesting violent, suicidal, threatening, or assaultive behavior. 430 ILCS 65/8(f) (2010). This restriction furthers the governmental objective of promoting public safety by keeping firearms out of the hands of those who might harm themselves or others. See United States v. Skoien, 614 F.3d 638, 642 (7th Cir. 2010). Because section 8(f) is narrowly tailored to further a compelling governmental interest, it survives even strict scrutiny review.

## INDIVIDUAL CAPACITY CLAIMS

### I. Plaintiffs Have Pleaded Themselves Out Of Court On The First Amendment Retaliation Claim.[1]

Plaintiffs have pleaded themselves out of court on their First Amendment claim. Contrary to Plaintiffs' argument, this issue is not about alternative pleading. To support a First Amendment retaliation claim, Plaintiffs must allege facts sufficient to plausibly suggest that Mr. Rhein's political speech was a "motivating factor" in revoking his FOID card. See George v. Walker, 535 F.3d 535, 538 (7th Cir. 2008); Kozel v. Vill. of Dolton, 804 F. Supp. 2d 740, 744 (N.D. Ill. 2011). Here, the Amended Complaint clearly alleges that Defendants allegedly revoked Mr. Rhein's FOID card not because they disagreed with his alleged speech but, rather, because they believed that the type of speech he engaged in demonstrated that Mr. Rhein possessed a mental condition presenting a clear and present danger to himself and others by manifesting violent, suicidal, threatening, or assaultive behavior. (Doc. 29, ¶ 36). By pleading that Defendants revoked Mr. Rhein's FOID card due to Defendants' perceived mental condition of Mr. Rhein as opposed to the substantive content of Mr. Rhein's actual speech, Plaintiffs have pleaded themselves out of court. See Smart v. Local 702 Int'l Bhd. of Elec. Workers, 562 F.3d

---

[1] Ms. Rhein does not have standing to raise a First Amendment claim because her FOID card was not revoked. See Defs. Op. Br., Doc. 27, p. 16 n. 17).

798, 810 (7th Cir. 2009) (plaintiff pleads himself out of court by alleging facts showing that he has no claim).

Nor does it matter that Plaintiffs have alleged that Mr. Rhein did not actually possess such a mental condition because they nonetheless have alleged that it was Mr. Rhein's <u>perceived</u> mental condition that motivated Defendants to revoke Mr. Rhein's FOID card. Because Plaintiffs have alleged that Defendants' perception of Mr. Rhein's mental condition (even if mistaken) was the motivating factor behind revoking his FOID card—and not the actual content or viewpoint of Mr. Rhein's speech—the First Amendment retaliation claim fails. <u>See</u> <u>George v. Walker</u>, 535 F.3d 535, 538 (7th Cir. 2008) (stating that retaliation claim under First Amendment requires that engagement in protected activity be motivating factor for alleged retaliatory conduct).

## II. The Amended Complaint Fails To State A Fourth Amendment Claim.

Plaintiffs take issue with Defendants' motion to dismiss the Fourth Amendment claim by arguing that Defendants "rely on 'evidence' that [Mr. Rhein] had a dangerous medical condition that required them to conduct a warrantless search of the Plaintiff's home," instead of on the allegations in the Amended Complaint. (Doc. 30, p. 15). They are wrong.

Defendants do not rely on whether Mr. Rhein did or did not actually have a mental condition falling under the purview of section 8(f) in moving to dismiss the Fourth Amendment claim. Instead, they rely for purposes of this motion to dismiss only on the allegations in the Amended Complaint, not evidence. The Amended Complaint alleges that Sgt. Pryor and Agent Summers searched Plaintiffs' home and seized their firearms. (Doc. 29, ¶ 16). It further alleges that Sgt. Pryor and Agent Summers "took their actions ostensibly pursuant to" section 8(f), which applies only if Defendants believe that the individual possess a mental condition posing a

clear and present danger. (Id., ¶ 21). Thus, under the circumstances alleged in the Amended Complaint, Sgt. Pryor and Agent Summers believed that Mr. Rhein had the requisite mental condition under section 8(f), thus presenting exigent circumstances to bypass a warrant and seize Plaintiffs' firearms. (Doc. 27, pp. 14-16); United States v. Jenkins, 329 F.3d 579, 581 (7th Cir. 2003) (exigent circumstances exist where police reasonably fear for the safety of others). Thus, based on what Sgt. Pryor and Agent Summers knew about Mr. Rhein's mental condition at the time of the alleged search and seizure, their actions were reasonable. United States v. Huddleston, 593 F.3d 596, 601 (7th Cir. 2010) (stating that, in determining whether circumstances justified warrantless entry, court should ask whether entry was objectively reasonable based on what police knew at time of entry). Accordingly, Plaintiffs' Fourth Amendment claim should be dismissed.

### III. The Supervisory Liability Claim Against Lt. Coffman Should Be Dismissed Because Plaintiffs Have Not Adequately Pleaded An Underlying Constitutional Violation.

Plaintiffs' failure to adequately plead a constitutional claim against Sgt. Pryor and Agent Summers requires dismissal of the supervisory claim against Lt. Coffman.[2] A condition precedent to finding supervisory liability under section 1983 is that there must be an underlying constitutional violation committed by the supervisor's subordinate, Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 597 (7th Cir. 1997); Ross v. Daley, 2006 WL 2460614, at *2 (N.D. Ill. Aug. 23, 2006) (Hibbler, J.). Plaintiffs have not adequately alleged a First or Fourth Amendment violation committed by Sgt. Pryor or Agent Summers. Because there is no requisite underlying constitutional violation, Plaintiffs' supervisory liability claim against Lt. Coffman should be dismissed.

### CONCLUSION

---

[2] Defendants dispute that Lt. Coffman was the supervisor of Sgt. Pryor and Agent Summers. However, for purposes of this motion only, Defendants assume the facts as alleged in the Amended Complaint.

**Wherefore**, Defendants Director of Illinois State Police Hiram Grau, Sergeant Steven Pryor, Special Agent Freddie Summers, and Lieutenant John Coffman respectfully request that this Court dismiss with prejudice all claims against them, and provide any other relief this Court deems just and proper.

LISA MADIGAN
Attorney General of Illinois

Respectfully submitted,

/s/*Sunil Bhave*
Sunil Bhave
Assistant Attorney General
Office of the Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-4450

## CERTIFICATE OF SERVICE

I, Sunil Bhave, hereby certify that I have caused true and correct copies of the above and foregoing Reply in Support of Motion to Dismiss Amended Complaint to be sent via e-filing to all counsel of record on September 6, 2013, in accordance with the rules on electronic filing of documents.

/s/ *Sunil Bhave*
Sunil Bhave
Assistant Attorney General