UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIM RHEIN and DAVID RHEIN, | ) | |
| | ) | |
| Plaintiffs, | ) | 13 C 843 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| AGENT STEVEN PRYOR, Star Number 4816, an Illinois State Police Officer, in his individual capacity; AGENT FREDDIE SUMMERS, Star Number 5706, an Illinois State Police Officer, in his individual capacity; LIEUTENANT JOHN COFFMAN, an Illinois State Police Officer, in his individual capacity; and HIRAM GRAU, Illinois State Police Director, in his official capacity, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Kim Rhein and David Rhein bring this suit under 42 U.S.C. § 1983 against Agent Steven Pryor, Agent Freddie Summers, and Lieutenant John Coffman of the Illinois State Police in their individual capacities, and against Illinois State Police Director Hiram Grau in his official capacity. The official capacity claim alleges that § 8(f) of the Illinois Firearm Owners Identification ("FOID") Card Act, which provides that the State Police may revoke a person's FOID card upon finding that the person's "mental condition is of such a nature that it poses a clear and present danger to the applicant, any other person or persons or the community," 430 ILCS 65/8(f), is facially unconstitutional. Doc. 29. The individual capacity claims allege that the revocation of David's FOID card pursuant to § 8(f) and the seizure of David's and Kim's firearms from their home violated the First, Second, Fourth, and Fourteenth Amendments. *Ibid*. The official capacity claim seeks injunctive and declaratory relief, while the individual capacity claims seek damages. *Id*. at ¶¶ 4, 6 and p. 6. Defendants have moved to dismiss the amended

complaint. Doc. 26. The motion is granted as to the official capacity claim and denied as to the individual capacity claims.

## Background

In considering the motion to dismiss, the court assumes the truth of the amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court also must consider "documents attached to the [amended] complaint, documents that are critical to the [amended] complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those facts "are consistent with" the amended complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Plaintiffs as these materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

The FOID Card Act provides that no person in Illinois "may acquire or possess any firearm … within this State without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name by the Department of State Police under the provisions of this Act." 430 ILCS 65/2(a)(1). Section 8(f) of the Act allows the Illinois Department of State Police to "revoke and seize a [FOID] Card previously issued under this Act … if the Department finds that the … person to whom such card was issued is or was at the time of issuance: … [a] person whose mental condition is of such a nature that it poses a clear and present danger to the applicant, any other person or persons or the community." 430 ILCS 65/8(f). The Act recently was amended to define "clear and present danger" to mean "a person who: (1) communicates a serious threat of physical violence against a reasonably identifiable victim or poses a clear and imminent risk of serious physical injury to himself, herself, or another

person as determined by a physician, clinical psychologist, or qualified examiner; or (2) demonstrates threatening physical or verbal behavior, such as violent, suicidal, or assaultive threats, actions, or other behavior, as determined by a physician, clinical psychologist, qualified examiner, school administrator, or law enforcement official." 430 ILCS 65/1.1.

If a person's FOID card is revoked pursuant to § 8(f), the Department must provide the individual with "a written notice … stating specifically the grounds upon which … his Identification Card has been revoked … [and setting forth] the person's right to administrative or judicial review under Section 10 and 11 of this Act." 430 ILCS 65/9. Section 10 states that a person whose FOID card is revoked "may appeal to the Director of State Police for a hearing upon such … revocation." 430 ILCS 65/10(a). Section 10 further provides:

> The Director shall grant the relief if it is established by a preponderance of the evidence that the person will not be likely to act in a manner dangerous to public safety and that granting relief would not be contrary to the public interest. In making this determination, the Director shall receive evidence concerning (i) the circumstances regarding the firearms disabilities from which relief is sought; (ii) the petitioner's mental health and criminal history records, if any; (iii) the petitioner's reputation, developed at a minimum through character witness statements, testimony, or other character evidence; and (iv) changes in the petitioner's condition or circumstances since the disqualifying events relevant to the relief sought. If relief is granted under this subsection or by order of a court under this Section, the Director shall as soon as practicable but in no case later than 15 business days, update, correct, modify, or remove the person's record in any database that the Department of State Police makes available to the National Instant Criminal Background Check System and notify the United States Attorney General that the basis for the record being made available no longer applies.

430 ILCS 65/10(f). Section 11 provides for *de novo* judicial review of the Director's decision: "Any final administrative decision by the Director of State Police to deny a person's application for relief under [§ 10(f)] of this Act is subject to de novo judicial review by the circuit court, and any party may offer evidence that is otherwise proper and admissible without regard to whether that evidence is part of the administrative record." 430 ILCS 65/11(b).

As of February 3, 2011, Plaintiffs possessed FOID cards, owned firearms, and kept their firearms in their home. Doc. 29 at ¶¶ 9-11. At some point before February 3, 2011, David expressed "unpopular political views … about his support of Second Amendment rights" to "a locally elected official." *Id*. at ¶¶ 34, 36. That official, somebody in that official's office, or one of the individual defendants falsely construed David's comments "as evidence that [he] had a mental condition that made him dangerous." *Id*. at ¶ 36. On February 3, 2011, Lieutenant Coffman wrote a letter to David revoking his FOID card under § 8(f) of the Act based on the false and unreasonable assertion that David had a "mental condition" within the meaning of that provision. *Id*. at ¶¶ 12, 14, 31. The letter was mailed on February 4, 2011, *id*. at ¶ 13, and David did not receive it until February 7, 2011, *id*. at ¶ 15.

On February 5, 2011, with Lieutenant Coffman's approval, Agents Pryor and Summers entered Plaintiffs' home without a warrant or consent, conducted a search, and seized Plaintiffs' firearms, which Plaintiffs used for personal protection, hunting, investment, and enjoyment. *Id*. at ¶¶ 16-17. These actions were taken even though "[t]here was no reasonable basis to conclude David Rhein had a mental condition that presented a clear and present danger to himself or anyone else." *Id*. at ¶ 23. It follows, the amended complaint claims, that the seizure of Plaintiff's firearms and the revocation of David's FOID card was "in no way … justified under this statute [§ 8(f)]." *Id*. at ¶ 22. Kim's FOID card was not revoked. *Id*. at ¶¶ 11, 30.

Plaintiffs hired an attorney, and in Summer 2012, as a result of a court order, their firearms were returned to them. *Id*. at ¶ 18. Plaintiffs plan to continue engaging in political commentary in support of the Second Amendment, and they fear that their speech will put them at risk of being labeled "mentally unstable and dangerous" and having their firearms seized and FOID cards revoked. *Id*. at ¶¶ 37-38.

4

**Discussion**

I.  **Facial Challenge to § 8(f) of the FOID Card Act**

Defendants contend that Plaintiffs lack standing to facially challenge the constitutionality of § 8(f) of the Act. Doc. 27 at 12-14. This argument implicates the court's subject matter jurisdiction, and thus must be addressed at the threshold. *See Citizens Against Ruining the Env't v. EPA*, 535 F.3d 670, 675 (7th Cir. 2008). Although Defendants press their standing argument under Rule 12(b)(6), the appropriate vehicle is Rule 12(b)(1). *See Am. Fed'n of Gov't Emps., Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999) ("Obviously, if a plaintiff cannot establish standing to sue, relief from this court is not possible, and dismissal under [Rule] 12(b)(1) is the appropriate disposition."). Under governing Seventh Circuit precedent, Plaintiffs lack standing to pursue their facial challenge.

"When the plaintiff applies for prospective relief against a harm not yet suffered—or one he believes he will suffer again—he must establish that he 'is immediately in danger of sustaining some direct injury as the result of the challenged official conduct[,] and [that] the injury or threat of injury [is] both real and immediate, not conjectural or hypothetical.'" *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012) (alterations in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "As a general matter, a plaintiff who wishes to engage in conduct arguably protected by the Constitution, but proscribed by a statute, successfully demonstrates an immediate risk of injury," as "[t]he existence of the statute constitutes the government's commitment to prosecute in accordance with it and, thus, a concrete prospect of future harm for one who would flout it." *Ibid*. "Accordingly, when a plaintiff expresses a credible intention to disobey a statute, a sufficient likelihood of injury exists, and a pre-enforcement challenge is appropriate." *Ibid*. By contrast, "where the plaintiff seeks relief from

5

the defendant's criminal or unconstitutional behavior," or when "a statute was or would have to be misapplied to justify the plaintiff's arrest," "the putative injury typically proves too remote or attenuated to sustain [federal] jurisdiction under Article III." *Ibid*.

The latter situation is exemplified by *Schirmer v. Nagode*, 621 F.3d 581 (7th Cir. 2010). While engaged in a nonviolent protest, the *Schirmer* plaintiffs were arrested and charged with violating a Chicago ordinance providing that a person commits disorderly conduct when he disobeys a police officer's lawful order to disperse where three or more persons are committing acts of disorderly conduct in the immediate vicinity. *Id*. at 582-83. The plaintiffs brought suit, alleging that, at the time of the arrest, neither the plaintiffs nor anybody else in the immediate vicinity were engaged in disorderly conduct, meaning that the arresting officers had "misapplied" the ordinance in arresting them. *Id*. at 583. The plaintiffs sought damages for the violation of their constitutional rights and also brought a facial challenge to the ordinance's constitutionality. *Id*. at 584. To support their standing to bring the facial challenge, the plaintiffs alleged that "they 'plan to continue their participation in constitutionally protected political activities and protests and … fear repeated disruption of these activities and protests and prosecution for them.'" *Ibid*.

The district court held that the plaintiffs had standing, declared the ordinance facially unconstitutional, and enjoined its enforcement. *Ibid*. The Seventh Circuit reversed, holding that although the plaintiffs had standing to pursue a damages claim, they lacked standing to pursue the facial challenge. *Id*. at 588. The Seventh Circuit explained that it was unlikely that "a favorable judicial decision w[ould] prevent or redress [the plaintiffs'] injury" "because the failure-to-disperse provision clearly did not apply to the plaintiffs' actions," as there were "[n]o allegations or facts in the record [to] indicate that three or more individuals were committing acts

6

of disorderly conduct in the plaintiffs' immediate vicinity." *Id*. at 585. The court added that the plaintiffs' "arrests appear to have been baseless, and for that reason, the district court's injunction against enforcement of the provision [was] unlikely to prevent any injury to [them]." *Ibid*. The court allowed that if there "had [been] any indication that the police were even arguably acting within the scope of the failure-to-disperse provision when they arrested plaintiffs, then these plaintiffs could have standing to challenge the facial constitutionality of that provision and to request injunctive relief." *Id*. at 587; *see also Bell*, 697 F.3d at 452 (holding that the plaintiffs in that case had standing to facially challenge the same ordinance because they were arrested for failing to disperse where there *were* three or more persons engaged in disorderly conduct in the immediate vicinity). However, citing the principle that "a plaintiff lacks standing to bring a pre-enforcement challenge if the plaintiff's 'conduct was clearly outside the statute's scope,'" the Seventh Circuit held that the plaintiffs "lacked standing to bring a facial challenge to a law that did not apply by its terms to their desired conduct." *Schirmer*, 621 F.3d at 587.

This case is on all fours with *Schirmer*. Plaintiffs do not allege that David's "mental condition is of such a nature that it poses a clear and present danger to [him], any other person or persons or the community," 430 ILCS 65/8(f), that he wants to keep his FOID card and his firearms despite that condition, and that § 8(f) is preventing him from so doing. If Plaintiffs had alleged that, there would be standing to pursue the facial challenge. *See Bell*, 697 F.3d at 452. To the contrary, the amended complaint alleges that "[t]here [was] no reasonable basis to conclude David Rhein had a mental condition that presented a clear and present danger to himself or anyone else," and that the seizure of Plaintiffs' firearms and the revocation of David's FOID card was "in no way justified under [§ 8(f)]." Doc. 29 at ¶¶ 22-23. That is, Plaintiffs'

7

position is that § 8(f) does not apply by its terms to them and that their condition and conduct fall clearly outside the statute's scope. "Such a clear misuse of [§ 8(f)] does not provide a basis for a federal court to explore that law's facial constitutionality." *Schirmer*, 621 F.3d at 588.

For these reasons, Plaintiffs lack standing to pursue their facial challenge to § 8(f). The challenge accordingly is dismissed, though the dismissal is without prejudice. *See Harris v. Quinn*, 656 F.3d 692, 701 (7th Cir. 2011) ("Generally, when a complaint is dismissed because … the plaintiffs lack standing … it is dismissed without prejudice …."); *Am. Bottom Conservancy v. U.S. Army Corps of Eng'rs*, 650 F.3d 652, 660 (7th Cir. 2011) (where a district court dismisses a suit for lack of standing, "it [has] no jurisdiction [and] therefore [can] only dismiss without prejudice"); *Ramsay v. Mayer*, 420 F. App'x 586, 588 (7th Cir. 2011) ("If plaintiffs indeed lack standing, and there is no jurisdiction, then dismissal must be *without* prejudice; a court cannot adjudicate a claim over which it lacks jurisdiction.").[*]

## II.    Individual Capacity Damages Claims

### A.    First Amendment Claim

Plaintiffs allege that Defendants violated their First Amendment rights when they revoked David's FOID card and seized their firearms because David had "express[ed] unpopular

---

[*] *Schirmer* noted that if there had been "a record [in that case] showing a persistent pattern of similar police misconduct, persons intending to engage in protected speech and expression might be able to show that they were entitled to injunctive relief of some kind, if not against all enforcement of the provision then at least against future such misconduct." 621 F.3d at 588. The amended complaint here alleges "upon information and belief" that § 8(f) "is being used by Illinois State Police officials in a similar and persistent manner against other individuals in Illinois who are having their firearms and/or FOID cards revoked pursuant to this statute for engaging in speech that Illinois State Police officials are falsely construing as an indicative of a mental condition exhibiting dangerousness." Doc. 29 at ¶ 39. However, nowhere in their amended complaint or their opposition brief do Plaintiffs state or even suggest that they are seeking an injunction against the misuse of § 8(f) in that manner; rather, they seek an injunction against any and all enforcement of the statute. *Id*. at p. 6 (seeking "declaratory and injunctive relief against Defendant Grau in that Plaintiffs seek a declaration that 430 ILCS 65/8(f) is unconstitutional, and that Defendants should be temporarily, then permanently, enjoined from enforcing this statute").

8

political views, specifically about his support of Second Amendment rights." Doc. 29 at ¶ 34. To state a viable First Amendment retaliation claim, a plaintiff must allege that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The amended complaint plainly alleges all three elements—David's speech about the Second Amendment was protected by the First Amendment, having his FOID card and firearms taken away could deter him from engaging in that speech, and his FOID card and firearms were taken away because Defendants did not like his speech.

Defendants nonetheless argue that "Plaintiffs have pleaded themselves out of court on their First Amendment retaliation claim," Doc. 27 at 16, because they "admit that Mr. Rhein had made perceived threats to a locally elected government official," *id*. at 2, and "admit that Defendants revoked Mr. Rhein's FOID card because they believed that Mr. Rhein possessed a mental condition presenting a clear and present danger," *id*. at 17. But Plaintiffs have admitted no such thing. To the contrary, they allege that "[t]he actions taken against David Rhein … were done because of his political comments to a locally elected official some time before the illegal search and seizure that concerned David Rhein's views about Americans' Second Amendment rights that either the representative, someone in that representative's office, and/or one of the Defendant Officers somehow construed (falsely) as evidence that David Rhein had a mental condition that made him dangerous," Doc. 29 at ¶ 36; that David "was unreasonably deemed mentally unfit based on the exercising of his free speech issues regarding the Second Amendment," Doc. 30 at 16; and that "[w]hile Coffman alleged in his letter that David Rhein had … a mental condition, this is totally without merit, [and] Coffman had no reasonable basis

9

for making this conclusion," Doc. 29 at ¶ 31. These allegations are sufficient at this stage of the proceedings to support a claim that Defendants revoked David's FOID card and took away his firearms in retaliation for his protected speech.

### B. Second Amendment Claim

Plaintiffs also allege that the revocation of David's FOID card and confiscation of their firearms violated the Second Amendment, which provides an individual right to firearms ownership. *See McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010); *District of Columbia v. Heller*, 554 U.S. 570 (2008). If David indeed had a mental condition of a nature that posed a clear danger to himself or others, then he likely would have suffered no Second Amendment deprivation. *See Heller*, 554 U.S. at 626 (observing that "the right secured by the Second Amendment is not unlimited," and noting that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons or the mentally ill"); *Moore v. Madigan*, 702 F.3d 933, 940-41 (7th Cir. 2012) (same); *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001) ("it is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms"). But Plaintiffs allege that David had no such mental condition and could not reasonably have been thought to have such a condition. Doc. 29 at ¶ 23 ("There [was] no reasonable basis to conclude David Rhein had a mental condition that presented a clear and present danger to himself or anyone else."); *id.* at ¶ 31 (asserting that "Coffman had no reasonable basis for making [the] conclusion" that David had a dangerous mental condition); Doc. 30 at 13 (alleging that David was "falsely labeled as dangerous and mentally incompetent"). Because those allegations are deemed true at the pleading stage, the individual capacity Second Amendment claim survives dismissal.

10

C. **Fourth Amendment Claim**

Plaintiffs allege that their Fourth Amendment rights were violated when "Defendants Pryor and Summers, without a warrant, the Plaintiffs' valid and voluntary consent, or any other legal justification, entered … and illegally searched the Plaintiffs' home, and, once inside, … illegally seized the Plaintiffs' firearms …." Doc. 29 at ¶ 16. The entry and search of a home without consent or a warrant presumptively violates the Fourth Amendment. *See Kentucky v. King*, 131 S. Ct. 1849, 1356 (2011) ("It is a basic principle of Fourth Amendment law … that searches and seizures inside a home without a warrant are presumptively unreasonable.") (internal quotation marks omitted); *Groh v. Ramirez*, 540 U.S. 551, 564 (2004) (characterizing as a "basic rule, well established by [Supreme Court] cases," that "absent consent or exigency, a warrantless search of the home is presumptively unconstitutional"). An exception applies if exigent circumstances are present. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("Warrants are generally required to search a person's home … unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.") (internal quotation marks omitted). Exigent circumstances may be present if there is a "need to protect or preserve life or avoid serious injury." *Ibid.*; *see also United States v. Bell*, 500 F.3d 609, 612 (7th Cir. 2007) (holding that exigent circumstances may be present where the police need to "step in to prevent serious injury and restore order").

Defendants contend that there were exigent circumstances here—namely, the "immediate risk of harm" posed by David's "mental state that presented a clear and present danger to himself and others" and his possession of firearms. Doc. 27 at 14-16; Doc. 34 at 12-13. But again, Plaintiffs allege that the supposed concern about David's mental condition was a ruse and a

11

pretext to take his FOID card and guns in retaliation for his pro-Second Amendment speech. And even putting aside the allegation, taken as true at this stage, that the individual defendants did not subjectively believe that David's mental condition posed an immediate danger, Defendants must prove that they "had an *objectively* reasonable belief that exigent circumstances existed at the time of their warrantless entry into [Plaintiffs'] residence." *United States v. Fiasche*, 520 F.3d 694, 698 (7th Cir. 2008) (emphasis added); *see also Fitzgerald v. Santoro*, 707 F.3d 725, 731 (7th Cir. 2013) (holding that the defendant officers in a civil suit alleging a Fourth Amendment violation "were required to have an objectively reasonable basis for their belief that exigent circumstances existed" in order to justify their warrantless entry into the plaintiff's home). The amended complaint alleges, plausibly, that any such belief would have been unreasonable, Doc. 29 at ¶ 23, which is sufficient to defeat Defendants' exigent circumstances argument at the pleading stage.

### D. Due Process Claim

Plaintiffs allege that the revocation of his FOID card and seizure of his firearms violated his right to due process. Doc. 29 at ¶ 20. Defendants' brief does not mention the individual capacity due process claim, let alone seek its dismissal.

### E. Coffman's Supervisory Liability

Defendants argue that because Plaintiffs failed to adequately plead an underlying Fourth Amendment violation by Agents Pryor and Summers, the supervisory liability claim against Lieutenant Coffman must be dismissed. Doc. 27 at 17-18. Because Plaintiffs have stated a Fourth Amendment claim, Defendants' argument is without merit. No other basis is submitted for dismissing Coffman as a party defendant.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs' facial challenge to the constitutionality of § 8(f) is dismissed without prejudice for lack of standing. The individual capacity damages claims may proceed. The individual defendants shall answer the surviving portions of the amended complaint by April 10, 2014.

March 20, 2014                                     _____
                                                         United States District Judge