IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| KIM RHEIN | ) | |
| DAVID RHEIN | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 13 C 843 |
| | ) | |
| AGENT PRYOR, et. al. | ) | Hon. Judge Gary Feinerman |
| | ) | |
| Defendants. | ) | Hon. Mag. Judge Young B. Kim |

### PLAITNTIFF DAVID RHEIN'S MOTION TO QUASH SUBPEONA

The Plaintiff, David Rhein, by and through his attorney, Richard Dvorak, of THE LAW OFFICES OF RICHARD DVORAK, respectfully moves this Honorable Court to quash the defense subpoenas served on Dr. Alan Childs and Dr. Michelle Howard, pursuant to F.R.C.P. 45(a)(3)(A). In support, the Plaintiff states as follows.

1. The Plaintiff's complaint includes several Section 1983 claims, but the central claim is that Defendant Illinois State Police Lt. Coffman denied the Plaintiff his right to bear arms without due process.

2. The Plaintiff's due process and second amendment claim is primarily directed toward Defendant Coffman.

3. Defendant Coffman revoked the Plaintiff's FOID card (entitling the Plaintiff to possess a weapon), based on information he had that he believed made the Plaintiff have a mental condition that presented a "clear and present danger."

4. There was no hearing or notice given to the Plaintiff before the revocation.

5. After the revocation, Defendant Coffman sent a standard Illinois State Police ("ISP") letter to the Plaintiff stating Coffman's recommendations for what documents he should provide to Coffman if he desired to get his FOID card reinstated.

6. There is no formal mechanism, either in the FOID card statute or via Illinois State Police rule or regulation, whereby a person who had his or her FOID card revoked pursuant to the "clear and present danger" clause could have the FOID card reinstated. Instead, Coffman issued a letter stating his recommendations as to how to go about getting his FOID card reinstated.

7. One of the recommendations was that the Plaintiff, on his own, find and pay for a psychiatrist or registered clinical psychologist to examine the Plaintiff and write a letter attesting to the Plaintiff's suitability to acquire, possess and use firearms.

8. Coffman's letter was written on February 3, 2011.

9. It took the Plaintiff several months before he could find a mental health professional willing to offer such an opinion, because, as Coffman admitted in his deposition, he believes psychiatrists and psychologists would be reluctant to give such opinions, for obvious liability reasons.

10. Nevertheless, Dr. Alan Childs willingly accepted this responsibility, examined the Plaintiff, and submitted a report stating the suitability of the Plaintiff to acquire, possess and use firearms.

11. On August 1, 2011, the Plaintiff, through his attorney, Joseph Barbaro, submitted Dr. Childs' report to Coffman.

12. Shortly thereafter, Coffman acknowledged in his deposition, Coffman received Dr. Child's report. Then, Coffman admitted during his deposition, he simply put the report in

the Plaintiff's file and ignored it.  In fact, Coffman admitted he never bothered to read the report.

13. The undersigned has ordered the deposition, and can make it available to the Court when it is ready.

14. The Defendants have noticed subpoenas to Dr. Childs and Dr. Hoffman for July 9 (See <u>Exhibit A</u>, Subpoenas and Notices).

15. Before Coffman's deposition, the Plaintiff did not object to the Defendants' desire to take the depositions of Dr. Alan Childs and Dr. Michelle Howard (who assisted Dr. Childs in evaluating the Plaintiff) because the Plaintiff thought the defense may be able to articulate some reason why the deposition would lead to discoverable evidence.

16. However, now that Coffman has admitted he never read Dr. Childs' report, the depositions of Dr. Childs and Dr. Howard cannot possibly lead to discoverable evidence.

17. The only relevant question surrounding the Childs report is what process was given to the Plaintiff, both before and after the FOID card revocation.

18. The Plaintiff suspects the Defendants will argue they are merely attempting to discover the basis for Dr. Child's opinion.  However, Dr. Childs is not being offered as an expert witness, or even a fact witness, except to the extent his testimony may be needed to establish the authenticity of the letter.  The Plaintiff will not present any testimony that goes beyond the four corners of the document.

19. Dr. Childs' report will be relevant at trial only to show what sort of information Coffman had in his possession (and what he did with that information) when he refused to give the Plaintiff a hearing to reinstate his FOID card.  However, since Coffman has now admitted he never read the Childs report, there is no possible basis to take the deposition to attack

the foundation or the basis of the report. After all, Coffman is not claiming he continued to deny the Plaintiff a hearing because he found Dr. Childs' report deficient; he just simply decided to ignore it.

20. Given the highly sensitive nature of the information sought via the subpoena, and the zero chance the depositions will lead to discoverable evidence, the subpoenas should be quashed. See, e.g., *Builders Ass'n of Greater Chicago v. City of Chicago*, 96 C 1122, 2002 U.S. Dist. LEXIS 5493, 2002 WL 472259 (N.D. Ill, March 27, 2002) (granting motion to quash based on undue burden and lack of relevancy); and see also *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004) (upholding the district court judge's decision to quash subpoenas based on medical privacy issues and relevancy).

WHEREFORE the Plaintiff respectfully requests this Honorable Court grant the Plaintiff's motion to quash the subpoenas directed to Dr. Alan Child and Dr. Michelle Howard.

    Respectfully submitted,

    s/ Richard Dvorak
    Plaintiff's Attorney

Richard Dvorak
DVORAK LAW OFFICES, LLC
18W140 Butterfield Road, 15th Floor
Oakbrook Terrace, IL 60181
(312) 593-7146 (phone)
richard.dvorak@civilrightsdefenders.com