IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIM RHEIN and DAVID RHEIN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 13 C 843 |
| v. ) | |
| ) | JUDGE FEINERMAN |
| AGENT PRYOR, Star Number 4816, an ) | |
| Illinois State Police Officer, in his ) | MAGISTRATE JUDGE KIM |
| individual capacity; AGENT SUMMERS, ) | |
| Star Number 5706, an Illinois State Police ) | |
| Officer, in his individual capacity; ) | |
| LIEUTENANT JOHN COFFMAN, an ) | |
| Illinois State Police Officer, in his ) | |
| individual capacity; HIRAM GRAU, ) | |
| Illinois State Police Director, in his official ) | |
| capacity; and LISA MADIGAN, Illinois ) | |
| Attorney General, in her official capacity, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT JOHN COFFMAN'S RESPONSE TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant John Coffman ("Defendant"), a retired Illinois State Police ("ISP") lieutenant, by and through his attorney Lisa Madigan, the Illinois Attorney General, hereby submits his Response to Plaintiff's Cross Motion for Summary Judgment:

**ARGUMENT**

**I.  DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY ON THE PRE-DEPRIVATION DUE PROCESS CLAIM.**

Qualified immunity has two prongs: whether (1) the officer violated the plaintiff's constitutionally protected right and (2) the constitutionally protected right was "clearly established" at the time of the alleged infringement. *Berman v. Young*, 291 F.3d 976, 983 (7th

1

Cir. 2002). This Court can review the prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

> A. **It Was not Clearly Established Law that Not Affording Plaintiff a Pre-Deprivation Hearing Under the Circumstances was a Violation of Procedural Due Process.**

It is Plaintiff's burden to show that, under the facts involved here, a right to a pre-deprivation hearing was clearly established. *See Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1174 (7th Cir. 1997). Plaintiff's cross-motion for summary judgment does not cite a single case involving similar facts to those involved here, where a court declared that a pre-deprivation hearing was required; therefore he cannot overcome Defendant's qualified immunity. *See Saffell v. Crews*, 183 F.3d 655, 658 (7th Cir. 1999) ("When the specific facts in the particular instance are determined then those facts are to be compared to the law existing at the time to see if clearly established law was violated."); *see Conner v. Reinhard*, 847 F.2d 384, 388 (7th Cir. 1988) (requiring closely analogous case involving clearly established constitutional right to defeat qualified immunity defense). Nor has Defendant located any cases in this judicial circuit that would defeat qualified immunity.

Applying qualified immunity to Plaintiff's claim is perfectly consistent with the rationale underlying this defense. Police officers, like Defendant, are called upon to make swift, difficult decisions. They are entrusted to use their professional judgment with little time to deliberate to ensure public safety and security. *See Sutterfield v. City of Milwaukee*, 751 F.3d 542, 559 (7th Cir. 2014) ("'[W]hen police are acting in a swiftly developing situation . . . a court must not indulge in unrealistic second-guessing.") *quoting Leaf v. Shelnutt*, 400 F.3d 1070, 1092 (7th Cir. 2005). In fact, denying qualified immunity under the facts here would place all police officers having to make difficult and swift discretionary decisions at their peril for a suit for damages by

plaintiffs who will second-guess them later; this is precisely what qualified immunity is designed to prevent.

To be sure, Defendant was called upon to make a difficult and swift discretionary decision in revoking Plaintiff's FOID card based on the information presented to him. At the time of revoking Plaintiff's FOID card, Plaintiff had made multiple threats to Representative DeLuca's office. He had threatened to shoot people. (Doc. 67, Def. SOF 7). He had claimed a revolution was going to occur and that a militia was forming (Doc. 67, Def. SOF 15). He stated that Representative DeLuca should hang for treason. (Doc. 67, Def. SOF 8). He had made comments about going "second amendment" on people, an obvious reference to shooting people. (Doc. 67, Def. SOF 12). Importantly, only days before Defendant revoked Plaintiff's FOID card, Fanning reported that Plaintiff stated, "I have never shot anybody in my life, and I never would shoot anyone, unless I am forced to—to protect my constitutional rights." (Doc. 67, Def. SOF 16). These threats scared Fanning enough for her to report the matter to ISP. Even Plaintiff's own treating psychiatrists agree that it was appropriate to revoke his FOID card based upon these threats. (Doc. 67, Def. SOF 23). Under these circumstances, Defendant's decision to revoke Plaintiff's FOID card was not objectively unreasonable; certainly it could not be considered "plainly incompetent" conduct, when Plaintiff's own treating psychiatrists agreed that Plaintiff possessed a clear and present danger and that his FOID card should have been revoked. *See Humphrey v. Staszak*, 148 F.3d 719, 727 (7th Cir. 1998) (holding that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" because police officers should not sidestep their law enforcement duties for fear of being sued).

In his cross-motion for summary judgment, Plaintiff makes much of the fact that some of the threats made by Plaintiff occurred nearly a year before Defendant revoked Plaintiff's FOID

card. (Doc. 70, pp. 7-8). But Plaintiff ignores that Defendant first learned of the threats—which had been relayed to him by Zone Agents with ISP—immediately prior to making the decision to revoke the FOID card. (Doc. 67, Def. SOF 18-20). Moreover, Plaintiff's aggressive and threatening conduct had escalated over the course of the year preceding revocation of his FOID card, (Doc. 67, Def. SOF 5-16), culminating in Plaintiff calling himself a "sacrifice lamb" and threatening that he was part of a group organizing a militia and that he would shoot people if he had to. (Doc. 67, Def. SOF 16). This Court should not substitute its judgment in place of an experienced law enforcement officer's by second-guessing Defendant's swift decision to revoke Plaintiff's FOID card based on the facts presented to him. *See Sutterfield*, 751 F.3d at 559; *see also Hightower v. City of Boston*, 693 F.3d 61, 85 (1st Cir. 2012) ("The revocation of a firearms license . . . without a predeprivation hearing is justified by concerns as to public health and safety.").

Finally, the fact that determining whether a pre-deprivation hearing was necessary here involves balancing relevant interests under the standard announced in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976), favor a qualified immunity finding. The Seventh Circuit has stated that, "It would appear that, whenever a balancing of interests is required, the facts of the existing caselaw must closely correspond to the contested action before the defendant official is subject to liability . . . . Qualified immunity typically casts a wide net to protect government officials from damages liability whenever balancing is required." *Benson v. Allphin*, 786 F.2d 268, 276 (7th Cir. 1986) *abrogated on other grounds*; *Sherman v. Four County Counseling Center*, 987 F.2d 397, 409 (7th Cir. 1993). Here, because a balancing of interests is required to determine whether a pre-deprivation hearing was constitutionally required (*see* Doc. 66, pp. 8-12), it could not be clearly established that, under the facts and circumstances in this specific case, that such a hearing was

indeed required. Accordingly, Defendant is protected by qualified immunity, and Plaintiff's pre-deprivation hearing due process claim should be dismissed with prejudice. *See Benson*, 786 F.2d at 276.

### B. Plaintiff was not Entitled to a Pre-Deprivation Hearing.

This Court can award qualified immunity to Defendant on the alternative ground that Plaintiff was not entitled to a pre-deprivation hearing in the first instance. Under the *Mathews* balancing test, this Court must balance three interests: (1) the nature of the private interest; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest in taking its action, including the burdens any additional procedural requirement would entail. *Mathews*, 424 U.S. 334-35. But this Court's analysis should be conducted within the framework of the Due Process Clause, which does not compel a pre-deprivation hearing where impracticable, such as where quick action by the State is necessary. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (stating that pre-deprivation hearing constitutionally required absent "quick action by the State or the impracticality of providing any pre-deprivation process"). Where a pre-deprivation remedy is impracticable due to the necessity of quick action by the State, due process may be satisfied with the availability of an adequate post-deprivation remedy. *See Zinermon v. Burch*, 494 U.S. 113, 132 (1990).

Plaintiff maintains that the first factor weighs in favor of granting a pre-deprivation hearing because, as he argues, he possesses a significant interest in possessing a firearm. (Doc. 70, pp. 11-12). But possession of a firearm is not as significant of a right as Plaintiff claims. Indeed, a revocation of a FOID card does not constitute a deprivation of a basic means of sustenance, which generally would compel a pre-deprivation hearing. *Compare Mathews*, 424 U.S. at 340-41 (holding that termination of disability payments under Social Security Act did not

require pre-deprivation hearing, where payments were non-subsistence payments and post-deprivation hearing was adequate), *and Potts*, 224 F. Supp. 2d at 943 ("holding that "personal interest in . . . gun permit . . . does not constitute a necessity of life, such as income, or even employment, that would strongly militate in favor of a pre-deprivation hearing"), *with Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (holding that termination of welfare benefits requires pre-deprivation hearing because "welfare provides the means to obtain essential food, clothing, housing, and medical care").

Additionally, Plaintiff ignores that the Supreme Court has never held that the right to possess a firearm under the Second Amendment is so extensive as to have no exceptions. In *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008), the Supreme Court categorically excluded the mentally ill from those who enjoy the right to possess a firearm. The undisputed facts here show that, at the time Defendant revoked Plaintiff's FOID card, Plaintiff possessed a mental condition that presented a clear and present danger to himself and others. (Doc. 67, Def. SOF 5-16). Indeed, even his treating psychiatrists testified that he possessed such a mental condition. (Doc. 67, Def. SOF 23). In light of Plaintiff's mental condition at the time of FOID card revocation, and given *Heller's* exclusion of the mentally ill from those who may possess a firearm, the first *Mathews* factor weighs against a finding that the Due Process Clause required a pre-deprivation hearing in this case.

Nor does the second *Mathews* factor weigh in favor of a pre-deprivation hearing, for any risk in an erroneous deprivation can be cured through the FOID Card Act's post-deprivation procedures. *See* 430 ILCS 65/10-11. Indeed, Plaintiff's FOID card ultimately was reinstated, (Def. SOF 44), thus demonstrating that relief from a FOID card revocation is available generally, and was made available here specifically. Plaintiff's argument with respect to an erroneous

6

deprivation occurring due to stale allegations of Plaintiff's mental state is belied by the record. As discussed above, Plaintiff's threats were on-going over the course of the year preceding revocation, (Doc. 67, Def. SOF 5-16), and Plaintiff threatened to shoot people and referred to himself as a "sacrifice lamb" only days before the actual revocation, (Doc. 67, Def. SOF 15-16). The evidence relied upon by Defendant to revoke Plaintiff's FOID card was hardly stale.

Finally, the third *Mathews* factor weighs heavily in favor of finding that a pre-deprivation hearing was unwarranted in this case. Based on the threats made by Plaintiff over the course of a year—which escalated to the point of Defendant stating that he may shoot people and referring to himself as a "sacrifice lamb"—Defendant had no reasonable option but to act quickly to revoke Plaintiff's FOID card. (Doc. 67, Def. SOF 5-16). Finding that the absence of a pre-deprivation hearing is constitutionally permissible here is consistent with *Waltier v. N.Y. Police Dep't*, 856 F. Supp. 196 (S.D.N.Y. 1994). There, the court considered whether due process required a pre-deprivation hearing prior to revocation of the plaintiff's firearms permit. *Id.* at 197. The State of New York revoked the plaintiff's permit after he was arrested for shooting another individual. *Id.* The court held that, after analyzing the *Mathews* factors, a pre-deprivation hearing was unnecessary. *Id.* at 200-01. The court stressed that the significant governmental interest in ensuring public safety outweighed the plaintiff's interest in his permit, especially given the minimal risk of a permanent deprivation due to adequate post-deprivation procedures. *Id.* Because quick action by the State was necessary to dispossess a potentially dangerous firearms owner of the weapon, the court held that a pre-deprivation hearing was not constitutionally required. *See id.* at 200; *see Gilbert v. Homar*, 520 U.S. 924, 930 (1997) ("This Court has recognized, on many occasion, that where a State must act quickly, or where it would

be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause.").

In the end, a pre-deprivation hearing was not constitutionally required before Defendant could revoke Plaintiff's FOID card. But even if this Court holds that the Due Process Clause does require a hearing under the circumstances in this case, such a requirement was not "clearly established." Accordingly, Defendant is entitled to qualified immunity on the pre-deprivation due process claim.

## II. DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY ON THE POST-DEPRIVATION DUE PROCESS CLAIM

Defendant similarly is entitled to qualified immunity on Plaintiff's post-deprivation due process claim, which alleges that Defendant denied Plaintiff constitutionally adequate process in seeking reinstatement of the FOID card. In Plaintiff's cross motion for summary judgment, he argues that Defendant delayed his reinstatement process unreasonably. (Doc. 70, pp. 9-10). But the argument is belied by the undisputed facts.

First and foremost, Defendant's personal involvement with Plaintiff's post-deprivation reinstatement process was limited—spanning from around September 23, 2011, to early February 2012. (Doc. 67, Def. SOF 36-42). Because personal involvement is a critical element of section 1983 liability, *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003); *Hildebrandt v. Ill. Dep't of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003), only that time frame can be considered for Plaintiff's post-deprivation due process claim against Defendant.

Plaintiff argues that *Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009), supports his post-deprivation due process claim, but it does not. In that case, the Second Circuit Court of Appeals discussed the *Mathews* factors in the context of post-deprivation due process claims. *Id.* at 171-75. Similar to the pre-deprivation context, the post-deprivation context also requires

consideration of the following three *Mathews* factors: (1) private interest at stake; (2) the risk of an erroneous deprivation as well as any additional procedural safeguards that the State could employ; and (3) the government's interest for reasonably delaying the post-deprivation hearing. *Id.*

In *Spinelli*, the first factor weighed heavily in favor of the plaintiff because the deprivation (revocation of a license to sell firearms) was affecting the plaintiff's livelihood—the very resource he used to survive. *Id*. at 171. Here on the other hand, Plaintiff's interest is not as significant, as described above. Plaintiff possessed a mental condition that made him a clear and present danger to himself and others (as even testified to by his own treating psychiatrists). (Doc. 67, Def. SOF 23). This mental condition diminished the Second Amendment right Plaintiff had to possession of a firearm. *See Heller*, 554 U.S. 626-27. The diminished interest that Plaintiff possessed in owning a firearm favors the constitutionality of Defendant's conduct.

The second and third *Mathews* factors also favor a finding that Defendant's involvement in the short delay accompanying Plaintiff's reinstatement process was constitutional. Between late September 2011 and early February 2012, Defendant was awaiting further information from law enforcement and Representative DeLuca's office regarding additional threats made by Plaintiff. (Doc. 267, Def. SOF 38). Additionally, the short delay also was due, in part, to understaffing at ISP. (Doc. 267, Def. SOF 25). The short delay during Defendant's involvement with the reinstatement process thus reduced the likelihood of an erroneous deprivation, by allowing all important and relevant information to be gathered to ensure that Defendant no longer presented a clear and present danger. Likewise, the government's interest (as well as that of the public generally) in allowing a short delay was significant, for had Defendant rushed to return Plaintiff's FOID card without complete information relating to additional threats made by

Plaintiff, the consequences could be extreme (*i.e.*, an individual with an aggressive and threatening mental condition, posing a clear and present danger, in possession of a firearm).

To the extent that Plaintiff claims that any further delay after Defendant's transfer out of the Firearms Services Bureau constituted an unreasonable delay in affording procedural due process, that claim must be rejected, for after early February 2012, Defendant had no further involvement with the reinstatement process. (Doc. 267, Def. SOF 42-43). Accordingly, Plaintiff's post-deprivation due process claim is limited to the four months between September 23, 2011 and early February 2012. But a delay of only four months under these specific circumstances—where investigation into additional threats was on-going and there existed understaffing at ISP—was reasonable. *See*, *e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985) (holding nine-month delay of post-deprivation hearing constitutional).

For his part, Plaintiff makes much of the Second Circuit's decision in *Spinelli*, holding that a 58-day delay between a gun dealer's license to sell firearms and a post-deprivation hearing violated the Due Process Clause. (Doc. 70, pp. 9-10). But as discussed before, the 58-day delay was unreasonably long in *Spinelli* because there, unlike here, the court stressed that the deprivation related to the gun dealer's livelihood. *Spinelli*, 579 F.3d at 173. The Due Process Clause, of course, cannot be applied in a vacuum, *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242 (1988) (noting that "significance of such a delay" between deprivation and post-deprivation hearing "cannot be evaluated in a vacuum") and, therefore, the fact that a 58-day delay in *Spinelli* was a due process violation must be considered in light of the property interest that was involved there—that is, the right to pursue a livelihood that provides a means of survival. Where the property interest relates to much more fundamental rights such as survival, the Due Process Clause demands a much more prompt hearing after deprivation of that property

interest. But where the deprivation relates to something less significant, such as possession of a firearm by one who is considered by law enforcement officials (with their years of training and experience in these matters) as presenting a clear and present danger, a longer delay is constitutionally permissible. *See Doe v. Heck*, 327 F.3d 492, 526-27 (7th Cir. 2003) (holding that "'the precise timing and form of the procedures that the government must afford an individual hinge upon the particularities of the situation,' and that due process, 'unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances.'") *quoting Doyle v. Camelot Care Ctrs. Inc.*, 305 F.3d 603, 618 (7th Cir. 2002). Here, the delay of approximately four months was not unreasonable, especially in light of the fact that the only property right at issue was possession of a firearm, not the right to a livelihood, and the reasons for the delay—awaiting further information related to additional threats made by Plaintiff and understaffing at ISP. Indeed, non-trivial delays may be tolerated under the Due Process Clause in clear cases of routine administrative delay or overburdened bureaucracy. *See Isaacs v. Bowen*, 865 F.3d 468, 477 (2d Cir. 1988) (holding that "neither the six-month delay created by the additional fair hearing, nor the estimated total of 19 months of from claim initiation to completion of ALJ review are remarkable in the Medicare, Social Security and employment benefits systems" where "delay is a natural concomitant of our administrative bureaucracy") (collecting cases). And although Defendant may have stated in passing that it can take years before a hearing on a FOID card reinstatement request is granted, that certainly did not happen in this case. And it is important that Plaintiff's due process claim is strictly an *as-applied* challenge; thus Defendant's statement regarding the length of time between a request for a hearing and the date of hearing in the abstract sense is irrelevant.

To the extent that this Court may conclude that the approximately four-month delay between FOID card revocation and a post-deprivation hearing was unconstitutional, it was not "clearly established" that Defendant's conduct in this case constituted unconstitutional conduct; therefore, qualified immunity defeats the claim. As discussed above, the balancing of factors under *Mathews* makes qualified immunity appropriate. *See* Benson, 786 F.2d at 276 ("It would appear that, whenever a balancing of interests is required, the facts of the existing caselaw must closely correspond to the contested action before the defendant official is subject to liability . . . . Qualified immunity typically casts a wide net to protect government official from damage liability whenever balancing is required."). Accordingly, Plaintiff's post-deprivation due process claim should be dismissed with prejudice.

In the end, the undisputed evidence establishes the following chronology. Plaintiff's FOID card was revoked in February 2011. The earliest that Defendant learned that Plaintiff requested reinstatement was late September 2011. Defendant then learned of additional threats by Plaintiff and was awaiting further information from ISP Agents and Representative DeLuca's Office. But by early February 2012, Defendant was no longer employed in the Firearms Services Bureau and, therefore, no longer had any personal involvement with the reinstatement process. These facts show that any delay in the reinstatement process while Defendant had any personal involvement with that process was not so long to amount to a due process violation. *See Doe*, 327 F.3d at 526-27 (holding that "'the precise timing and form of the procedures that the government must afford an individual hinge upon the particularities of the situation,' and that due process, 'unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances.'").

**Wherefore**, Defendant retired ISP Lieutenant John Coffman respectfully requests that this Court award him summary judgment on Plaintiff's due process claim, deny Plaintiff's cross-motion for summary judgment, dismiss the Amended Complaint in its entirety with prejudice, and provide any other relief that is just and proper.

LISA MADIGAN
Attorney General of Illinois

Respectfully submitted,

/s/ *Sunil Bhave*
Sunil Bhave
Assistant Attorney General
Office of the Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-4450

## CERTIFICATE OF SERVICE

I, Sunil Bhave, hereby certify that I have caused true and correct copies of the above and foregoing Response to Plaintiff's Cross Motion for Summary Judgment to be sent via e-filing to all counsel of record on October 13, 2014, in accordance with the rules on electronic filing of documents.

/s/ *Sunil Bhave*
Sunil Bhave
Assistant Attorney General