IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| DAVID RHEIN | ) | |
|---|---|---|
| | ) | No. 13 C 843 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Hon. Judge Gary Feinerman |
| | ) | |
| LIEUTENANT JOHN COFFMAN | ) | Hon. Mag. Judge Young B. Kim |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Plaintiff David Rhein, by and through his attorneys, DVORAK LAW OFFICES, LLC, hereby moves this Honorable Court to deny Defendant John Coffman's ("Defendant") motion for summary judgment. In support, the Plaintiff states as follows:

### ARGUMENT

**I. THE DEFENDANT VIOLATED THE DEFENDANT'S DUE PROCESS RIGHTS.**

**A. The Defendant Violated the Plaintiff's Due Process Rights in Not Conducting a Pre-Deprivation Hearing.**

In analyzing the pre-deprivation hearing issue, applying the first two *Mathews* factor, the Defendant cites to *Potts v. City of Philadelphia*, 224 F. Supp. 2d 919 (E.D. Pa. Aug. 29, 2002) to support his proposition that "the individual interest in possessing a FOID card does not outweigh the strong governmental interest of ensuring the public safety, particularly given the minimal danger of an erroneous permanent deprivation." Def. Mem. Summ. J., 10. *Potts*, however, is a pre-*District of Columbia v. Heller*, 554 U.S. 570 (2008) and pre-*McDonald v. Chicago*, 561 U.S. 472 (2010) and thus *Potts* minimized the importance of the fundamental right to bear arms

highlighted by these recent landmark United States Supreme Court cases. Moreover, the Defendant's argument that the "Plaintiff's FOID card ultimately was reinstated," (Def. Mot. Summ. J., 10), as support for his argument that the lack of pre-deprivation process was constitutional, is not logical. In *Spinelli v. City of New York*, 579 F.3d 160 (2d. Cir. 2009), the defendant similarly argued that "because [the revokee] was able to have her license suspension lifted and [] retrieve her property in less than two months, her due process rights were not violated. *Id.* at 172. However, the court noted that "[t]his is non-sequitur" and that the plaintiff's "eventual success did not result from the [defendant's] affording her due process, but despite its absence." *Id.* at 172. Further, even though the plaintiff's license had been reinstated and her firearms returned, the plaintiff's due process claim "nevertheless remains a live controversy" . . . . "[b]ecause she never received the process she was due." *Id*. at 175.

In applying the third *Mathews* factor, the Defendant relies on Donna Fanning's statements, which include claims that the Plaintiff stated he was "ready to start shooting people." Def. Mem. Summ. J., 8.[1] Putting aside for a moment the fact that this is disputed by the Plaintiff's testimony at deposition and the alleged statement is nevertheless presented as an undisputed fact, this statement was allegedly made in March of 2010 - 11 months prior to the revocation, belying the Defendant's claims that a pre-deprivation hearing was impracticable because of the necessity of quick action.

Beyond that, the Defendant cites to *Waltier v. N.Y. Police Dep't*, 856 F. Supp. 196 (S.D.N.Y 1994) to support his argument that a pre-deprivation hearing was unnecessary in this case. Def. Mem. Summ. J., 9. However, in *Waltier* the revokee had his permit revoked only

---

[1] At deposition, the Plaintiff testified and refuted many of the alleged comments Donna Fanning attributed to him in her statement. For example, the Plaintiff specifically denied ever stating he was "ready to start shooting people," or that he said he would "kick [the Governor's] ass," or that he was a member of a militia. Pl. Ex. A, Pl. Dep. 85: 16-22; 95:9-19; 98:10-14. In any event, these statements do not amount to a clear and present danger given the date, time, and context in which they were made.

after being arrested for shooting someone. *Id.* at 200. There, the court noted that "arrest for shooting another person is an acceptable indicator of behavior that poses a threat to public safety." *Id*. at 200. The illegal use of firearms in that case required quick state action. *Id.* at 200. In the instant case there was no arrest, nor was there an opportunity for a prompt post-deprivation hearing. In fact, Agent Summers and Agent Pryor both testified at deposition that at no point did they believe they had probable cause to arrest the Plaintiff. Pl. Ex. D, Summers Dep. 67; Pl. Ex. E, Pryor Dep. 72. Further distinguishing *Waltier* from this case is that the *Waltier* court noted that the revokee was entitled to appeal the administrative decision to revoke his permit and receive a hearing within 30 days. *Id.* at 198. However, the revokee "chose to forego the established review process following notice of his pistol permits," instead choosing to file suit. *Id.* Here, the Plaintiff tried, in vain, to engage the administrative review process many times over a period of several months before resorting to the courts. Moreover, the *Waltier* case was also a pre-*Heller* and pre-*McDonald* decision, and given the minimization of the right to bear arms in that case, its precedent is questionable at best. *Waltier*'s precedent is even more uncertain when viewed in conjunction with the Second Circuit's decision in *Spinelli*, finding that the revocation of a firearms and a subsequent two-month delay for reinstatement, was a violation of procedural due process. *Spinelli*, 579 F.3d 160.

### B. The Defendant Violated the Plaintiff's Due Process Rights in His Actions in Not Providing the Plaintiff a Prompt, Meaningful Post-Deprivation Remedy.

The Defendant concedes that there is "clearly established law on post-deprivation due process" but argues that Defendant "had limited involvement" with the Plaintiff's request, and "acted in an objectively reasonable manner." (Def. Mem. 12). Initially, it should be noted, the Defendant makes assertions that are belied by the record. First, the Defendant claims that he did not learn the Plaintiff sought reinstatement until September 23, 2011. Def. Statement of Facts,

¶36. However, this is disputed by the record, which shows that the Firearm Services Bureau (Coffman is head of the small unit) was in receipt of correspondence from the Plaintiff's attorney as early as August 8, 2011. Pl. Ex. C, Coffman Dep. Group Ex. No. 3, AGO Bates No. 76-83. Next, the Defendant claims that he "had received information that Plaintiff had continued to make threats after revocation of his FOID card." Def. Mem. Summ. J., 12. This, too, is disputed by the record, which shows that the only documented request for information was sent in May 2012, months after the Defendant left the Firearm Services Bureau. Pl. Ex. C, Coffman Dep. Group Ex. No. 3, AGO Bates No. 93-94. Moreover, the information returned noted that the Plaintiff had not made contact with Representative DeLuca's office since February 2011. *Id*. Therefore, these assertions should not be considered by this Court. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Further, the Defendant misrepresents the delay between the request for relief and the reinstatement as a four-month delay, ignoring the fact that the Defendant's unit first received a request for reinstatement on August 8, 2011, and it was not until June 5, 2012 that the Plaintiff's FOID card eligible for reinstatement. The Defendant cites to *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) in support of its argument that a minimal delay can still be constitutional. However, the defendant also misrepresents *Loudermill* as upholding a nine-month delay of post-deprivation hearing. Def. Mem. Summ. J., 13-14. In fact, in *Loudermill*, the plaintiff requested a hearing on Nov. 12, 1980 and was provided a hearing on January 29, 1981. *Id*. at 535. It was the decision in the case that was not issued until August 21, 1981, nine months after the initial request for a hearing, but the plaintiff was indeed promptly provided an

4

opportunity to be heard shortly after his request for a hearing. *Id*. at 535-36. In this case, by contrast, the Plaintiff was never given a hearing until finally the court ordered the reinstatement of the Plaintiff's FOID Card and the return of his weapons.

Other courts have found shorter time periods than exist in this case to be due process violations. In *B & B Target Center, Inc, v. Figueroa-Sancha*, 871 F. Supp. 2d 71 (D. Puerto Rico July 3, 2012), the court held that a six-month delay in holding a hearing following the revocation of a gunsmith license stated a procedural due process claim. Similarly, in *Spinelli*, the Second Circuit held that the 58-day delay "exceeded the bounds of due process." 579 F.3d at 173. And, even if the 11-month delay in this case is somehow considered a short delay, "even a brief and provisional deprivation of property pending judgment is of constitutional importance." *Krimstock v. Kelly,* 306 F.3d 40, 51–52 (2d Cir. 2002); *see Fuentes v. Shevin,* 407 U.S. 67, 84–85 (1972) ("[I]t is now well settled that a temporary, non[-]final deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment."). In fact, one court held that a post-deprivation hearing in the child-custody context must be provided within 72 hours. *Patterson v. Armstrong County Children & Youth Servs.*, 141 F.Supp.2d 512, 540 (W.D. Penn. 2001).

Finally, this Court should reject the Defendant's shortened time frame because it begins with a faulty premise. The Defendant argues the Plaintiff did not begin to seek reinstatement of his license until September 23, 2011, when the Defendant received a letter from his attorney, and his attorney did supposedly request a "hearing" until January 16, 2012 (Def. Mem. 12-13). However, the Defendant revoked the Plaintiff's license, and thus the Defendant had the obligation to provide the Plaintiff with a prompt post-deprivation hearing. See, e.g., *Patterson*, 141 F.Supp.2d at 531 (even where there is a justification for not providing a pre-deprivation

hearing, "there must be a prompt, *state-initiated* post-deprivation hearing" to justify the deprivation) (emphasis added). In this case, it is undisputed that the Plaintiff immediately inquired with the agents on the scene about challenging the Defendant's decision, and was told to follow the procedures outlined by the Defendant in the letter. The problem, as the Defendant candidly admitted in his deposition, is that the procedures devised by the Defendant are so onerous and burdensome that it necessarily would require a great deal of time, expense and effort just to begin the re-instatement process, such as obtaining character references, and, most importantly, finding a mental health professional willing to actually perform the evaluation requested by the Defendant. The Defendant even admitted that this was an expense he preferred to burden the revokee with rather than the State, and he knew most revokees would have to seek out multiple mental health professionals to accomplish this task. Of course, these requirements are not only burdensome, but are completely made up, and can be found nowhere in the statute or any other Illinois State Police regulation. Thus, given this undisputed factual reality, the Defendant should be held responsible for the time period that began the day the Plaintiff's license was revoked. Thus, the delay in this case was not four months, as asserted by the Defendant (Def. Mem. 13).

Moreover, aside from the delay, there was a lack of a meaningful opportunity to be heard. In this regard, the Defendant completely ignores the fact that the Defendant simply blew off the Plaintiff's attempts to comply with the Defendant's onerous requests. The Defendant completely ignored the letter from the Plaintiff's attorney, which included the mental health evaluation that the Defendant requested the Plaintiff obtain. This mental health requirement is found nowhere in the statute or ISP regulations, but this did not stop the Defendant from placing this burden and expense on the Plaintiff. Then, incredibly, once the Plaintiff actually complied with this

6

requirement, the Defendant completely ignored the letter and mental health evaluation. There is no excuse for such awful behavior, which is likely why the Defendant chose to ignore it in his argument as to why his motion for summary judgment should be granted.

The Defendant claims that a pre-deprivation hearing was not practicable here because quick action by the State was necessary, citing to a *Hightower v. City of Boston*, 693 F.3d 61 (1st Cir. 2012) for support. Def. Mem. Summ. J., 7-8.[2] However, that case is easily distinguishable because in *Hightower*, (1) the revokee's firearm license was revoked for lying on her firearm license renewal form, (2) the revokee was entitled to retain her firearm during the appeal process, and (3) the pre-deprivation process, "when considered in conjunction with the available post[-]deprivation process" – a hearing in the form of judicial review within 90 days of the revocation, was considered constitutionally adequate. *Id.* at 84. There, the First Circuit noted that "full pre[-]deprivation process is not required so long as 'prompt post[-]deprivation review is available for correction of administrative error.'" *Hightower*, 693 F.3d at 85 (citing *Mackey v. Montrym*, 443 U.S. 1, 13 (1979)). Here, the Plaintiff had (1) no opportunity to be heard whatsoever, (2) no right to keep his firearms during the appeal process, and (3) no right to be review within a specified time period. Because the Plaintiff was without any way to access prompt or adequate post-deprivation review, full pre-deprivation process was required.

## II. THE DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY.

In this case, the Defendant asserts the affirmative defense of qualified immunity. Once a defendant asserts a qualified-immunity defense, the plaintiff has the burden to establish that the defendant's action violated a clearly established right. *See Estate of Escobedo v. Bender,* 600 F.3d 770, 779 (7th Cir.2010). A constitutional right is "clearly established" for qualified

---

[2] "Def. Mem. Summ. J." refers to the Defendant's Memorandum in Support of his Motion for Summary Judgment. (Dkt. 66).

7

immunity purposes where "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing wrong violates that right." *Abbott v. Sangamon County*, 705 F.3d 706, 725 (7th Cir. 2013). The Defendant asserts the Plaintiff is required to show the existence of a case within "this judicial circuit" with a "similar fact pattern" to defeat an assertion of qualified immunity (Def. Mem. 11). This is a misstatement of the law. First, there is no requirement that there be a case with a "similar fact pattern" to demonstrate reasonable notice to a law enforcement officer that his or her actions would violate the constitution. As the Seventh Circuit explains:

> The purpose of qualified immunity is to provide reasonable notice to governmental officials that certain conduct violates constitutional rights before a plaintiff can subject them to liability. *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Reasonable notice does not require that there be a case 'fundamentally similar' to the present case, and indeed an officer can be on notice that his conduct violates constitutional rights even in novel factual circumstances. *Narducci v. Moore*, 572 F.3d 313, 318 (7th Cir. 2009).

Second, the Defendant is mistaken that the "clearly established" case law must come from "this judicial circuit." As the *Patterson* court noted, "The 'clearly established law' element of qualified immunity is flexible enough to embrace clearly established law of other circuits." *Patterson*, 141 F.Supp.2d at 540 (citing to *Turiano v. Schnarrs*, 904 F.Supp. 400, 414 n. 15 (M.D. Pa. 1995) ("Much of the directly applicable case law emanates from outside this circuit, but that is not important.") The Plaintiff is not aware of any direct holding from the Seventh Circuit that says the same, but it is implied in its qualified immunity analysis, which has taken into account case law from other circuits in rejecting qualified immunity defenses. See, e.g., *Abbott*, 705 F.3d at 731-32; see also *Narducci*, 572 F.3d at 323.

That said, the Supreme Court case law was clearly established as to the pre- and post-deprivation due process issues. It has long since been clearly established that "'within the limits

8

of practicability,' a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause." *Boddie v. Connecticut*, 401 U.S. 371 (1971) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). More specifically, the right to a pre-deprivation hearing as a matter of due process has long been established, the Defendant himself citing to decades-old cases that created narrow exceptions for this well-settled rule. Def. Mem. Summ. J., 7; *see Barry v. Barchi,* 443 U.S. 55, 64-65 (1979); *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264 298-303 (1981). In *Zinermon v. Burch,* 494 U.S. 113 (1990) the United States Supreme Court held that "[i]n situations where the State feasibly can provide a pre[-]deprivation hearing before taking property, it generally must do so regardless of the adequacy of a post deprivation tort remedy to compensate for the taking." *Id.* at 132. Furthermore, the Supreme Court in *Zimermon v. Bur*ch, 494 U.S. 113 (1990) clearly established that a prompt and meaningful hearing must be conducted, and even held in that case that the lack of a pre-deprivation hearing was unconstitutional.

**CONCLUSION**

Wherefore, the Plaintiff prays this Honorable Court denies the Defendants motion for summary judgment.

Respectfully submitted,

s/Richard Dvorak
Attorney for Plaintiff.

Richard Dvorak
Iveliz Orellano
DVORAK LAW OFFICES, LLC
18W140 Butterfield Road, 15th Floor
Oakbrook Terrace, IL 60181
(312) 593 – 7146
richard.dvorak@civilrightsdefenders.com

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Plaintiff's Response to Defendant's Memorandum in Support of his Motion for Summary Judgment was filed on October 13, 2014, and was served on all counsel of record via the Court's CM/ECF system.

                                                    s/Richard Dvorak
                                                    Attorney for Plaintiff.