IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIM RHEIN and DAVID RHEIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 13 C 843 |
| v. | ) | |
| | ) | JUDGE FEINERMAN |
| AGENT PRYOR, Star Number 4816, an | ) | |
| Illinois State Police Officer, in his | ) | MAGISTRATE JUDGE KIM |
| individual capacity; AGENT SUMMERS, | ) | |
| Star Number 5706, an Illinois State Police | ) | |
| Officer, in his individual capacity; | ) | |
| LIEUTENANT JOHN COFFMAN, an | ) | |
| Illinois State Police Officer, in his | ) | |
| individual capacity; HIRAM GRAU, | ) | |
| Illinois State Police Director, in his official | ) | |
| capacity; and LISA MADIGAN, Illinois | ) | |
| Attorney General, in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT JOHN COFFMAN'S REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant John Coffman ("Defendant"), a retired Illinois State Police ("ISP" or the

"Department") lieutenant, by and through his attorney Lisa Madigan, the Illinois Attorney

General, hereby submits his Reply in Support of Cross-Motion for Summary Judgment:

**ARGUMENT**

**I.      PLAINTIFF WAS NOT ENTITLED TO A PRE-DEPRIVATION HEARING**

Plaintiff's FOID card was revoked pursuant to section 8(f) of the FOID Card Act, which

authorizes ISP to revoke a FOID card of a "person whose mental condition is of such a nature

that it poses a clear and present danger to the applicant, any other person or persons or the

community." 430 ILCS 65/8.[1] Nevertheless, Plaintiff claims that Defendant's reliance on a state representative's staffer account of threats made by Plaintiff was insufficient to warrant quick action on the part of the State to revoke Plaintiff's FOID card under section 8(f). (Doc. 78, p. 2). He insinuates that the only statement indicative of a "threat" was Plaintiff's alleged statement that he was "ready to start shooting people." (*Id.*). Plaintiff allegedly did much more than state that he was ready to start shooting people. Defendant will not belabor the point, as it has now been fully addressed in both his opening motion and in the Response to Plaintiff's Cross-Motion for Summary Judgment. But some highlights bear noting. Plaintiff threatened to shoot people. (Doc. 67, Def. SOF 7). He claimed a revolution was going to occur and that a militia was forming (Doc. 67, Def. SOF 15). He stated that Representative DeLuca should hang for treason. (Doc. 67, Def. SOF 8). He made comments about going "second amendment" on people, an obvious reference to shooting people. (Doc. 67, Def. SOF 12). Importantly, only days before Defendant revoked Plaintiff's FOID card, Donna Fanning reported that Plaintiff stated, "I have never shot anybody in my life, and I never would shoot anyone, unless I am forced to—to protect my constitutional rights." (Doc. 67, Def. SOF 16). These threats scared Fanning enough for her to report the matter to ISP. Even Plaintiff's own treating psychiatrists agree that it was appropriate to revoke his FOID card based upon these threats. (Doc. 67, Def. SOF 23).

Plaintiff refutes that he made some (but not all) of these statements or engaged in all of these actions. (Doc. 78, p. 2 & n.1). But that is beside the point. At the time of revocation, Defendant Coffman did not know for certain whether the accusations lodged by Ms. Fanning were true. Nor did Defendant have time to investigate because the conduct/statements were serious enough to warrant quick action by the State in revoking Plaintiff's FOID card and seizing

---

[1] Plaintiff's FOID card has been returned; he seeks only money damages, not any kind of injunctive relief.

his firearms. Thus, courts have held that a pre-revocation hearing is unnecessary when the State comes across information that warrants revocation of a firearms license. *See*, *e.g.*, *Hightower v. City of Boston*, 693 F.3d 61, 85 (1st Cir. 2012) ("The revocation of a firearms license . . . without a predeprivation hearing is justified by concerns as to public health and safety."). This reasoning is at the foundation of the proposition that Due Process requires only an adequate post-deprivation remedy where a pre-deprivation hearing would be impractical under the circumstances. *See*, *e.g.*, *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (stating that pre-deprivation hearing is only constitutionally required absent "quick action by the State or the impracticality of providing any pre-deprivation process"). Even a case that Plaintiff relies upon heavily for both his pre- and post-deprivation due process claims holds that, in the case of firearms license revocations, exigent circumstances often necessitate quick action on the part of the State, making a pre-deprivation hearing impractical and unnecessary. *See Spinelli v. City of New York*, 579 F.3d 160, 170-71 (2d Cir. 2009) (holding that defendant did <u>not</u> violate plaintiff's pre-deprivation due process rights by revoking plaintiff's firearms license without pre-deprivation notice or hearing).

To hold that a police officer in Defendant's position would be required to conduct a pre-deprivation hearing prior to revocation of Plaintiff's FOID card could lead to drastic results. At the time of revocation, Defendant was made aware of allegations of serious threats by Plaintiff toward a public official. Those threats, which Defendant learned in the days preceding revocation, had been on-going and had increased in hostility. A police officer such as Defendant should not be forced to wait for a pre-deprivation hearing when a significant threat to the public safety has arisen. To allay any fears on the part of the deprived individual, an adequate post-deprivation hearing is sufficient. Accordingly, given the nature of the threats allegedly made by

Plaintiff prior to revocation, Defendant acted within the purview of the Due Process Clause in revoking Plaintiff's FOID card without a pre-deprivation hearing. *See Gilbert v. Homar*, 520 U.S. 924, 930 (1997) ("This Court has recognized, on many occasion, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause.").

## II.    DEFENDANT DID NOT UNCONSTITUTIONALLY DELAY PLAINTIFF'S POST-DEPRIVATION PROCEEDING

Defendants do not dispute that Plaintiff did not receive a post-deprivation hearing from the time that he requested reinstatement of his FOID card until Defendant left the Firearms Services Bureau. Defendant's point is that he cannot be responsible for any delay in Plaintiff's reinstatement process after he left the Firearms Services Bureau in February 2012. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (noting that to support liability under section 1983, defendant must be "personally involved" in infringement of plaintiff's constitutional rights); *Hildebrandt v. Ill. Dep't of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003) (same). Thus, the question here is two-fold: (1) during what period was Defendant involved in the post-deprivation process and (2) did Defendant unconstitutionally delay that process during that time-frame.

Plaintiff maintains that Defendant first became involved with the post-deprivation process at the time of revocation (February 2011) because the State is always required to initiate a prompt post-deprivation hearing whenever it deprives an individual of a protectable property interest. (Doc. 78, pp. 5-6). But Plaintiff is not entitled to have his FOID card considered for reinstatement in the absence of an appeal to the Department of State Police of the revocation. *See* 430 ILCS 65/10(a). Under section 10(a) of the FOID Card Act, neither ISP nor Defendant was required to provide post-deprivation process in the absence of a request. *See id.*

4

Defendant testified that the first time that he learned of Plaintiff's request for FOID card reinstatement was when he received a letter from Plaintiff's counsel on September 23, 2011. (Def. SOF 36). As counsel for Plaintiff stressed at Defendant's deposition, the letter from Plaintiff's counsel actually received by Defendant was dated September 19, 2011, not August 8, 2011, as Plaintiff alleges in his brief (Doc. 78, p. 4). (*See* Def. SOF 36, date received specifically referenced at Coffman Dep., 135:12-21). The record contains a similar letter dated August 8, 2011, but there is no evidence in the record establishing that Defendant actually received that letter. Thus, the only evidence of Defendant's knowledge that Plaintiff requested an appeal of the decision to revoke his FOID card is Defendant's testimony that he learned of such information on September 23, 2011. (Def. SOF 36). And it is undisputed that Defendant was transferred out of the Firearms Services Bureau in early February 2012, leaving him with no personal involvement in Plaintiff's reinstatement process after his transfer. (Def. SOF 42-43).

Accordingly, the relevant time frame to consider Plaintiff's post-deprivation due process claim is limited to the time frame established in the record during which Defendant was personally involved with the reinstatement process—late September 2011 to early February 2012 (approximately four months). Defendant testified that, during this time, there was information that Plaintiff had made additional threats that necessitated further investigation. (Def. SOF 38). Documented evidence of these threats was specifically referred to during Defendant's deposition. (Doc. 67-1, Ex. A, Coffman Dep., 147:6-22). For example, after revocation of the FOID card, Ms. Fanning reported that Plaintiff stated, "[t]ell that little candy-ass [Representative DeLuca] that had my guns taken away illegally that I am going to make sure he doesn't get re-elected," and "I am going to make sure everybody knows what a little candy-ass he is." (Doc. 75, ¶38).

Accordingly, contrary to Plaintiff's assertion (Doc. 78, p. 4), there is evidence that Plaintiff continued to make threats to Representative DeLuca after revocation of his FOID card, which had to be investigated before fully considering the possibility of reinstatement.

Additionally, it is undisputed that the Department was understaffed during the four-months during which Defendant was personally involved with the reinstatement process. (Def. SOF 25). Non-trivial delays may be tolerated under the Due Process Clause in clear cases of routine administrative delay or overburdened bureaucracy. *See Isaacs v. Bowen*, 865 F.3d 468, 477 (2d Cir. 1988) (holding that "neither the six-month delay created by the additional fair hearing, nor the estimated total of 19 months of from claim initiation to completion of ALJ review are remarkable in the Medicare, Social Security and employment benefits systems" where "delay is a natural concomitant of our administrative bureaucracy") (collecting cases). Here, the Department was overburdened in processing FOID card reinstatement appeals, and when coupled with the delay caused by the alleged additional threats made by Plaintiff, not providing Plaintiff a post-deprivation hearing during the relevant four months is reasonable and certainly not unconstitutional. And any further delay after Defendant's personal involvement ceased with the reinstatement process (whether reasonable or unreasonable) is irrelevant for determining personal liability against Defendant. *See Palmer*, 327 F.3d at 594 (noting that to support liability under section 1983, defendant must be "personally involved" in infringement of plaintiff's constitutional rights); *Hildebrandt*, 347 F.3d at 1039 (same).

Plaintiff's reliance on *Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009), is misplaced. There, the 58-day delay in providing a post-deprivation hearing was unconstitutional under the unique circumstances involved in that case. In *Spinelli*, the government had revoked the plaintiff's license to sell firearms, not merely possess them. *Id.* at 171. The deprivation there,

unlike here, involved the plaintiff's livelihood and means of sustenance. *Id.* The private interest at stake under the *Mathews v. Eldridge* factors weighed heavily in the court's analysis. *Id.* On the other hand, Plaintiff's interest in the mere possession of a firearm is not as significant of a private interest as the interest in one's livelihood.

Nor is Plaintiff's reliance on *Patterson v. Armstrong County Children & Youth Servs.*, 141 F. Supp. 2d 512, 540 (W.D. Penn. 2001), persuasive. There, the court held that a post-deprivation hearing to consider the removal of a child from her parent's custody must be held within 72 hours. But in *Patterson*, the 72-hour requirement was defined by a Pennsylvania statute, not by the Due Process Clause of the Fourteenth Amendment. *Id.* Moreover, the interest at stake in *Patterson* was the deprivation of the custody of a child—a significantly greater interest than the possession of a firearm inside of the house. *See Suboh v. District Attorney's Office of Suffolk Dist.*, 298 F.3d 81, 91 (1st Cir. 2002) ("The interest of parents in the care, custody, and control of their children is among the most venerable of the liberty interests embedded in the Constitution.") (internal quotation marks omitted). Accordingly, the *Mathews* factors may balance more heavily in favor of a quick post-deprivation hearing where child custody is at issue as opposed to the issue of possession of a FOID card.[2]

Finally, Plaintiff complains of the post-revocation requirements that he was required to fulfill before he could obtain reinstatement. The requirement that he complains the most about is obtaining a letter from a psychologist/psychiatrist attesting to his suitability to acquire and possess firearms. (Doc. 78, p. 6). Yet, requiring such a letter does not present any sort of undue

---

[2] Plaintiffs are correct that Defendant included an incorrect parenthetical to the citation of *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). In the parenthetical (Doc. 76, p. 10), Defendant stated that *Loudermill* stood for the proposition that a nine-month delay of a post-revocation hearing was constitutional. Instead, in *Loudermill*, the case involved a nine-month delay between the request for a post-deprivation hearing and a decision by the governmental body.

burden that indicates a violation of due process. On the contrary, it is exactly the type of evidence envisioned by the FOID Card Act and its attendant regulations. 430 ILCS 65/10(f); 20 Ill. Admin. Code §1230.70. That section of the statute requires that, on appeal to the Director of State Police of a FOID card revocation, the Director shall consider evidence of the "petitioner's mental health" in determining whether the petitioner continues to present a danger to himself or others. *Id*. This makes sense, for if Plaintiff's FOID card revocation is based on the fact that he presents a clear and present danger due to his mental condition, he should demonstrate during the post-revocation proceedings that such mental condition no longer exists before he is permitted to repossess a firearm. Moreover, the additional conditions precedent for reinstatement of a FOID card outlined by Defendant (letters of recommendation) also are envisioned by the statute and regulations. *Id*. That Plaintiff had difficulty obtaining a letter from a psychologist who would attest to his suitability to possess a firearm is not an undue burden placed on him—rather, it is evidence of Plaintiff's mental condition at and around the time of revocation because psychologists apparently were not willing to attest that he had a sound enough mental condition to possess a firearm. This is not a due process violation. This is a reflection that Plaintiff posed a clear and present danger at the time of revocation, such that psychologists could not attest to his suitability to possess a firearm.

In the end, Defendant did not unduly delay Plaintiff's post-revocation proceedings during the approximately four months that Defendant was involved with the reinstatement request. And any further delay of the proceedings after Defendant was transferred out of the Firearms Services Bureau cannot be imputed to him. Accordingly, Plaintiff has not adduced sufficient evidence with which a reasonable juror could find that Defendant denied him post-deprivation due process.

### III.   AT THE VERY LEAST, DEFENDANT DID NOT VIOLATE CLEARLY ESTABLISHED LAW

Even if this Court finds that Defendant violated Plaintiff's due process rights, those rights were not clearly established at the time of the alleged violations, entitling Defendant to qualified immunity. Plaintiff argues that, in determining whether the due process rights at issue were clearly established, cases with similar fact patterns are not necessary. (Doc. 78, p. 8). Plaintiff overstates this point. In the absence of a similar case, clearly established violations should only be found in the case of "extreme though unheard-of actions[.]" *Camreta v. Greene*, 131 S.Ct. 2020, 2044 (U.S. 2011). The four-month governmental processing delay that involved Defendant is far from "extreme" or "unheard-of." *See id.* "While cases involving the exact fact pattern at bar are unnecessary, case law in a closely analogous area is crucial to permit us to conclude that reasonably diligent government officials would have known of the case law, related it to the situation at hand, and molded their conduct accordingly." *Lojuk v. Johnson*, 770 F.3d 619, 628 (7th Cir. 1985). None of the cases cited by Plaintiff where due process violations have been found—such as *Spinelli* or *Patterson* (discussed at *supra*, pp. 6-7), are closely analogous to the case at hand, such that Defendant would have known of these cases, related them to the situation at hand, and acted accordingly.

Indeed, Plaintiff would be hard-pressed to find a closely analogous case under these circumstances, where the due process consideration turns upon the balancing of factors under *Mathews v. Eldridge*. The Seventh Circuit has stated that, "It would appear that, whenever a balancing of interests is required, the facts of the existing caselaw must closely correspond to the contested action before the defendant official is subject to liability . . . . Qualified immunity typically casts a wide net to protect government officials from damages liability whenever balancing is required." *Benson v. Allphin*, 786 F.2d 268, 276 (7th Cir. 1986) *abrogated on other*

grounds; *Sherman v. Four County Counseling Center*, 987 F.2d 397, 409 (7th Cir. 1993). Here,

because a balancing of interests is required to determine whether a pre-deprivation hearing was

constitutionally mandated (*see* Doc. 66, pp. 8-12), it could not be clearly established, under the

facts and circumstances in this specific case, that such a hearing was indeed required. This is

especially true here, where Defendant is called upon to make decisions concerning matters

related to the public safety. Police officers such as Defendant should not fear lawsuits every time

they make such decisions, unless it they act in a "plainly incompetent" manner. *See Humphrey v.

Staszak*, 148 F.3d 719, 727 (7th Cir. 1998). This did not happen. Accordingly, qualified immunity

applies, and summary judgment should be entered in favor of Defendant.

　　　**Wherefore**, for the reasons stated above as well as those in the Response to Plaintiff's

Cross-Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment

(Docs. 66, 76), Defendant retired ISP Lieutenant John Coffman respectfully requests that this

Court enter judgment in his favor on Plaintiff's due process claim, deny Plaintiff's cross-motion

for summary judgment, and provide any other relief that is just and proper.

LISA MADIGAN　　　　　　　　　　　　Respectfully submitted,
Attorney General of Illinois


　　　　　　　　　　　　　　　　　　/s/ *Sunil Bhave*
　　　　　　　　　　　　　　　　　　Sunil Bhave
　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　Office of the Illinois Attorney General
　　　　　　　　　　　　　　　　　　100 West Randolph Street, 13th Floor
　　　　　　　　　　　　　　　　　　Chicago, Illinois 60601
　　　　　　　　　　　　　　　　　　(312) 814-4450

**CERTIFICATE OF SERVICE**

I, Sunil Bhave, hereby certify that I have caused true and correct copies of the above and foregoing Reply in Support of Cross-Motion for Summary Judgment to be sent via e-filing to all counsel of record on October 24, 2014, in accordance with the rules on electronic filing of documents.

/s/ *Sunil Bhave*
Sunil Bhave
Assistant Attorney General