IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| DAVID RHEIN | ) | |
| --- | --- | --- |
| | ) | No. 13 C 843 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Hon. Judge Gary Feinerman |
| | ) | |
| LIEUTENANT JOHN COFFMAN | ) | Hon. Mag. Judge Young B. Kim |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT JOHN COFFMAN'S RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff David Rhein, by and through his attorneys, DVORAK LAW OFFICES, LLC, hereby submits this reply to Defendant Coffman's response to the Plaintiff's cross-motion for summary judgment.

**ARGUMENT**

**I.  THE DEFENDANT VIOLATED THE DEFENDANT'S DUE PROCESS RIGHTS.**

   **A. The Defendant Violated the Plaintiff's Due Process Rights in Not Conducting a Pre-Deprivation Hearing.**

Regarding the first of the *Matthews* factors, the Defendant concedes the right to bear arms is a significant right, but one "not as significant of a right as Plaintiff claims." (Def. Mtn. 5). In support of this position, the Defendant cites to the *Potts* case, which, of course, pre-dates *Heller* and *McDonald*, and thus its minimization of an individual's right to bear arms makes that case no longer persuasive law. The Defendant makes the point that the right to bear arms is not absolute, and argues the Plaintiff "ignores (sic) that the Supreme Court has never held that the right to possess a firearm under the Second Amendment is so extensive as to have no exceptions." (Def. Mtn. 6). While the Defendant correctly notes the Supreme Court has pointed

1

to the limited right of a mentally ill person to possess firearms (Def. Mtn. 6), this misses the point. The Plaintiff vehemently denies he ever was mentally ill. The whole point of this lawsuit is that the Defendant branded the Plaintiff as mentally unfit to possess a firearm without due process of law, and thus the Plaintiff cannot fall into the category of a mentally ill person without evidence he was actually mentally ill. The Plaintiff has no history of mental illness, and Dr. Childs told Defendant Coffman the same, but Coffman chose to ignore this conclusion.

Regarding the second *Matthews* factor, the Defendant argues there was no erroneous risk of deprivation because, ultimately the Plaintiff was successful in getting his FOID Card reinstated (Def. Mtn. 6). The court in *Spinelli* rejected this same argument. In that case, the defendant similarly argued that "because [the revokee] was able to have her license suspension lifted and [] retrieve her property in less than two months, her due process rights were not violated." *Id.* at 172. However, the court noted that "[t]his is non-sequitur" and that the plaintiff's "eventual success did not result from the [defendant's] affording her due process, but despite its absence." *Id.* at 172. Further, even though the plaintiff's license had been reinstated and her firearms returned, the plaintiff's due process claim "nevertheless remains a live controversy" . . . . "[b]ecause she never received the process she was due." *Id*. at 175.

In applying the third *Mathews* factor, the Defendant relies heavily on its assertion that the Plaintiff's alleged threats were "escalating." (Def. Mtn. 7). This assertion is not supported by the record. In fact, the only statement that would indicate some sort of imminence (the claim that the Plaintiff stated he was "ready to start shooting people") was made on March 10, 2010, almost a year before the revocation (Doc. 68, SOF 9-11)). In fact, on the last date that the Plaintiff had any contact with his representative's office, no threats of violence were made, but the Plaintiff

2

did promise to picket the representative's office, along with others, if the representative continued to ignore his political concerns (Doc. 68, 27-29).

### B. The Defendant Violated the Plaintiff's Due Process Rights in His Actions in Not Providing the Plaintiff a Prompt, Meaningful Post-Deprivation Remedy.

Before addressing the Defendant's post-deprivation due process claim, the Plaintiff must respond to the Defendant's assertion that he has no responsibility for what occurred after February of 2012, when he left employment with the Illinois State Police (Def. Mtn. 8). The fact that others at the Illinois State Police may have also unnecessarily delayed the reinstatement does not help Coffman because he was still a proximate cause of the delay, and tortfeasors such as Coffman can still be found to have denied an individual due process even though there may have been other tortfeasors who later also denied the same individual due process. *Whitlock v. Brueggemann*, 682 F.3d 567, 583 (7th Cir. 2012) ("there is no rule demanding that every case have only one proximate cause. To the contrary, multiple proximate causes are often present, and an actor's tortious conduct need not be close in space or time to the plaintiff's harm to be a proximate cause.")

Regarding the three *Matthews* factors, the Defendant attempts to distinguish *Spinelli*'s first factor because *Spenilli* involved, in part, the denial of the gun shop owner's ability to make a livelihood (Def. Mtn. 9). While this was one of the reasons relied on by the *Spinelli* Court, it does not mean that was the only reason it could have used, and a quick citation to *Heller* and *McDonald* would have demonstrated any person's strong interest in owning a gun for self-defense in the home. In fact, this same Court found a plaintiff was denied due process in a gun case that did not involve the denial of the plaintiff's ability to pursue a livelihood. *Kuck v. Danaher*, 600 F.3d 159, 164 (2d Cir. 2010) (although the property interest lacked "some

3

urgency" that existed in *Spinelli*, the factor still favored the plaintiff because the interest was nevertheless "substantial.")

Next, the Defendant once again argues that the Plaintiff "had a mental condition that made him a clear and present danger to others," (Def. Mtn. 9) but there was no evidence in the record that this was the case either prior to or during the Plaintiff's FOID Card revocation. The Defendant cites to the deposition testimony of one of the Plaintiff's treating mental health professionals for this proposition (Def. Mtn. 9, citing to Doc. 67, Def. SOF 23). First, this alleged opinion is irrelevant because this opinion was first elicited during a deposition during the civil litigation, and thus has nothing to do with whether the Plaintiff was provided due process. Dr. Childs' report clearly indicated otherwise, but Coffman chose to ignore this opinion.

On the merits, though, this assertion is simply a mischaracterization of the testimony of Dr. Childs and Dr. Howell, who assisted Dr. Childs in his assessment of the Plaintiff. Dr. Childs never testified the Plaintiff was a "clear and present danger that made him a danger to himself and others," as claimed by the Defendant (Def Mtn. 9). Rather, Dr. Childs merely stated he agreed it was appropriate to revoke his card "until he's evaluated." (Doc. 67, Ex. K, p. 38). Dr. Childs did evaluate the Plaintiff, found him to not be mentally ill, issued a report to Defendant Coffman, but Coffman ignored this report. As far as Dr. Howell, her opinion is additionally irrelevant because she was merely assisting Dr. Childs, and provided no assessment of the Plaintiff. Her after-the-fact supposed opinions are irrelevant. However, she, too, never testified the Plaintiff was a "clear and present danger that made him a danger to himself and others," she too merely stated it would be appropriate to revoke the Plaintiff's FOID Card until he was evaluated (Doc. 67, Ex. L, pp. 33-34). Again, the point is that there was no evidence during the time of the commission of the due process violation (nor is there any afterward) that would have

4

justified labelling the Plaintiff mentally ill, unable to invoke the protections of the Second Amendment.

Regarding the second a third *Matthews* factors, the Defendant re-iterates his position that he is not responsible for the delay that occurred after February 2012 (Def. Mtn. 9), and the Plaintiff will not re-iterate his response in that matter, but refers this Court to the *Whitlock* decision, *supra*. The Defendant's excuse that understaffing caused the delay (Def. Mtn. 9), is no excuse at all. "The lack of funding is no excuse" for depriving an individual of his or her constitutional rights and it does not result in the granting of qualified immunity. *Winton v. Board of Comm'rs*, 88 F.Supp.2d 1247, 1268 (N. D. Okla. 2000). More importantly, it would not have required one dollar for Defendant Coffman to have simply read Dr. Childs' report. In his response, Coffman ignores the fact that he ignored the Plaintiff's efforts to comply with Coffman's requests, including obtaining a letter from a licensed mental health professional. As the court in Velazquez noted, due process does not allow an individual to be at "whim" of the decisionmaker's arbitrary rules (*Velazquez*, 2012 U.S. Dist. LEXIS 30469, at *8), and that is exactly what occurred here.

## II.     THE DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY.

First, the Defendant criticizes the Plaintiff for not addressing the qualified immunity argument in its own motion for summary judgment (Def. Mtn. 2). This misapplies the burden of proof. In this case, the Defendant asserts the affirmative defense of qualified immunity. It is the burden of the Defendant, not the Plaintiff to not only plead the affirmative defense of qualified immunity, but to prove it as well. *In re Motorola Sec. Litig*., 505 F.Supp.2d 501, 526 (N.D. Ill. 2007) ("Defendants bear the burden of proving [an] affirmative defense on summary judgment.") (citing *Law v. Medco Research Inc*., 113 F.3d 781, 786 (7th Cir. 1997)); see also *Dale v. Lappin*,

5

376 F.3d 652, 655 (7th Cir. 2004) ("failure to exhaust is an affirmative defense that the defendants have the burden of pleading *and proving*.") (emphasis added). The Defendant provides this Court with no authority that a plaintiff must disprove an affirmative defense, and, given the above authority, such a position would be inconsistent with established Seventh Circuit precedent.

Regarding the Defendant's qualified immunity position as to the lack of a pre-deprivation hearing, the Defendant believes the action he took required "swift" action that should not be second-guessed by this Court (Def. Mtn. 3, 4). Specifically, the Defendant takes issue with the Plaintiff's position that many of the Plaintiff's statements were stale by asserting the Defendant had only recently learned of them prior to the revocation (Def. Mtn. 4). This argument misses the point. The Plaintiff never claimed the Defendant sat on the information too long (indeed, the argument is he acted too quickly and without fairness); the Plaintiff's argument is instead that the information was so old that there was no need for swift action. The Defendant argues the Plaintiff's "aggressive and threating conduct had escalated over the course of the year preceding revocation of his FOID card," (Def. Mtn. 4), but there is no evidence to support this assertion. In fact, the only statement that would indicate some sort of imminence (the claim that the Plaintiff stated he was "ready to start shooting people") was made on March 10, 2010, almost a year before the revocation (Doc. 68, SOF 9-11)). In fact, on the last date that the Plaintiff had any contact with his representative's office, no threats of violence were made, but the Plaintiff did promise to picket the representative's office, along with others (Doc. 68, 27-29). Thus, even in the light most favorable to the Defendant, there is no way it can be credibility argued that the Plaintiff's alleged threats had escalated over the year, as claimed by the Defendant.

Finally, the Defendant makes the blanket claim that, "because the balancing of interests is required to determine whether a pre-deprivation hearing was constitutionally required . . . , it could not be clearly established that, under the facts and circumstances in this specific case, that such a hearing was indeed required." (Def. Mtn. 4-5). This claim is a gross overstatement of the Seventh Circuit's holding in *Benson v. Allphin*, 786 F.2d 268 (7th Cir. 1986). First, the Seventh Circuit clearly stated in a footnote that, in situations where a defendant's acts are "egregious," qualified immunity should not apply, regardless of whether there may be prior cases with similar facts. *Benson*, 786 F.2d at 276, n. 18. Second, the *Benson* decision does not state that qualified immunity is inappropriate whenever a balancing test is used, as claimed by the Defendant, but instead the decision clearly states that qualified immunity should not be granted where there is "close correspond[ence]" between a prior case and the existing case. *Id*. The limitation of the *Benson* holding is evident from the simple fact that the Seventh Circuit on numerous other occasions denied qualified immunity in cases that involved the application of a balancing test. See, e.g., *Crue v. Aiken*, 370 F.3d 668 (7th Cir. 2004); *McGreal v. Ostrov*, 368 F.3d 657 (7th Cir. 2004); *Delgado v. Jones*, 282 F.3d 511 (7th Cir. 2002); *Denius v. Dunlap*, 209 F.3d 944 (7th Cir. 2000); and *Conner v. Reinhard*, 847 F.2d 384 (7th Cir. 1998). In fact, at least one court in this District rejected the Defendant's qualified immunity claim as to the Plaintiff's pre- and post-deprivation due process claims, which necessarily involved the application of the *Matthews* balancing test. *Velazquez v. Office of the Ill. Secy. Of State*, 2012 U.S. Dist. LEXIS 30469; 2012 WL 770251, 09 C 3366 (N.D. Ill. March 6, 2012)[1].

Regarding the lack of a pre-deprivation hearing, the Plaintiff concedes that, even though there was clearly established law that required a pre-deprivation hearing, the Plaintiff has been

---

[1] The court addressed the due process claim in a separate, prior decision. *Velazquez v. Office of the Ill. Sec'y*, 2011 U.S. Dist. LEXIS 143505 (N.D. Ill. Dec. 14, 2011).

7

unable to find a case with a similar set of facts that held a pre-deprivation hearing is required. However, the Plaintiff contends this case falls squarely within the *Benson* exception that Defendant Coffman's actions of revoking the Plaintiff's FOID Card without a hearing was egregious. In fact, Agent Summers and Agent Pryor both testified at their depositions that at no point did they believe they had probable cause to arrest the Plaintiff. Pl. Ex. D, Summers Dep. 67; Pl. Ex. E, Pryor Dep. 72. Given the fact that there was stale information provided to Defendant Summers and that even this information did not even support a probable cause determination that the Plaintiff had committed any crime, there was simply no justification for Defendant Coffman to summarily revoke the Plaintiff's FOID Card, without even waiting for his investigators to complete their investigation.

Regarding the Plaintiff's post-deprivation due process claim, as the court in *Velazquez*, *supra*, noted only in "limited cases" will there be a need for the denial of a pre-deprivation hearing, "however, in such cases a 'prompt' post-deprivation hearing must be provided, meaning one that concludes without 'appreciable delay' " *Velasquez*, 2012 U.S. Dist. LEXIS 30469, at *5, 8-9 ("the fact that the Plaintiff cannot point to a prior case that is a precise factual replica of his own does not save Defendants – the general right to a 'prompt' post-deprivation hearing as laid out in the foregoing cases applies with 'obvious clarity' here."). Regarding the post-deprivation due process claim, not only was Coffman's acts in simply ignoring all the Plaintiff's efforts to comply with Coffman's arbitrary requests an obvious and egregious denial of the Plaintiff's due process rights, the Plaintiff can also point to the *Spinelli* decision as a case on point that should have fairly put the Defendant on notice that his actions were unconstitutional, and thus the Defendant's qualified immunity argument should be rejected.

## CONCLUSION

Wherefore, the Plaintiff prays this Honorable Court denies the Defendants motion for summary judgment.

                                    Respectfully submitted,

                                    s/Richard Dvorak
                                    Attorney for Plaintiff.

Richard Dvorak
Iveliz Orellano
DVORAK LAW OFFICES, LLC
18W140 Butterfield Road, 15th Floor
Oakbrook Terrace, IL 60181
(312) 593 – 7146
richard.dvorak@civilrightsdefenders.com

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Plaintiff's pleading was filed on October 24, 2014, and was served on all counsel of record via the Court's CM/ECF system.

                                    s/Richard Dvorak
                                    Attorney for Plaintiff.